IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 09–cv–00309-MSK-KMT

SUZANNE SHELL,

    Plaintiff,

v.

AMERICAN FAMILY RIGHTS ASSOCIATION,
WILLIAM O. TOWER,
ANN TOWER,
LEONARD HENDERSON,
SUSAN ADAMS JACKSON a/k/a SUSAN WOLVERTON,
CLETUS KIEFER,
FAMILIES AT RISK DEFNESE ALLIANCE,
MARK CYGAN,
ILLINOIS FAMILY ADVOCACY COALITION,
DOROTHY KERNAGHAN-BAEZ,
GEORGIA FAMILY RIGHTS, INC.,
DENNIS HINGER,
NATIONAL ASSOCIATION OF FAMILY ADVOCATES,
AIMEE DUTKIEWICZ,
THOMAS DUTKIEWICZ,
CONNECTICUT DCF WATCH,
WILLIAM WISEMAN,
WISEMAN STUDIOS,
ANN DURAND,
BRENDA SWALLOW,
KATHY TILLEY,
DEE CONTRERAS
RANDALL BLAIR,
LLOYD PHILLIPS,
RINGO KAMENS,
CHERYL BARNES,
CPSWATCH, INC.,
DESERE' CLABO aka HOWARD,

SARAH THOMPSON and
Unknown defendants Doe 1-15,

      Defendants.

## ORDER

This matter is before the court on "Plaintiff's Motion to Reconsider Order #222 Denying Motion to Seal." [Doc. No. 225, filed July 10, 2009.] Responses have been filed by Defendants Thomas Dutkiewicz [Doc. No. 229], Defendant Leonard Henderson [Doc. No. 231] and Defendant Dee Contreras [Doc. No. 232].

Plaintiff argues that Exhibits 3 and 9 attached to Doc. No. 203 (hereinafter Swallow Exhs.") should be filed under seal because they are "confidential internal communications which were never to be publicly displayed or available to the public." Plaintiff claims that the exhibits "contain discussions of methods of business which include references to the trade secrets . . . ." (Mot. at ¶ 8.)

"What constitutes a 'trade secret' is a question of fact for the trial court. *Haggard v. Spine*, 2009 WL 1655030, *7 (D. Colo.2009) (Arguello, J.); *Gates Rubber Co. v. Bando Chemical Industries, Ltd.*, 9 F.3d 823, 848 (10th Cir.1993). A "trade secret" is defined in the Colorado Uniform Trade Secrets Act, Colo. Rev. Stat. §§ 7-74-101 to 7-74-110 as follows:

> "Trade secret" means the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, improvement, confidential business or financial information, listing of names, addresses, or telephone numbers, or other information relating to any business or profession which is secret and of value. To be a "trade secret" the owner thereof must have

    taken measures to prevent the secret from becoming available to persons other
    than those selected by the owner to have access thereto for limited purposes.

*Id.* at 7-74-102.  Factors considered in determining whether a trade secret exists include: (1) the extent to which the information is known outside the business; (2) the extent to which it is known to those inside the business, i.e., by the employees; (3) the precautions taken by the holder of the trade secret to guard the secrecy of the information; (4) the savings effected and the value to the holder in having the information as against competitors; (5) the amount of effort or money expended in obtaining and developing the information; and (6) the amount of time and expense it would take for others to acquire and duplicate the information.  *Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1129 (10th Cir. 2003).

    The fact that certain components of information are well-known or publicly available does not preclude trade secret protection.  If the combination or organization of the information is unique and offers the compiler of the information a competitive advantage, it is protectable.  *Haggard*, 2009 WL 1655030 at *7 (protection sought for a compilation of customer data and product development information in a medical implant and device business).  See also *Harvey Barnett*, 338 F.3d at 1129 (protection sought for a software system that integrated several variables available in the public domain in a manner and with a result that deserved trade secret protection.)  "A trade secret can exist in a combination of characteristics and components each of which, by itself, is in the public domain, but the unified process, design and operation of which, in unique combination, affords a competitive advantage and is a protectable secret." *Rivendell Forest Prods., Ltd. v. Georgia-Pacific Corp.*, 28 F.3d 1042, 1045 (10th Cir.1994).

On the other hand, information readily obtainable from magazines or that is taught in business schools, such as general marketing techniques, are not trade secrets. *I Can't Believe It's Yogurt v. Gunn*, 1997 WL 599391, *22 (D. Colo. 1997) (general business procedures the employer fails to prove are unique and secret are not protectable under the Trade Secrets Act).

This court considers not the final determination of whether items filed with the court are actually trade secrets, but whether or not the documents should be sealed given the prejudice that will inure to the Defendants, many of whom appear *pro se*, in presenting their case to the court.

Swallow Exhibit 3 consists of two email transmission from Suzanne Shell to other persons who are apparently working for her at an entity referred to as "the Institute." (Swallow Exh. at 16 - 19). The first is an email to breakingfear2u2004@yahoo.com for a person referred to as "Brenda[1]" in the body of the document. Ms. Shell begins by chastising Brenda for her interference in the Institute's efforts to "drain the brains and muscle from AFRA." (*Id.* at 16). Ms. Shell references payments to "Kay" and the fact that attorneys are set to pay Brenda for her work as well. The second part of the exhibit is an email from Suzanne Shell to AnnD122@aol.com and copied to "Kay Henson," halacha@pensys.com. and "Brenda Swallow," breakingfear2u2004@yahoo.com. The communication addresses the assignment of cases, the fact that an attorney named Jim is working with Kay and others, and a directive that everyone will be assigned cases upon which to work and each person should fulfill her obligations if she accepts a case. (*Id.* at 17). Ms. Shell includes information about the "Florida

---

[1] "Brenda" is Defendant Brenda Swallow.

group" and the effort of the Institute to lure associates from AFRA to work for the Institute.  Ms. Shell insists that each of the individuals to whom she is writing to bring problems up directly with one another so that Ms. Shell is not required to deal them.. (*Id.* at 18).  Ms. Shell also laments, "we just have a very ugly job to do so let's get to it." (*Id.*)  Ms. Shells ends the email with a directive that she needs to see a draft of certain motions by the next evening and a request that Brenda unsubscribe from "Cencom."  Defendant Brenda Swallow, who filed Doc. No. 203 with the attached exhibits, was one of the recipients on each of the emails attached.

There is no information contained in this Exhibit which could be remotely considered to be trade secrets or even confidential at this point in the case.  In fact, there is hardly anything that could even be considered "information" in the missives at all.  There are directions and orders and requests to individuals who appear to be in a position akin to employees or contractors, but there is no secret information.  It is entirely inappropriate to seal this document from the public record.

Exhibit 9 is an email from Suzanne Shell to halacha@pennsys.com, bklegal@msn.com, annD122@aol.com, CMKorn@bresnan.net and twinkle2b@verizon.net.  (Swallow Exh. at 29 - 34).  Ms. Shell explains, "this message is an attempt to explain the issues and issue a decision designed to correct the current problems and prevent future problems of this nature." (*Id.* at 29.)  The recipients of the email are referred to a the "advocates." (*Id.*)  First Ms. Shell explains that there is a lack of required communication between the advocates and their respective state leaders and a directive by Ms. Shell to end this practice. (*Id.*)  Next Ms. Shell orders the

advocates to stop complaining about an attorney named Jim.  (*Id.* at 30.)  Ms. Shell clarifies that one of the rules of the Institute is to not cause any friction between attorneys and their clients.

In the following several pages of the exhibit, Ms. Shell offers a critique of several "pleadings" which were apparently drafted by one or more of the advocates.  Ms. Shell alludes on several occasions to the training she provided to the advocates and makes efforts to specifically conform the advocates' language to that approved by her.  There are directions from Ms. Shell concerning appropriate language and a directive that no pleadings should be written unless under the direction and supervision of an attorney.  The instructions from Ms. Shell amount to editing and correcting the advocates' written product, albeit with a significant amount of ridicule and derision.

Ms. Shell advises the advocates to focus "your energies and resources only on the cases where the parent is following instructions, who doesn't cause problems requiring damage control, who isn't abusive to you and who is taking responsibility for their own cases."  (*Id.* at 32.)  Ms. Shell advises the advocates, "I don't bring anyone to my home and endanger my safety or privacy.  I meet in public places."  (*Id.*)

Ms. Shell closed the communication several individualized criticisms levied at Kay and Brenda (*id*. at 33) and Ann and Doug (*id.* at 34) whom Ms. Shell placed on probation.  She tells all the advocates, "IF ANY OF YOU EVER AGAIN DO ANYTHING TO HARM ANY ATTORNEY/CLIENT RELATIONSHIP, YOUR CERTIFICATION WILL BE PULLED AND YOU WILL BE PUBLICLY CENSURED."  (*Id.* at 33) (capitalization in original).

The closest any part of the Exhibit comes to revealing any kind of proprietary information is in comments such as, "in no way does the response to their report substitute for your report to the court, (which you learned during the training seminar where you were certified)" (*id.* at 31) or "[a] verified motion file (sic) by a parent, as I taught you ladies and gentlemen, must be sworn to under the penalty of perjury ad (sic) notarized." (*Id.*)  This type of directive, however, is certainly not secret and merely advises the advocates of proper court procedures.

To the extent the communication in Exhibit 9 provided any information about the form or content of court related documents and procedures, it was no different from any training routinely provided for paralegals or business school attendees.  *See, I Can't Believe It's Yogurt v. Gunn*, 1997 WL 599391 at *22.  There is nothing confidential contained in Exhibit 9 having to do with trade secrets.  Further, it appears that several of the "advocates" to whom the document was directed, are defendants, including the filer, Brenda Swallow.

Therefore, it is **ORDERED**

"Plaintiff's Motion to Reconsider Order #222 Denying Motion to Seal." [Doc. No. 225] is **DENIED**.

Dated this 24th day of July, 2009.

                                                **BY THE COURT:**

                                                Kathleen M. Tafoya
                                                United States Magistrate Judge