IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 09-CV-00309-MSK-KMT

SUZANNE SHELL,

       Plaintiff,

v.

AMERICAN FAMILY RIGHTS ASSOCIATION;
WILLIAM O. TOWER;
ANN TOWER;
LEONARD HENDERSON;
SUSAN ADAMS JACKSON, a/k/a Susan Wolverton;
CLETUS KIEFER;
FAMILIES AT RISK DEFENSE ALLIANCE;
FRANCINE RENEE CYGAN;
MARK CYGAN;
ILLINOIS FAMILY ADVOCACY COALITION;
DOROTHY KERNAGHAN-BAEZ;
GEORGIA FAMILY RIGHTS, INC.;
DENNIS HINGER;
NATIONAL ASSOCIATION OF FAMILY ADVOCATES;
AIMEE DUTKIEWICZ;
THOMAS DUTKIEWICZ;
CONNECTICUT DCF WATCH;
WILLIAM WISEMAN;
WISEMAN STUDIOS;
ANN DURAND;
BRENDA SWALLOW;
KATHY TILLEY;
DEE CONTRERAS;
RANDALL BLAIR;
LLOYD PHILLIPS;
RINGO KAMENS;
CHERYL BARNES;
CPS WATCH, INC.;
DESERE' CLABO, a/k/a HOWARD;
SARAH THOMPSON;
UNKNOWN DEFENDANTS DOE 1-15,

       Defendants.

# OPINION AND ORDER GRANTING AND DENYING MOTIONS TO DISMISS

**THIS MATTER** comes before the Court on a number of motions:

(1)     Defendant Dorothy Kernaghan-Baez's Motion to Dismiss on behalf of Defendant Illinois Family Advocacy Coalition **(#39)**, to which the Plaintiff Suzanne Shell responded **(#61)**;

(2)     Ms. Kernaghan-Baez's Motion to Dismiss **(#54)**, to which Ms. Shell responded **(#62)**;

(3)     Defendant Susan Adams Jackson's Motion to Dismiss **(#55)**, Memorandum in Support **(#56)**, and Affidavit **(#57)**, to which Ms. Shell responded **(#110, 111)**, and Ms. Jackson replied **(#162)**;

(4)     Defendant Dee Contreras's Motion to Dismiss **(#58)** and Memorandum in Support **(#59)**, to which Ms. Shell responded **(#117)**, and Ms. Contreras replied **(#141)**;

(5)     Defendant Thomas Dutkiewicz's Motion to Dismiss **(#66)** and Memorandum in Support **(#67)**, to which Ms. Shell responded **(#127)**, and Mr. Dutkiewicz replied **(#139)**;

(6)     Defendants Cheryl Barnes, CPS Watch, Inc., and Sarah Thompson's Motion to Dismiss **(#112)**, to which Ms. Shell responded **(#171)**, and the Defendants replied **(#191)**;

(7)     Defendant Leonard Henderson's Motion to Dismiss **(#168)**, to which Ms. Shell responded **(#174)**;

(8)     Defendant Brenda Swallow's Motion to Dismiss (**#172**) and Brief in Support (**#173**), to which Ms. Shell responded (**#196**), and Ms. Swallow replied (**#203**);

(9)     Defendant Ann Tower's Motion to Dismiss (**#199**) and Brief in Support (**#200**), to which Ms. Shell responded (**#235**), and Mr. Henderson responded (**#244**);

(10)    Ms. Contreras's Motion to Supplement (**#201**), to which Ms. Shell responded (**#234**), and Ms. Contreras replied (**#236**), and Mr. Henderson replied (**#242**);

(11)    Ms. Kernaghan-Baez's second Motion to Dismiss (**#206**), to which Ms. Shell responded (**#249**), and Ms. Kernaghan-Baez replied (**#283**);

(12)    Defendant Ringo Kamens's Motion for Judgment on the Pleadings (**#211**), to which Ms. Shell responded (**#248**), and Mr. Kamens replied (**#289**);

(13)    Defendants William O. Tower and American Family Rights Associations's Motion to Dismiss (**#217**) and Brief in Support (**#218**), to which Ms. Shell responded (**#252**);

(14)    Defendants William Wiseman and Wiseman Studio's Motion to Dismiss (**#240**) and Brief in Support (**#241**), to which Ms. Shell responded (**#266**), and the Defendants replied (**#273**);

(15)    Defendant Cletus Kiefer's Motion to Dismiss (**#247**), to which Ms. Shell responded (**#282**), to which, in turn, Mr. Kiefer replied (**#295, 296, 305, 307**), Ms. Contreras objected to (**#285**), and Mr. Henderson objected (**#286**); and

(16)    Defendant Aimee Dutkiewicz's Motion to Dismiss (**#336**) and Memorandum In Support (**#337**), to which Ms. Shell responded (**#341**).

Having considered the same,[1] the Court **FINDS** and **CONCLUDES** the following.

## I.   Jurisdiction

The Court exercises jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

## II.   Issues Presented

In this case, Ms. Shell generally alleges that the Defendants unlawfully used or copied her proprietary information (web site contents) for their own financial benefit and in retaliation against her for protecting such information.  Multiple defendants have moved to dismiss.  Their arguments fall into several categories, set forth below.

## III.   Material Facts

Construing Ms. Shell's allegations most favorably to her, the Court finds that the Complaint (**#1**) alleges the following facts.

In 1992, Ms. Shell noticed that there was a market need for services and information for families involved with child protection services.  She developed a body of intellectual property to fill this need.  In 1997, she acquired the domain name www.profanejustice.org and began publishing on this website.  She represents that each article, paper, and document published on the website is her independent copyrighted work.

---

[1]  A number of parties in this action are proceeding *pro se*, including Ms. Shell.  In construing these parties' pleadings, the Court is mindful of their *pro se* status and, therefore, the Court construes their  pleadings liberally and holds them to a "less stringent standard" than pleadings drafted by lawyers in accordance with *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  Such liberal construction is intended merely to overlook technical formatting errors, poor writing style, and other defects in the party's use of legal terminology, citation, and theories.  *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  The Court, however, cannot act as a *pro se* litigant's legal advocate, and a *pro se* plaintiff retains the burden to allege sufficient facts to state a viable claim.  Furthermore, *pro se* status does not relieve a party of the duty to comply with the various rules and procedures governing litigants and counsel or the requirements of the substantive law, and in these regards, the Court must apply the same standard to counsel licensed to practice law and to a *pro se* party.  *See McNeil v. United States*, 508 U.S. 106, 113 (1993); *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).

In 2001, Ms. Shell became aware that others were publishing her copyrighted works on other websites without her consent. She attempted to limit their infringement and contends that they have retaliated against her.

Ms. Shell co-founded Defendant American Family Rights Association ("AFRA"), but withdrew her membership in 2003. Upon her withdrawal, she expressly prohibited AFRA from using her copyrighted works.

Ms. Shell developed a licensing agreement for use of her copyrighted materials. She also created a training program based on her trade secrets and proprietary information and advertised this program on the internet. At her training seminars, attendees are required to sign a non-compete, non-disclosure form prior to receiving the training or training materials. Defendants Swallow and Durand attended Ms. Shell's training program. Ms. Shell contends that Ms. Swallow took and now uses the non-compete/non-disclosure form and proprietary information without permission.

Ms. Shell asserts eleven claims: (1) misappropriation/theft of trade secrets by all defendants, except Lloyd Phillips and Ringo Kamens; (2) copyright infringement by all defendants except Lloyd Phillips; (3) contributory copyright infringement by all defendants;[2] (4) vicarious copyright infringement by all defendants; (5) breach of contract by Ann Durand, Brenda Swallow, William Wiseman, Wiseman Studios, Leonard Henderson, AFRA, Cletus Kiefer, William O. Tower, Ann Tower, Dennis Hinger, Ringo Kamens; (6) tortious interference with business relationship and/or business contract by all defendants; (7) racketeering under the

---

[2] In the absence of a specific declaration of the defendants that a particular claim is asserted against, the Complaint is construed to assert the claim against all defendants.

Racketeer Influenced and Corrupt Organizations Act ("RICO") by all defendants except William

O. Tower, Families at Risk Defense Alliance, Kathy Tilley, and Lloyd Phillips; (8) false and

misleading advertising by all defendants; (9) unfair or deceptive trade practices and unfair

methods of competition by all defendants; (10) civil conspiracy by all defendants except Kathy

Tilley; and (11) antitrust violations under the Sherman Act by all defendants.  Ms. Shell seeks

damages, compensatory and punitive, and injunctive relief enjoining further unlawful acts and

requiring the Defendants to print retractions and apologies.

## IV.    Analysis

The motions to dismiss in this case raise a variety of issues that can be categorically

grouped.  The Court will focus first on issues pertaining to representation in this action and the

effect of other pending cases upon determination of the motions to dismiss in this case, then

those implicating personal jurisdiction, and finally those asserting Ms. Shell's failure to state a

claim on which relief can be granted.

### A.    Representation of  Business Entities

It is a long-standing rule that a corporation must be represented by an attorney to appear

in federal court.  *See Tal v. Hogan*, 453 F.3d 1244, 1254 (10th Cir. 2006).  This general rule is

equally applicable to corporations, partnerships, and associations pursuant to 28 U.S.C. § 1654.

*See Rowland v. Cal. Men's Colony*, 506 U.S. 194, 202 (1993); *Yates v. Portofino Equity &*

*Mgmt. Co., LLC*, 2009 U.S. Dist. LEXIS 73480, at *8–9 (D. Colo. Aug. 17, 2009).  Furthermore,

D.C. Colo. L. Civ. R. 11.1 provides that "[o]nly pro se individual parties and members of this

court's bar may appear or sign pleadings, motions, or other papers."  In fact, this Court has

previously warned the parties in this action that any company may only appear through a

licensed attorney **(#159)**.

On behalf of the Illinois Family Advocacy Coalition, Ms. Kernaghan-Baez[3] filed a motion to dismiss **(#39)**. Ms. Shell argues that Ms. Kernaghan-Baez cannot appear on behalf of the Family Advocacy Coalition. Ms. Kernaghan-Baez responds that IFAC does not, and never had, any assets, but she does not contest that it is an entity separate and apart from her, *i.e.* she does not argue that it is her alter ego. Because the IFAC appears to be an entity and it is not represented by counsel, the Court cannot determine the motion. Accordingly, it is **DENIED**, with leave to renew when it is represented by counsel.

Mr. Tower, acting *pro se*, filed a Motion to Dismiss **(#217)** on behalf of himself and AFRA.[4] Ms. Shell argues that Mr. Tower cannot appear on behalf of AFRA. Mr. Tower responds that AFRA is a website domain name for a public website that he owns and operates, but that it has no identity as an entity separate from him. Ms. Shell does not contest this characterization. As Mr. Tower has stated that AFRA is merely a website name, the Court shall treat AFRA as an alias of Mr. Tower. AFRA will be deleted from the caption of this case.

Mr. Wiseman has also filed a *pro se* motion to dismiss **(#240)** on behalf of himself and Wiseman Studios. Ms. Shell contends that Mr. Wiseman may not represent Wiseman Studios. Mr. Wiseman responds that Wiseman Studios is not an entity separate from him, but is merely a name by which he publishes a website. As a consequence, the Court shall treat Wiseman Studios as an alias of Mr. Wiseman. Wiseman Studios shall be deleted from the caption of this case.

---

[3] Ms. Kernaghan-Baez has also filed two motions to dismiss regarding the claims against her personally **(#54, 206)**. These are addressed *infra*.

[4] Notably, this Court has previously stricken an answer filed on behalf of AFRA by Ms. Kernaghan-Baez **(#43)**.

## B.     Effect of Other Pending Cases

Three Defendants, Ms. Kernaghan-Baez **(#54)**,[5] Mr. Henderson **(#168)**, and Ms. Swallow **(#172)**, move *pro se* to dismiss based on the pendency of other actions in state court that concern the same issues raised in this action.

Ms. Kernaghan-Baez alleges that there is a pending California state court action concerning the same issues. Ms. Shell responds that third-party claims against these defendants were dismissed from the California action without prejudice on December 31, 2008, and therefore the action is not pending as to them.

The Court liberally construes Ms. Kernaghan-Baez's motion as seeking dismissal based on the abstention principle announced in *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). The *Colorado River* doctrine controls when there is a concurrently pending parallel state court action. *See Rienhardt v. Kelly*, 164 F.3d 1296, 1302 (10th Cir. 1999). Under the doctrine, a federal court may dismiss or stay a federal suit when pending state court litigation will resolve the issues presented in the federal case. Because the rationale for such deferral is to conserve judicial resources, its application is limited to exceptional circumstances, *i.e.*, where there is the "clearest of justifications" warranting dismissal. A court evaluates four factors in determining whether abstention is appropriate: (1) simultaneous jurisdiction over a single res; (2) the relative convenience of the fora; (3) the order the proceedings were initiated; and (4) the need to avoid piecemeal litigation.

In this case, there is an insufficient showing of exceptional circumstances to justify

---

[5] This is Ms. Kernaghan's first motion to dismiss regarding the claims against her personally. As discussed *infra*, she also asserts the defense of lack of personal jurisdiction in a second motion to dismiss.

abstention. Although it appears that the California state court case was initiated first, this court cannot determine whether the California action involves the same claim, issue or property that is the subject of this action. Accordingly, the Court declines to abstain from hearing this action under the *Colorado River* doctrine based on the existence of a pending action in a California state court. Ms. Kernaghan-Baez's Motion to Dismiss **(#54)** is **DENIED**.

Mr. Henderson argues that dismissal of this action is warranted under the doctrine of issue preclusion also related to a California state action. Liberally construing Mr. Henderson's *pro se* pleading, the Court considers both the doctrines of issue preclusion/collateral estoppel and claim preclusion/*res judicata.*

To determine the preclusive effect of a prior action, the Court looks to the law of the state of the judgment. *See Bolling v. Denver*, 790 F.2d 67, 68 (10th Cir. 1986). In California, determination of factual or legal issues are precluded in an action if: (1) an issue was previously decided in a prior action, and the issue is identical with the issue presented in the action in question; (2) the issue was actually litigated; (3) the issue was necessarily decided; (4) the decision in the prior action was final and on the merits; and (5) the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication. *See People v. Garcia*, 141 P.2d 197, 201 (Cal. 2006). In contrast, claim preclusion applies when: (1) there is a final judgment on the merits in an earlier action; (2) the cause of action is the same in both suits; and (3) the parties in the current action are the same or in privity with the prior parties. *See Mycogen Corp. v. Monsanto Co.*, 51 P.3d 297, 301 (Cal. 2002).

Based on the record before the Court, it appears that neither doctrine applies. Both doctrines require a final determination in the prior action. There is no evidence before this Court

that there has been a final determination in the California state action. Accordingly, Mr. Henderson's Motion to Dismiss (#168) is **DENIED**.

Finally, Ms. Swallow argues that the doctrine of *res judicata* precludes Ms. Shell's conspiracy claim based on the fact that Ms. Shell "already sued Defendant Swallow in Florida." Liberally construing her pleading, the Court again addresses both issue preclusion and claim preclusion, but concludes that neither is applicable here.

In Florida, relitigation of issues is precluded when (1) the parties are identical; (2) the issue is identical; (3) the issue was fully litigated; (4) there was a final determination of the issue. *See Dep't of Health & Rehabilitative Servs. V. B.J.M*, 656 So.2d 906, 910 (Fla. 1995). Claim preclusion applies when there was a final judgment on the merits and there is identity as to (1) the thing sued for; (2) the cause of action: (3) the persons or parties to the cause of action; and (4) defendants to the action. *See Topps v. State*, 865 So.2d 1253, 1255–56 (Fla. 2004). Again, there is no indication that a final judgment was entered in the Florida action. Accordingly, the Court does not find that issue preclusion or claim preclusion bars the litigation of this case or any of the issues presented therein with respect to Ms. Swallow. The personal jurisdiction issues raised by Ms. Swallow in her Motion to Dismiss are discussed *infra*.

C.     **Consent to Personal Jurisdiction**

Defendants Ms. Jackson, Mr. Dutkiewicz, Ms. Barnes, CPS Watch, Inc. ("CPS Watch"), Ms. Thompson, Ms. Swallow, Ms. Tower, Ms. Kernaghan-Baez, Mr. Tower, Mr. Wiseman, and Mr. Kiefer (the "Moving Defendants") all request dismissal of claims against them due to the absence of personal jurisdiction. Each defendant contends that he or she does not have the requisite minimum contacts with Colorado. Ms. Shell responds to some of these Defendants'

motions with the argument that the Defendants have consented to the Court's exercise of personal jurisdiction. The Court will address this contention first.

### 1.    Mr. Dutkiewicz (#66)

Ms. Shell responds to Mr. Dutkiewicz' motion by arguing that he waived the defense of lack of personal jurisdiction in accordance with Fed R. Civ. P. 12(h) when he filed an entry of appearance in this matter. It is true that under Fed. R. Civ. P. 12(h), a defendant waives any objection based on personal jurisdiction by filing a responsive pleading that does not contain that objection. However, Mr. Dutkiewicz's entry of appearance as a *pro se* litigant is not a responsive pleading and therefore did not act to waive his defense. Indeed, his Motion to Dismiss, which is his responsive pleading, asserts the defense of personal jurisdiction. The substance of his argument (as well as substantive issues[6]) will be addressed *infra.*

### 2.    Ms. Kernaghan-Baez (#206)[7]

Ms. Shell argues that Ms. Kernaghan-Baez waived the defense of personal jurisdiction by filing a prior Motion to Dismiss **(#54)** based on the pendency of another action in California state court and did not raise the defense. However, Ms. Kernaghan-Baez expressly stated in her prior Motion to Dismiss that she was not consenting to personal jurisdiction in Colorado. Moreover, liberally construing Ms. Kernaghan-Baez's pleadings, the Court construes Ms. Kernaghan-

---

[6] Ms. Shell does not address these, and instead asks for leave to do so. No good cause has been shown for a delay in her response to the substantive issues, therefore the Court denies her request to supplement and addresses Mr. Dutkiewicz's Motion to Dismiss on its merits.

[7] Notably this is the third motion to dismiss filed by Ms. Kernaghan-Baez. The first motion she filed was on behalf of Illinois Family Advocacy Coalition and, as discussed *supra*, is denied. The second motion, also discussed *supra*, was based on the pendency of a substantially similar action in California state court. The third motion is based on lack of sufficient contacts with Colorado. It is this argument that Ms. Shell argues has been waived.

Baez's statement as indicating her intent to file a motion to dismiss based on lack of personal jurisdiction in a separate document. Ms. Shell is not prejudiced by such construction of Ms. Kernaghan-Baez's motion as she had notice of Ms. Kernaghan-Baez's intent to contest personal jurisdiction at the time Ms. Kernaghan-Baez filed her first responsive pleading.[8]

### 3.    Ms. Tower (#199)

The docket entry for Ms. Tower's Motion to Dismiss (#199) is dated July 1, 2009. Ms. Shell argues that Ms. Tower's motion should not be considered because it was not filed by the deadline of June 30, 2009. Ms. Tower filed her motion to dismiss by faxing to the Court. The fax cover sheet attached to Ms. Tower's Motion to Dismiss is dated June 30, 2009. Although it was docketed on July 1, 2009, the Court deems its submission to be timely.

### 4.    Ms. Dutkiewicz (#336)

Ms. Dutkiewicz also moves to dismiss based on lack of personal jurisdiction due to insufficient contacts (#336). Ms. Shell argues that because Ms. Dutkiewicz previously requested dismissal for improper service and did not raise the issue of sufficiency of contacts, under Fed. R. Civ. P. 12(h) her current objection was waived.[9] Ms. Dutkiewicz is deemed to have waived any objection to personal jurisdiction by not raising it when she filed her first motion to dismiss. Unlike Ms. Kernaghan-Baez, as discussed *supra*, Ms. Dutkiewicz did not indicate her intent to contest personal jurisdiction in her first motion. Although Ms. Dutkiewicz is proceeding *pro se*

---

[8] Like Mr. Dutkiewicz, Ms. Kernaghan-Baez raises substantive issues in her Motion to Dismiss. Again, Ms. Shell does not address these, and instead asks for leave to do so. No good cause has been shown for a delay in her response to the substantive issues, therefore the Court denies her request to supplement and addresses Ms. Kernaghan-Baez's Motion to Dismiss for insufficiency of contacts on its merits.

[9] Ms. Dutkiewicz's previous Motion to Dismiss for improper service (#280) was denied (#331, 375).

and her pleadings are entitled to liberal construction, she must still comply with applicable rules and procedures. *See McNeil*, 508 U.S. at 113; *Ogden*, 32 F.3d at 455. Accordingly, her Motion to Dismiss for lack of personal jurisdiction **(#336)** is **DENIED**.

### D.     Personal Jurisdiction Based Upon Minimum Contacts

As noted above, Ms. Jackson, Mr. Dutkiewicz, Ms. Barnes, CPS Watch, Ms. Thompson, Ms. Swallow, Ms. Tower, Ms. Kernaghan-Baez, Mr. Tower, Mr. Wiseman, and Mr. Kiefer (the "Moving Defendants") have moved to dismiss the claims against them for lack of personal jurisdiction due to insufficiency of contacts with Colorado. Each defendant contends that because they lack the requisite minimum contacts with the state of Colorado, this Court cannot exercise of personal jurisdiction over them.

Ms. Shell responds to each motion to dismiss[10] arguing that this Court may properly exercise personal jurisdiction over each of these Defendants based on either general jurisdiction (based on multiple or extensive contacts with Colorado) or specific jurisdiction (specific, often limited, contacts with Colorado such as by the monitoring or use of a website, agency relationships, a conspiracy, actions subject to RICO, and a forum selection clause in a contract). The burden to demonstrate jurisdiction over each defendant is on Ms. Shell. *See OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998). A court may either hold an evidentiary hearing and determine the facts pertinent to personal jurisdiction, or may defer to allegations made by a plaintiff, but in such event, the plaintiff must establish those facts at trial. When the court does not hold an evidentiary hearing, the plaintiff need only make a *prima facie*

---

[10]  Rather than setting out an argument as to each motion, Ms. Shell simply instructs the Court to refer to a general brief on the law. For purposes of this ruling, the Court has referred to the brief as a response to each motion, however, in the future, Ms. Shell must separately respond to any motions.

showing of facts sufficient to establish personal jurisdiction.

### 1. General and Specific Jurisdiction

For a court to exercise personal jurisdiction over a defendant, there must both a showing that (i) jurisdiction is proper under the laws of the forum state and (ii) the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment. *See Benton v. Cameco Corp.*, 375 F.3d 1070, 1075 (10th Cir. 2004). Colorado's long arm statute is coextensive with the constitutional limitations imposed by the due process clause; therefore, the inquiry collapses into a single inquiry: whether jurisdiction is consistent with the due process clause. *See id.*

The due process clause requires that the nonresident defendant have "minimum contacts" with the forum state. *See OMI Holdings, Inc.*, 149 F.3d at 1091 (quoting *World-Wide Volkswagon Corp. v. Woodson*, 444 U.S. 286, 291 (1980)). The "minimum contacts" standard may be met by showing either general or specific jurisdiction over the defendant. *See OMI Holdings*, 149 F.3d at 1090-91. First, a court may exercise general jurisdiction over a defendant for any claim, whether arising from activities in the state or not, if the defendant has sufficiently strong business contacts with the forum state. Because general jurisdiction is not tied to the events forming the basis for the litigation, however, a court imposes a stringent minimum contacts test, requiring the defendant to have "continuous and systematic general business contacts" with the forum state.

Alternatively, a court may exercise specific jurisdiction over a defendant if the defendant's actions in or directed at the forum give rise to the litigation. The specific personal jurisdiction test is two-pronged. There is an interplay between the two prongs such that the stronger one prong, the weaker the other prong can be for the exercise personal jurisdiction.

Under the first prong, a court decides whether the defendant has sufficient minimum contacts with the forum state such that he should "reasonably anticipate being haled into court there." This inquiry requires a determination of whether the defendant "purposefully directed" its activities at residents of the forum and whether the action "arises out of or relates to" the defendant's own activities within the state and create a "substantial connection" with the forum state.

The second prong of the specific jurisdiction analysis is whether the exercise of personal jurisdiction over the defendant offends "traditional notions of fair play and substantial justice." This inquiry requires a determination of whether personal jurisdiction over a defendant with minimum contacts is reasonable in light of the circumstances surrounding the case. In assessing reasonableness, a court considers: (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies.

The Moving Defendants each argue that this Court cannot exercise either general or specific jurisdiction over them. They argue that they do not have sufficient minimum contacts for general jurisdiction because they neither live nor work in Colorado, have no assets in Colorado, and do not conduct business either in or with residents of Colorado. With regard to specific jurisdiction, they argue that they have done nothing directed at Colorado that gives rise to this litigation.

Ms. Shell's showing does not establish that any of the Moving Defendants have the

requisite "continuous and systematic general business contacts" with Colorado necessary to subject them to general jurisdiction in Colorado. She offers only conclusory allegations that the Defendants conduct business within Colorado or with Colorado residents. This is not sufficient. Without specific factual allegations as to each Defendant's business activities in Colorado, the Court cannot determine whether the Defendant conducted business activities within the state of Colorado to such a degree that it would be subject to general jurisdiction in Colorado.

Similarly, Ms. Shell's showing is insufficient to establish specific jurisdiction over any of the Moving Defendants. Again, all of her allegations are conclusory and generally made as to all Defendants. She offers no facts pertinent to any Defendant or to any act that would evidence that a Defendant "purposefully directed" his or her business or personal activities at Colorado and that these activities gave rise to this litigation. Regardless of Ms. Shell's contention that her arguments are not merely conclusory, but are founded in fact, she does not present specific factual averments regarding any Defendants' actions within Colorado.[11]

Ms. Shell argues that these Defendants have directed their activities at Colorado through their control over or participation in websites that are available for the public to access nationwide.[12] When a website is offered as the basis for personal jurisdiction, there is customarily a distinction made between passive websites, moderately interactive websites, and interactive websites. *See Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1296

---

[11]  Ms. Shell alleges that CPS Watch has representatives or agents in Colorado. But, this is not sufficient because it is unaccompanied by any fact that pertains to the scope or extent of business that CPS Watch does in Colorado and does not indicate whether the actions of the representatives in Colorado gave rise to the disputes at issue here.

[12]  These websites are the AFRA website owned and operated by Mr. Tower, the CPSWatch website, the Wiseman Studio website run by Mr. Wiseman, and the Connecticut DCF Watch website run by Mr. Dutkiewicz.

(10th Cir. 1999).  A passive website provides no interaction between the user and the website; it simply posts information for interested viewers to read.  By itself, a passive website does not constitute sufficient minimum contacts.  At the opposite end of the spectrum are interactive websites that allow for the knowing and repeated transmission of data over the internet.  Interactive websites are sufficient to create personal jurisdiction over a defendant if the website's functions demonstrate that the defendant clearly does business over the internet.  *See id.*; *see also Rainy Day Books, Inc. v. Rainy Day Books & Café*, 186 F. Supp. 2d 1158 (D. Kan. 2002) (finding personal jurisdiction based on a highly interactive website that, *inter alia*, allowed viewers to subscribe to a mailing list, purchase books online through a virtual store, and search for particular products, and sent emails to purchasers to confirm purchases and shipments); *Nutraceutical Corp. v. Vitacost.com, Inc.*, 2006 U.S. Dist. LEXIS 33762 (D. Utah May 25, 2006) (finding personal jurisdiction based on a highly interactive website that allowed viewers to search for, purchase, and pay by credit card for products).  In the middle of the spectrum are moderately interactive websites which allow for some exchange of information between a web-user and the website.  Whether such a website is sufficient to create personal jurisdiction depends on the level of interactivity and the commercial nature of the exchange of information .

 In *Boppy Co. v. Luvee Prods. Co.*, 72 U.S.P.Q.2d 1577 (D. Colo. 2004), this Court addressed a moderately interactive website.  To initially determine the type of website, the Court considered the level of interactivity and the commercial nature of the exchange of information occurring on the website.  Concluding that the site was moderately-interactive, the Court ruled that the website, by itself, did not support purposeful availment of the forum.  The Court noted, however, that in some circumstances a moderately-interactive website, especially if combined

with other evidence of purposeful availment, could be sufficient to support personal jurisdiction. Thus, to determine whether a moderately interactive website is sufficient for personal jurisdiction a court must have specific evidence about the website and how it is used.

As to the commercial nature of any website Ms. Shell offers no facts, only conclusions that they "do business." Indeed, the allegation that the websites "provide goods and services" such as child welfare protective services, investigations, and the like to the public, including Colorado, are not substantiated with any specific factual allegations. There are no factual allegations regarding the specific goods and services provided, how users utilize the goods and services, or whether they can purchase them directly from the websites.

With regard to interactivity, Ms. Shell generally states that users can join and participate in discussion groups. There is, however, no indication that the website provides anything more than a forum for the discussion groups, *i.e.*, there is no interactivity with the website itself (or the owner or operator of the website) but only with other discussion group members. While this allegation shows some level of interactivity, it is not commercial in nature nor does it indicate any purposeful availment of the laws of foreign states such as Colorado. Accordingly, there is no basis on which to conclude that the websites are highly interactive and, therefore, form a sufficient basis on which the Court can exercise personal jurisdiction over any Defendant.

Rather, it appears that all of the websites are either passive websites or moderately-interactive websites. If the websites are classified as passive, *i.e.*, they only provide information, then they are insufficient to establish personal jurisdiction. *See Soma*, 196 F.3d at 1296. If they are classified as moderately interactive websites, *i.e.*, there is some exchange of information between the user and the host, Ms. Shell cannot rely on them alone to establish personal

jurisdiction over the Moving Defendants without coming forth with additional evidence of purposeful availment, *i.e.*, information regarding the level of interactivity and commercial nature of the websites. *See Boppy*, 72 U.S.P.Q.2d at 1579. As discussed, Ms. Shell has not done this. Therefore, Ms. Shell cannot rest on the activities of the websites to subject any of the Moving Defendants to personal jurisdiction in this Court.[13]

### 2. Specific Jurisdiction Based on an Agency Relationship

The agency theory of personal jurisdiction is rooted in the concept that the principal is responsible for the actions of the agent. *See Goettman v. N. Folk Valley Rest (In re Goettman)*, 176 P.3d 60, 67 (Colo. 2007).[14] An agent's actions within the forum state may subject his principal to the jurisdiction of the forum state. *See Kuenzel v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 458 (10th Cir. 1996). Indeed, the method by which a nonresident corporate entity creates contacts for purposes of personal jurisdiction is through its authorized representatives, *i.e.*, its employees, directors, officers, and agents. *Id.*; *see also Curtis Pub. Co. v. Cassel*, 302 F.2d 132, 137 (10th Cir. 1962).

Ms. Shell appears to misunderstand this theory of jurisdiction. The agency theory of jurisdiction subjects the principal to the jurisdiction of a state for acts of an agent in or directed to the forum state. It does not, however, subject an individual agent to the

---

[13] The Court notes that even if one or more of these websites were found to be viable bases on which to base an exercise of personal jurisdiction, *i.e.*, highly-interactive or moderately-interactive with additional evidence of purposeful availment, not every individual defendant associated with that website would be subject to personal jurisdiction based on that website. The Court need not, however, address which defendants would be subject to personal jurisdiction based on the websites as no website provides a basis for such jurisdiction.

[14] Notably, however, the inquiry as to whether an agent's actions are sufficient for purposes of personal jurisdiction is separate from whether the agent's actions are sufficient to impose liability on the principal.

jurisdiction of a state based on the actions of the principal or corporate entity. Thus, any of the Moving Defendants' status as an "agent" or "member" of AFRA or other entity does not subject them to personal jurisdiction in Colorado even if AFRA or other entity was subject to personal jurisdiction in Colorado. Furthermore, the Court determined *supra* that Ms. Shell has not demonstrated that any website is sufficiently interactive to subject its owners or moderators to personal jurisdiction in Colorado.

The only principal who has moved for dismissal is CPS Watch. Ms. Shell, however, has not demonstrated that any of CPS Watch's agents, in particular Ms. Swallow or Ms. Thompson, have undertaken actions within in or directed at Colorado sufficient to subject CPS Watch to jurisdiction here. Indeed, Ms. Shell has not alleged that either Ms. Swallow or Ms. Thompson have undertaken any activities in Colorado.

Thus, the Moving Defendants are not subjected to personal jurisdiction in Colorado based on an agency theory of personal jurisdiction.

### 3. Jurisdiction Based on a Conspiracy

The Tenth Circuit has acknowledged that, in some circumstances, personal jurisdiction may be exercised based on the existence of a conspiracy and acts taken in furtherance of the conspiracy by a co-coconspirator in the forum state. *See Melea, Ltd. v. Jawer Sa*, 511 F.3d 1060, 1069 (10th Cir. 2007). To exercise personal jurisdiction based on a conspiracy theory, the plaintiff must come forward with more than bare allegations of a conspiracy; the plaintiff must allege facts that would support a *prima facie* showing of a conspiracy. *See id.* The elements of a civil conspiracy are (1) a combination of two or more persons; (2) an object to be accomplished; (3) a meeting of the minds in the object or course of action; (4) one or more unlawful, overt acts;

and (5) damages as the proximate cause thereof. *See Orient Mineral Co. v. Bank of China*, 506 F.3d 980, 1004 (10th Cir. 2007).

Here, Ms. Shell has not alleged sufficient facts to make a *prima facie* showing of conspiracy. She has not provided anything more than conclusory allegations that the Moving Defendants agreed on a common goal or object. Mere conclusory allegations that parties were involved in a conspiracy is insufficient. For example, Ms. Shell's allegation that the "defendants knowingly entered into the conspiracy", that "the conspiracy began in August 2000", and that the "defendants conspired to commit multiple wrongs" are not sufficient to make a *prima facie* showing as to a meeting of the minds regarding the object of the conspiracy.

Ms. Shell's specific allegations that both Mr. Henderson and Mr. Dutkiewicz individually published statements on their respective websites that Ms. Shell's website material was no longer copyrighted does not show any agreement between these two parties, or with any other defendant, regarding Ms. Shell. Similarly, Ms. Jackson's alleged posting of the statement "Heigh Ho, Heigh Ho, a-stealing we will go . . . duly lifted and placed in our JFF files section, Al!! Best, Sue "the Filch" J. In Mass." on a website does not demonstrate an agreement to deprive Ms. Shell of her rights. Although it indicates that something was "stolen" and placed in the "JFF files section", it does not relate in any way to Ms. Shell nor her proprietary information nor does it indicate that any other person agreed to the object of this statement.

Moreover, Ms. Shell has not alleged that any alleged co-conspirator engaged in a specific overt act in Colorado sufficient to subject all other co-conspirators to personal jurisdiction in Colorado. Thus, exercising jurisdiction over the Moving Defendants based on a conspiracy theory is not appropriate.

### 4.       Jurisdiction Under RICO

If Congress statutorily authorizes nationwide service of process, then proper service establishes personal jurisdiction over a defendant, provided that the court's exercise of jurisdiction comports with the Fifth Amendment's due process guarantee. *See Peay v. Bellsouth Med. Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir. 2000). RICO includes two provision that arguably could create nationwide jurisdictional reach. First, subsection (b) provides that "in any district court of the United states in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States." Subsection (d) provides that "all other process in any action or proceeding under this chapter may be served on any person in any judicial district in which such person resides, is found, has an agent, or transacts his affairs."

In *Cory v. Aztec Steel Bldg., Inc.*, the Tenth Circuit joined the Second, Seventh, and Ninth Circuits[15] in holding that, pursuant to subsection (b), when a civil RICO action is brought in a district court where personal jurisdiction can be established over at least one defendant, summonses can be effected nationwide on other defendants if required by the ends of justice. *See* 468 F.3d 1226, 1229–31 (10th Cir. 2006).[16] Thus, to determine whether nationwide

---

[15] *See PT United Can Corp. v. Crown Cork & Seal Co.*, 138 F.3d 65, 71–72 (2d Cir. 1998); *Lisak v. Mercantile Bancorp, Inc.*, 834 F.2d 668, 671 (7th Cir. 1987); *Butchers Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 538 (9th Cir. 1986). The District of Columbia Circuit has also adopted this position. *See FC Inv. Group LC v. IFX Mkts., Ltd*, 529 F.3d 1087, 1099 (D.C. Cir. 2008).

[16] Conversely, the Fourth and Eleventh Circuits have determined that subsection (d) of RICO provides a statutory basis for personal jurisdiction. *See  ESAB Group, inc. V. Centricut, Inc.*, 126 F.3d 617, 627 (4th Cir. 1997); *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 942 (11th Cir. 1997).

jurisdiction is appropriate under RICO, the Court engages in a three step analysis: (1) whether personal jurisdiction can be established over one defendant; (2) whether the ends of justice require nationwide service; and (3) whether the exercise of jurisdiction comports with due process. As to the second step, the Tenth Circuit has not provided a bright line rule for the "ends of justice" analysis, rather noting that it is a "flexible concept uniquely tailored to the facts of each case."

Here, Ms. Shell has asserted a RICO claim against all of the Defendants in this action. Thus, if she meets the three requirements delineated above, all defendants would be subject to the jurisdiction of this Court based on RICO. Certain defendants, however, have moved to dismiss the RICO claim for failure to state a claim. If they succeed on their Motion to Dismiss regarding the RICO claim generally, *i.e.*, not only specifically as to them, then RICO would not provide a basis for personal jurisdiction. Accordingly, the Court first determines whether Ms. Shell has sufficiently stated a RICO claim. If she has, then the court shall address whether nationwide jurisdiction is proper.

The RICO statute provides a private right of action for those injured by violations of section 1962. 18 U.S.C. § 1964(c). To assert such a civil RICO claim, a plaintiff must demonstrate four elements: (i) conduct (ii) of an enterprise (iii) through a pattern (iv) of racketeering activity. *See Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir. 2002). The term "enterprise" is statutorily defined and includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). In addition to the enterprises specifically enumerated in the statute, an enterprise may be any union or group of individuals associated in

fact for a common purpose of engaging in a course of conduct. *See United States v. Turkette*, 452 U.S. 576, 580, 583 (1981). The existence of such an association-in-fact is proven by evidence of an ongoing organization, either formal or informal, under which the various associates function as a continuing unit. In *Boyle v. United States*, 129 S.Ct. 2237, 2243 (2009), the Supreme Court concluded that an association-in-fact must have a structure with three features: purpose, relationships among those associated with the enterprise, and longevity.

In this case, neither the Complaint nor Ms. Shell's responses to the motions to dismiss sufficiently allege an enterprise. Ms. Shell argues that the existence of an association-in-fact is apparent from the Defendants' membership and participation in various groups (including AFRA, CPS Watch, and other child welfare reform groups) created for the purpose of engaging in legitimate activities related to child welfare reform. She contends that this association-in-fact has a continuity of structure and personnel, but provides no additional factual allegations.

Indeed, Ms. Shell provides no specific allegations as to the structure of any group, the relationship between the groups, the relationship between individuals within a group or the overarching association-in-fact, nor the longevity of the groups or its members. Without such allegations, the Court cannot ascertain whether the alleged association-in-fact has the requisite structure to constitute an enterprise under RICO. Although these individuals may have a common purpose of engaging in *some* activity related in *some way* to child welfare, there is nothing before the Court to indicate that there is any relationship between the group members such that the entire association-in-fact functions as a continuing unit. The Court acknowledges that membership in a group may demonstrate an association-in-fact under RICO in some circumstances. Here, however, Ms. Shell has not presented any allegations that AFRA, CPS

Watch, or the other unnamed groups are related in any way to each other, or that membership in any of these groups leads to the member becoming part of a functioning unit. Therefore, as Ms. Shell has not alleged sufficient facts to state a RICO claim, she has not established a *prima facie* case for personal jurisdiction based on RICO.

### 5. Forum Selection Clause

Ms. Shell also asserts that the forum selection clause in a signed contract subjects Ms. Swallow to personal jurisdiction in this Court. The Complaint alleges that, in connection with attendance of one of Ms. Shell's seminars in Florida in March 2005, Ms. Swallow signed a contract regarding dissemination of Ms. Shell's proprietary material which included a forum selection clause subjecting Ms. Swallow to the jurisdiction of Colorado courts. The Complaint, however, indicates that Ms. Shell no longer possesses the contract as it was stolen by Ms. Swallow.

Construing the facts in the Complaint as true, as is required on a motion to dismiss, the Complaint sufficiently establishes a *prima facie* showing of the existence of a forum selection clause subjecting Ms. Swallow to the jurisdiction of this Court. However, as there is a genuine factual dispute regarding the existence of this contract, the ultimate determination of personal jurisdiction over Ms. Swallow is subject to an adequate showing at trial regarding the existence and contents of the contract.

Ms. Shell also argues that various Defendants are subject to the jurisdiction of this Court based on a forum selection clause contained on her website which states "Anyone visiting this site consents to jurisdiction and venue remaining in El Paso County, Colorado." This, however, is not sufficient to subject these parties to the jurisdiction of this Court because Ms. Shell does

not sufficiently allege that any Defendant manifested their intent to consent to this forum

selection clause. Absent such allegation, it would be unreasonable to exercise personal

jurisdiction over the Defendants based solely on their **viewing** of this statement regarding

jurisdiction. *See Benton*, 375 F.3d at 1075 (noting that an exercise of personal jurisdiction over a

defendant must comport with due process). Furthermore, the Court notes that the provision

references only courts in El Paso County, Colorado, which arguably does not include this Court.

*See Am. Soda, LLP v. U.S. Filter Wastewater Group, Inc.*, 428 F.3d 921, 926 (10th Cir. 2005)

(holding that a forum selection clause requiring suit to be brought in "Courts of the State of

Colorado" excluded federal courts).

### 6.    Conclusion

 Because Ms. Shell has not met her burden of making a *prima facie* showing of personal

jurisdiction[17] under any theory as to Ms. Jackson, Mr. Dutkiewicz, Ms. Barnes, CPS Watch, Ms.

_____

[17] In her responses, Ms. Shell references the "effects test" articulated in *Calder v. Jones*, 465 U.S. 783 (1983). Although Ms. Shell appears to acknowledge that the effects test does not, alone, provide a basis for personal jurisdiction, the Court emphasizes that even if Ms. Shell felt the"effects" of the Defendants' allegedly tortious actions in Colorado, it is insufficient to establish personal jurisdiction over these Defendants.

 *Calder* addressed a suit brought by a California resident against a Florida corporation for libel, invasion of privacy, and intentional infliction of emotional distress. The Supreme Court determined that the Florida corporation's contacts with California were sufficient to establish minimum contacts because the allegedly libelous publication reported on activities in California, most of the harm or "effects" to the plaintiff's reputation occurred in California, and the defendant's tortious acts were aimed at California. The Tenth Circuit, however, has noted that in dealing with business torts and contract claims, the mere allegation that a defendant's tortious acts have injured a forum resident is not sufficient to establish the constitutionally required minimum contacts. *See Far W. Capital v. Towne*, 46 F.3d 1071, 1079 (10th Cir. 1995). Rather, the jurisdictional question must be determined based on a particularized inquiry as to the extent to which the defendant has purposefully availed itself of the benefits of the forum's laws. In *Ast Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1060–61 (10th Cir. 2008), the Tenth Circuit confirmed that although the fact that the tortious injury occurs in Colorado may be sufficient to satisfy the first prong of the long arm statute—that the tort occurred in Colorado, due process still requires that a court determine whether the exercise of jurisdiction is reasonable, which requires analysis of the extent to which the defendant has purposefully availed itself of the benefits of the forum's laws.

 In this case, although Ms. Shell may have felt the effects of the Defendants' allegedly tortious

Thompson, Ms. Tower, Ms. Kernaghan-Baez, Mr. Tower, Mr. Wiseman, and Mr. Kiefer, all claims against them must be dismissed.[18]  With respect to Ms. Swallow, however, the Complaint makes a *prima facie* showing of personal jurisdiction and, therefore, the claims against her are not dismissed.

####    E.    Failure to state a claim

Ms. Contreras moves for dismissal pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted because, *inter alia*, the Complaint does not allege any facts regarding her personal participation in any unlawful or tortious activity.

There is a strong presumption against dismissal for failure to state a claim under Rule 12(b)(6).  *See Cottrell, Ltd. v. Biotrol Int'l, Inc.,* 191 F.3d 1248, 1251 (10th Cir. 1999). However, a claim must be dismissed if the complaint does not contain enough facts to make the claim "plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible on its face if the complaint contains sufficient facts for a court to draw an inference that the defendant is liable for the alleged misconduct.  *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *id.* at 556).  Although a plaintiff is not required to include detailed

---

conduct in Colorado, thereby satisfying the first prong of personal jurisdiction analysis for a tort, none of the Moving Defendants have purposefully availed themselves of the benefits of Colorado's laws.  Indeed, as discussed *supra*, there is no indication that any of these Defendants interacted in any way with Colorado, directed their activities at Colorado, or purposefully availed themselves of the laws of Colorado such that they could anticipate being haled in court here.  Thus, because the exercise of jurisdiction over these defendants would not comport with due process, the *Calder's* effects test does not provide a basis on which this Court may exercise jurisdiction over the Moving Defendants.

[18]  Although Ms. Shell requests the opportunity to amend her pleadings should they be found wanting, the Court declines to grant Ms. Shell leave with respect to personal jurisdiction over these Defendants.  Upon motion by a defendant, Ms. Shell has the burden to demonstrate a *prima facie* case of personal jurisdiction.  As she has attempted but failed to do so, further leave to make the requisite showing is not appropriate.

factual allegations in a complaint, a complaint must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action" and must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In reviewing a complaint under Rule 12(b)(6), a court should accept, as true, all well-pleaded facts and construe all reasonable allegations in the light most favorable to a plaintiff. *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).

Ms. Contreras moves to dismiss all claims against her because the Complaint fails to allege any facts as to her specific actions. Ms. Shell responds that she has sufficiently alleged Ms. Contreras' personal participation in the alleged offenses simply by virtue of labeling her one of the "defendants" and alleging that the defendants committed the offenses. This, however, is not sufficient to state a claim upon which relief can be granted. Indeed, such pleading is merely "labels and conclusions" and "formulaic recitation of the facts" insufficient to state a claim and, therefore, does not lead to an inference that Ms. Contreras is liable for the alleged misconduct. Moreover, it is not sufficient to put Ms. Contreras on notice of the claims against her, as required by Fed. R. Civ. P. 8(a). *See Mann v. Boatright*, 477 F.3d 1140, 1148 (10th Cir. 2007) (noting that a claim could be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to provide a short and plain statement of the case sufficient to put the defendant on notice of the bases for the claims). Accordingly, the claims against Ms. Contreras must be dismissed for failure to state a claim.[19]

---

[19] Normally, the Court affords a plaintiff an opportunity to amend the complaint to cure any pleading deficiencies. Here, however, Ms. Shell has not requested the opportunity to amend should the Complaint be found wanting with respect to Ms. Contreras, nor has she suggested the existence of any other facts that could be pled to remedy the identified deficiency. Thus, the Court declines to *sua sponte* grant Ms. Shell leave to replead with respect to her claims against Ms. Contreras. Should Ms. Shell believe that she can cure the pleading defects by amendment, the Court will entertain a motion for leave to amend with specific factual allegations as to Ms. Contreras, but makes no representations as to the likelihood of such a motion being granted.

## F.      Judgment on the Pleadings

Alex Bryan (named in the Complaint as Ringo Kamens) moves to dismiss all of Ms. Shell's claims against him[20] pursuant to Fed. R. Civ. P. 12(c).[21]  In reviewing a motion for judgment on the pleadings pursuant to Rule 12(c), the Court applies the same standards as used in motions under Rule 12(b).  *See Ramirez v. Dep't of Corr.*, 222 F.3d 1238, 1240 (10th Cir. 2000).  Thus, as discussed *supra*, the Court accepts all well-pleaded allegations in the Complaint as true, and construes them in the light most favorable to the Plaintiff.  *Id.*; *Estes v. Wyo. Dep't of Trans.*, 302 F.3d 1200, 1203 (10th Cir. 2002).  And, a claim should not be dismissed unless it does not contain enough facts to make the claim "plausible on its face."  *Twombly*, 550 U.S. at 570.

### 1.      Copyright Infringement Claims

To demonstrate copyright infringement, a plaintiff must demonstrate two elements: (i) ownership of a valid copyright; and (ii) unlawful appropriation of protected portions of the copyrighted work.  *See La Resolana Architects, PA v. Reno, Inc.*, 555 F.3d 1171, 1177 (10th Cir. 2009) (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)).  As to the second element, a plaintiff must show both that the defendant actually copied the copyrighted work and that the elements of the work that were copied were "protected expression and of such importance to the copied work that the appropriation is actionable."  *See Gates Rubber Co. v.*

---

[20]  The Complaint asserts all of the claims against Mr. Bryan except misappriation/theft of trade secrets.

[21]  Mr. Bryan's Motion is properly brought pursuant to Fed. R. Civ. P. 12(c) as he previously filed an answer to Ms. Shell's complaint **(#50, 120)**.  *See Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002) (noting that a motion for judgment on the pleadings is the proper method by which to raise the defense of failure to state a claim after an answer has been filed).

*Bando Chem. Indus.*, 9 F.3d 823, 832 (10th Cir. 1993).

In this case, Mr. Bryan contests Ms. Shell's showing of both elements of a copyright claim and asserts fair use as an affirmative defense. The only allegation in the Complaint relating to Mr. Bryan is that he expressly notified Ms. Shell that he had copied the entire content of her website, saved it to his hard drive and a USB drive, and printed out a single copy.

Even taking these allegations as true, they are insufficient to demonstrate that the allegedly copied works were "protected expression and of such importance to the copied work that the appropriation is actionable." Ms. Shell has submitted the copyright certificates for certain websites and their content,[22] but she has not provided any description of the website content that was registered. Additionally, although the allegations indicate that Mr. Bryan copied the "entire website", Ms. Shell does not specify to which website this refers nor the content of the website that was copied. Without such information, the Court is unable to determine whether the copied content was the same as the registered content, *i.e.*, whether Mr. Bryan actually copied the copyrighted work, or whether the copied works constituted "protected expression and of such importance to the copied work that the appropriation is actionable." Thus, the allegations are insufficient to state a copyright infringement claim.[23]

_____

[22] Although registration is not necessary to hold a valid copyright, only registered works may form the basis of an action for infringement. *See* 17 U.S.C.A. § 411(a); *Reed Elsevier, Inc. v. Muchnick*, 130 S.Ct. 1237 (2010) (concluding that section 411(a)'s requirement of registration prior to suit is not jurisdictional).

[23] Similarly, without specific information as to the content of the website that was copied, the Court cannot analyze Mr. Bryan's affirmative defense of fair use. A determination of whether a use constitutes "fair use" requires consideration of (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work. *See* 17 U.S.C. § 107. Without any allegation concerning the content of the website allegedly copied, the Court is unable to assess these four factors.

Ms. Shell also asserts claims for contributory copyright infringement and vicarious copyright infringement against Mr. Bryan. She bases these claims on the allegation that Mr. Bryan "published articles on the World Wide Web urging the public to infringe my copyright as he had which many did." Mr. Bryan moves to dismiss both of these claims against him for failure to state a claim, in particular that he knew of another individual's direct infringement of Ms. Shell's copyrights.

Although the Copyright Act does not expressly cover contributory or vicarious infringement, these doctrines of secondary liability are well established in the law and are grounded in common law principles of secondary liability. *See Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930–31 (2005); *La Resolana*, 555 F.3d at 1181. Contributory copyright infringement occurs when a defendant induces or encourages direct infringement and vicarious infringement occurs when a defendant profits from direct infringement while declining to exercise a right to stop or limit it.

For contributory infringement, a plaintiff must allege (i) direct copyright infringement by a third-party; (ii) knowledge by the defendant of the direct infringement; and (iii) material contribution to the infringement. *See Columbia Pictures Indus., Inc. v. Redd Horne, Inc.*, 749 F.2d 154, 160 (3d Cir. 1984); *see also CoStar Group, Inc. v. LoopNet, Inc.*, 373 F.3d 544, 550 (4th Cir. 2004); *Gershwin Pub. Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971) ("[O]ne who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another, may be held liable as a 'contributory'

infringer.").  In this case, the Complaint[24] does not sufficiently allege that Mr. Bryan's

inducement to others to violate Ms. Shell's copyright rights actually led to any direct

infringement nor that Mr. Bryan had knowledge of the other direct infringement.  Mr. Bryan's

statement, without more, is not sufficient to state a claim for contributory infringement.

For vicarious infringement, a plaintiff must allege that the defendant (i) had the right and

ability to supervise the infringing activity or infringer; and (ii) possessed a direct financial

interest in the exploited copyrighted materials.  *See Nelson-Salabes, Inc. v. Morningside Dev.*,

284 F.3d 505, 513 (4th Cir. 2002); *Softel, Inc. v. Dragon Med. & Sci. Communs.*, 118 F.3d 955,

971 (2d Cir. 1997) (requiring the defendant have a right and ability to supervise that coalesced

with an obvious and direct financial interest in the exploitation of copyrighted materials).  Here,

the Complaint does not allege that Mr. Bryan financially profited from any direct infringement

committed by another person or that he had the right or ability to supervise anyone or anyone's

infringing activities.  The bare allegation that Mr. Bryan was part of a conspiracy is not sufficient

to subject him to vicarious liability for others' infringing acts.

Accordingly, Ms. Shell's claims against Mr. Bryan for copyright infringement,

contributory copyright infringement, and vicarious copyright infringement are dismissed.

### 2.    Tortious Interference with Business Relationship / Business Contracts

Ms. Shell alleges that Mr. Bryan tortiously interfered with her business relationships by

inducing others to copy the contents of her website without paying, thereby breaching the

unilateral contract on her website.  A claim of tortious interference with contract requires five

---

[24] Ms. Shell submits materials outside the complaint, answers, and attachments to those
documents to support her claims of contributory and vicarious copyright infringement.  These
attachments, however, may not be considered a motion for judgment on the pleadings.  *See* Fed. R. Civ.
P. 12(d); *Alexander v. Oklahoma*, 382 F.3d 1206, 1213–14 (10th Cir. 2004).

elements: (i) an existing valid contract between the plaintiff and a third party; (ii) knowledge by the defendant of this contract; (iii) intent by the defendant for one of the parties to breach the contract; (4) action by defendant which induces a breach of the contract. *See Duhon v. Nelson*, 126 P.3d 262, (Colo. Ct. App. 2005). Alternatively, a claim for tortious interference with prospective business advantage does not require a showing of an underlying contract; rather, the plaintiff must show intentional and improper interference such that a particular contract is prevented from being formed. *See Harris Group, Inc. v. Robinson*, 209 P.3d 1188, 1195–96 (Colo. Ct. App. 2009).

Here, the Complaint does not allege that Mr. Bryan's inducement actually resulted in any breach of contract or prevented the formation of any contract. Although Ms. Shell generally alleges that the "defendants" breached their contracts with her, she provides no factual allegations to demonstrate the existence of any particular contract, that any particular third party breached their contract, or that it was Mr. Bryan's statements that led to such breach of contract. Nor are Ms. Shell's allegations sufficient to demonstrate that Mr. Bryan's actions prevented the formation of any particular contract. Thus, Ms. Shell's claim for tortious interference against Mr. Bryan is dismissed.

### 3. Breach of Contract

Mr. Bryan also argues for dismissal of Ms. Shell's breach of contract claim against him.[25]

---

[25] This claim is not preempted by Ms. Shell's assertion of a copyright infringement claim. Generally, federal law will preempt a state created right if the right may be abridged by an act which, in an of itself, would infringe one of the exclusive rights established by federal law. *See Gates Rubber*, 9 F.3d at 847; *La Resolana*, 416 F.3d at 1199 n.2. The federal Copyright Act will not preempt a state cause of action, however, if the state cause of action on the right requires an extra element beyond the mere copying, etc. proscribed by the Copyright Act, because the state cause of action is qualitatively different from an infringement action. With respect to breach of contract claims, a plaintiff must show the existence of a valid, enforceable copyright. *See Western Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058

To prevail on her claim for breach of contract against Mr. Bryan, Ms. Shell must allege four elements: (1) existence of a contract; (2) performance by herself; (3) failure to perform by Mr. Bryan; and (4) resulting damages. *See Western Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992).

In this case, the Complaint alleges that Ms. Shell's website contains a "Copyright notice/security agreement" which includes "an offer to copy or distribute any content on my website profane-justice.org in exchange for pre-payment of posted license fees equal to $5,000.00 per printed page per copy." The Complaint further alleges that Mr. Bryan copied the material off of the website without paying the requisite licensing fees. Ms. Shell argues that this action manifested Mr. Bryan's acceptance of the terms of the contract and that he breached said contract by failing to pay the licensing fees. The Court disagrees.

Ms. Shell's "Copyright notice/security agreement" set the manner by which offerees could accept the offer—by pre-payment of licensing fees. By her very allegations, however, Mr. Bryan did not pay the licensing fees. Therefore, even if he copied the material off of the website, he did not accept Ms. Shell's offer to enter into a licensing agreement. There being no showing of a valid enforceable contract, the breach of contract claim must fail.[26]

_____

(Colo. 1992). This element is not required to prove a copyright infringement claim and, therefore, it is not preempted by federal law. *See Bowers v. Baystate Techs.*, 320 F.3d 1317, 1324–25 (Fed. Cir. 2003) (noting that most courts have determined that the Copyright Act does not preempt state contract claims).

[26] Mr. Bryan also alleges that he was a minor at the time that he visited Ms. Shell's website. Having concluded that the Complaint does not state a viable breach of contract claim, the Court need not address this issue. However, the Court notes that the contract of a minor is voidable at the election of the minor after he attains his majority. *See Jones v. Dressel*, 623 P.2d 370, 373 (Colo. 1981). Although there may be merit to this argument, a determination of whether Mr. Bryan lacked capacity to enter into the contract is an evidentiary issue best-suited for consideration on summary judgment.

### 4. All remaining claims against Mr. Bryan

As to the remaining claims asserted against Mr. Bryan, the Complaint is devoid of any specific allegations against him. Ms. Shell's conclusory allegations as to all defendants is not sufficient to state a claim against Mr. Bryan. Accordingly, Ms. Shell's claims against Mr. Bryan for false and misleading advertising, unfair and deceptive trade practices, conspiracy, and antitrust/Sherman Act violations are dismissed.[27]

As to all claims asserted against Mr. Bryan, Ms. Shell has requested granted leave to replead to address any deficiency. Leave is granted to file an amended complaint. The amendments may include new, reformulated or additional claims against Mr. Bryan, only.

### G. Sanctions

A number of Defendants move for sanctions against Ms. Shell based on the filing of this lawsuit. The defendants, however, do not provide specific authority under which sanctions are appropriate nor a means by which the amount of damages could be measured. Absent authority for imposition of sanctions and a showing of how the Defendants have been harmed, the Court is disinclined to impose sanctions at this time.

**IT IS THEREFORE ORDERED**:

(1) Defendant Dorothy Kernaghan-Baez's Motion to Dismiss **(#39)**, filed on behalf of the Illinois Family Advocates Coalition, is **DENIED WITHOUT PREJUDICE** for failure to comply with D.C. Colo. L. Civ. R. 11.1.

(2) Defendant Dorothy Kernaghan-Baez's first Motion to Dismiss **(#54)** is **DENIED**.

---

[27] As discussed *supra*, the Complaint does not sufficiently assert a RICO claim as to any Defendant and, therefore, such claim is dismissed for failure to state a claim.

(3)     Defendant Susan Adams Jackson's Motion to Dismiss **(#55)** is **GRANTED IN PART** insofar as it seeks dismissal of the claims against her and **DENIED IN PART** insofar as it seeks any other relief including sanctions.  All claims against Defendant Susan Adams Jackson are **DISMISSED WITHOUT PREJUDICE**.

(4)     Defendant Dee Contreras's Motion to Dismiss **(#58)** is **GRANTED IN PART** insofar as it seeks dismissal of the claims against her and **DENIED IN PART** insofar as it seeks any other relief including sanctions.  All claims against Defendant Dee Contreras are **DISMISSED WITHOUT PREJUDICE**.

(5)     Defendant Thomas Dutkiewicz's Motion to Dismiss **(#66)** is **GRANTED**.  All claims against Defendant Thomas Dutkiewicz are **DISMISSED WITHOUT PREJUDICE**.

(6)     Defendants Cheryl Barnes, CPS Watch, Inc., and Sarah Thompson's Motion to Dismiss **(#112)** is **GRANTED IN PART** insofar as it seeks dismissal of the claims against them and **DENIED IN PART** insofar as it seeks any other relief including sanctions.  All claims against Defendants Cheryl Barnes, CPS Watch, Inc., and Sarah Thompson are **DISMISSED WITHOUT PREJUDICE**.

(7)     Defendant Leonard Henderson's Motion to Dismiss **(#168)** is **DENIED**.

(8)     Defendant Brenda Swallow's Motion to Dismiss **(#172)** is **DENIED**.

(9)     Defendant Ann Tower's Motion to Dismiss **(#199)** is **GRANTED IN PART** insofar as it seeks dismissal of the claims against her and **DENIED IN PART** insofar as it seeks any other relief including sanctions.  All claims against Defendant Ann Tower are **DISMISSED WITHOUT PREJUDICE**.

(10)   Defendant Dee Contreras's Motion to Supplement **(#201)** is **DENIED AS MOOT**.

(11)   Defendant Dorothy Kernaghan-Baez's second Motion to Dismiss **(#206)** is **GRANTED**. All claims against Defendant Dorothy Kernaghan-Baez are **DISMISSED WITHOUT PREJUDICE**.

(12)   Defendant William O. Tower's Motion to Dismiss **(#217)** is **GRANTED IN PART** insofar as it seeks dismissal of the claims against him and **DENIED IN PART** insofar as it seeks any other relief including sanctions. All claims against Defendant William O. Tower are **DISMISSED WITHOUT PREJUDICE**.

(13)   Defendant William Wiseman's Motion to Dismiss **(#240)** is **GRANTED IN PART** insofar as it seeks dismissal of the claims against him and **DENIED IN PART** insofar as it seeks any other relief including sanctions. All claims against Defendant William Wiseman are **DISMISSED WITHOUT PREJUDICE**.

(14)   Defendant Cletus Kiefer's Motion to Dismiss **(#247)** is **GRANTED IN PART** insofar as it seeks dismissal of the claims against him and **DENIED IN PART** insofar as it seeks any other relief including sanctions. All claims against Defendant Cletus Kiefer are **DISMISSED WITHOUT PREJUDICE**.

(15)   Defendant Aimee Dutkiewicz's Motion to Dismiss **(#336)** is **DENIED**.

(16)   Defendant Ringo Kamens a/k/a Alex Bryan's Motion for Judgment on the Pleadings **(#211)** is **GRANTED**. All claims against Defendant Ringo Kamens a/k/a Alex Bryan are **DISMISSED WITHOUT PREJUDICE**.

(17)   Ms. Shell's claim under the Racketeering Influenced and Corrupt Organizations

Act claim is **DISMISSED** as against all defendants.

(18)     Ms. Shell is granted leave to replead, with specific factual allegations, claims against Defendant Ringo Kamens a/k/a Alex Bryan, but no other Defendant currently named, within fourteen days of the date of this Order.

(19)     Request for leave to amend with respect to claims against Defendant Dee Contreras must be made by separate motion filed within fourteen days of this Order.

(20)     Defendants Susan Adams Jackson, Dee Contreras, Thomas Dutkiewicz, Cheryl Barnes, CPS Watch, Inc., Sarah Thompson, Ann Tower, Dorothy Kernaghan-Baez, William O. Tower, American Family Rights Association, William Wiseman, Wiseman Studios, Cletus Kiefer, and Ringo Kamens shall be deleted from the caption in all future filings.

Dated this 31st day of March, 2010

**BY THE COURT:**

*Marcia S. Krieger*

Marcia S. Krieger
United States District Judge
