IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 09-cv-00309-MSK-KMT

SUZANNE SHELL,

    Plaintiff,

v.

LEONARD HENDERSON;
FAMILIES AT RISK DEFENSE ALLIANCE;
FRANCINE RENEE CYGAN;
MARK CYGAN;
ILLINOIS FAMILY ADVOCACY COALITION;
GEORGIA FAMILY RIGHTS, INC.;
DENNIS HINGER;
NATIONAL ASSOCIATION OF FAMILY ADVOCATES;
AIMEE DUTKIEWICZ;
CONNECTICUT DCF WATCH;
ANN DURAND;
BRENDA SWALLOW;
KATHY TILLEY;
RANDALL BLAIR;
LLOYD PHILLIPS;
DESERE' CLABO, a/k/a HOWARD;
UNKNOWN DEFENDANTS DOE 1-15,

    Defendants.

---

**OPINION AND ORDER GRANTING IN PART PLAINTIFF'S MOTION TO RECONSIDER; DENYING PLAINTIFF'S MOTION TO AMEND COMPLAINT AND MOTION TO STRIKE; DENYING DEFENDANT BRYAN'S MOTION TO DISMISS; DENYING DEFENDANT HENDERSON'S MOTION TO AMEND; GRANTING DEFENDANT AIMEE DUTKIEWICZ'S MOTION TO DISMISS; AND DENYING MOTION FOR DISMISSAL BY TORM L. HOWSE**

---

**THIS MATTER** comes before the Court on a number of motions:

(1)  Plaintiff Suzanne Shell's Motion for Reconsideration **(#403**, supplemented at **#433, 459)** of the Court's Order **(#397)** that dismissed multiple defendants; Defendants Cheryl Barnes, CPSWatch, Inc, and Sarah Thompson's Response **(#406)**; Defendant William Wiseman's Response **(#407)**; Defendant Alex Bryan's[1] Response **(#408)**; Defendant Dee Contreras's Response **(#409**; Defendant William § 203(o) Tower's Response **(#422)**; and Ms. Shell's Replies **(#423, 424, 425, 426, 427)**;[2]

(2)  Ms. Shell's Motion to Strike **(#436)** Mr. Henderson's Objections **(#428)** to statements Ms. Shell made in two of her replies **(#423, 424)** to her Motion for Reconsideration **(#403)**;[3]

(3)  Ms. Shell's Motion to Amend **(#415)** her Complaint **(#1)**, with exhibits at **421)**; Defendants Cheryl Barnes, CPSWatch, Inc, and Sarah Thompson's Response **(#429)**, and Ms. Shell's Reply **(#430)**;

---

[1] Ms. Shell named "Ringo Kamens" in the Complaint **(#1)**. Mr. Kamens is also known as Alex Bryan. To aid in consistency with its previous Order, dated March 31, 2010, the Court continues its practice of referring to this individual as Mr. Bryan.

[2] Mr. Henderson filed what he labeled as "Henderson Rebuts Shell Statement on Docs #423 and #424" **(#428)**. The Court interprets this as a surreply. Ms. Shell moves **(#436)** to strike the filing as an inappropriately filed document and because the statements made therein are allegedly false.

In civil practice in this Court, there is no right to file a surreply and Mr. Henderson did not seek leave to file one. However, the Court has reviewed the substance of the objections **(#428)** and concludes that they are not material to the Court's determination of the issues before it. Accordingly, it need not consider this filing as a surreply and Ms. Shell's Motion to Strike **(#436)** is **denied as moot**.

[3] *See supra*, note 2.

(4) Mr. Bryan's Motion to Dismiss **(#431**, briefed in **#432)** Ms. Shell's Proposed Amended Complaint **(#415-1)**; Ms. Shell's Response **(#437)**, and Mr. Bryan's Reply **(#454)**;

(5) Defendant Leonard Henderson's Motion to Amend **(#404)** his Motion to Dismiss **(#168)** that the Court denied **(#397)**, to which no response was filed;

(6) Defendant Aimee Dutkiewicz's Motion to Dismiss **(#405)**, to which no response was filed;

(7) Motion by Tom L. Howse, purporting to act as a "relator" on behalf of the United States seeking dismissal of this action **(#445)**, to which no response has been filed.

Having considered the same,[4] the Court **FINDS** and **CONCLUDES** as follows.

## I. Jurisdiction

The Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 1367.

## II. Material Facts

The Court's Order **(#397)** dated March 31, 2010 (the "March 2010 Order") includes a

---

[4] A number of parties in this action are proceeding *pro se*, including Ms. Shell. In construing these parties' pleadings, the Court is mindful of their *pro se* status and, therefore, the Court construes their pleadings liberally and holds them to a "less stringent standard" than pleadings drafted by lawyers in accordance with *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Such liberal construction is intended merely to overlook technical formatting errors, poor writing style, and other defects in the party's use of legal terminology, citation, and theories. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The Court, however, cannot act as a *pro se* litigant's legal advocate, and a *pro se* plaintiff retains the burden to allege sufficient facts to state a viable claim. Furthermore, *pro se* status does not relieve a party of the duty to comply with the various rules and procedures governing litigants and counsel or the requirements of the substantive law, and in these regards, the Court must apply the same standard to counsel licensed to practice law and to a *pro se* party. *See McNeil v. United States*, 508 U.S. 106, 113 (1993); *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).

detailed recitation of the facts asserted by Ms. Shell in the Complaint **(#1)**, construed most favorably to her.  The Court adopts that recitation as if set forth herein.  In short, Ms. Shell asserts that the Defendants have infringed her copyrighted works that she has posted on her website and/or used at her speaking events and, therefore, breached the contract for use of her copyrighted works.  She also contends that the Defendants have engaged in a conspiracy of copyright infringement against her, violated antitrust statutes, engaged in deceptive and unfair trade practices and advertising, and violated the Racketeer Influenced and Corrupt Organizations Act ("RICO").

The relevant procedural history of the case is as follows:

Ms. Shell filed her Complaint **(#1)** on February 13, 2009.  Multiple defendants moved to dismiss, based on lack of personal jurisdiction and/or due to failure to state a claim.  In the March 2010 Order, the Court denied the motions to dismiss filed by Mr. Henderson **(#168)** and Ms. Dutkiewicz **(#336)** and, therefore, the claims against these defendants remain pending.

Ms. Jackson **(#55)**, Mr. Dutkiewicz **(#66)**, Ms. Barnes **(#171)**, CPS Watch, Inc. **(#171)**, Ms. Thompson **(#171)**, Ms. Swallow **(#172)**, Ms. Tower **(#199)**, Ms. Kernaghan-Baez **(#206)**, Mr. Tower **(#217)**, Mr. Wiseman **(#571)**, and Mr. Keifer **(#247)** moved to dismiss the claims against them for lack of personal jurisdiction due to insufficiency of contacts with Colorado.  In the March 2010 Order, the Court granted each of these Defendants' motions and dismissed the claims against them without prejudice.

Mr. Tower also sought dismissal of the claims against American Family Rights Association ("AFRA") **(#217)**.  Based on Mr. Tower's representation that he and AFRA are synonymous, and the absence of any opposition by Ms. Shell, the Court deleted AFRA from the

caption of the case.

Mr. Bryan **(#211)** and Ms. Contreras **(#58)** moved to dismiss the claims against them for failure to state a claim, which the Court granted. As to claims against Mr. Bryan, Ms. Shell requested the opportunity to replead. The Court granted Ms. Shell fourteen days to "replead, with specific factual allegations, claims against [Mr. Bryan], but no other Defendant currently named." As to claims against Ms. Contreras, Ms. Shell did not request an opportunity to replead. Therefore, the Court directed that Ms. Shell have fourteen days in which to request an opportunity to replead.

After obtaining an extension of time in which to replead, Ms. Shell filed a Motion to Amend **(#415)**, along with an Amended Complaint **(#415-1)** on May 4, 2010 which contains many more allegations and claims than those which were authorized against Mr. Bryan and Ms. Shell. In addition, certain Defendants have filed new motions to dismiss **(#404, 405, 431, 445)**.

### III.   Analysis

#### A.   Ms. Shell's Motion for Reconsideration

The Federal Rules of Civil Procedure do not recognize a "motion to reconsider." Instead, they provide two options to a litigant subject to an adverse order or judgment - to file a motion to alter or amend the order or judgment pursuant to Fed. R. Civ. P. 59(e) or to file a motion seeking relief from the order or judgment pursuant to Fed. R. Civ. P. 60(b). *See Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991). Rule 59(e) applies when the motion for reconsideration is filed within 28 days of the order or judgment; Rule 60(b) governs all other motions. *See* Fed. R. Civ. P. 59(e).

Ms. Shell's motion for reconsideration was filed within 28 days after the Court's Order

and is, therefore, governed by Rule 59(e). Reconsideration of a prior order under Rule 59(e) appropriate to review newly-discovered evidence, to correct clear error, or prevent manifest injustice. *Major v. Benton*, 647 F.2d 110, 112 (10th Cir. 1981). It is not a tool to re-raise issues that were or could have been raised in prior briefing. *Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991). Relief under this rule requires extraordinary circumstances, such as where the Court has obviously misapprehended a party's position on the facts or the law, or the Court has mistakenly decided issues outside of those the parties presented for determination. *See, e.g.*, *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000); *Adams v. Reliance Standard Life Ins. Co.*, 225 F.3d 1179, 1186 n.5 (10th Cir. 2000); *Sithon Maritime Co. v. Holiday Mansion*, 177 F.R.D. 504, 505 (D. Kan. 1998).

Although nominally addressing dismissal of claims, Ms. Shell's Motion primarily focuses on orders issued by the Magistrate Judge. In particular, she complains about the Magistrate Judge's Orders at the May 21, 2009 Scheduling Conference **(#159)** (including striking entries of default as to certain defendants, relieving the parties of their duty to confer prior to filing motions, ruling that service on Ms. Tower was not effective, and barring discovery prior to a ruling on the motions to dismiss);[5] the Magistrate Judge's orders in September and October 2009 **(#329, 344)** on Ms. Shell's motions for sanctions; the Magistrate Judge's Order **(#395)** following a hearing on March 11, 2010 regarding Ms. Shell's motion for sanctions against Ms. Dutkiewicz; the Magistrate Judge's denial of Ms. Shell's request that the

---

[5] Ms. Shell also contends that at the May 21, 2009 scheduling conference, the Magistrate Judge barred her from filing any further motions for default. The minutes of the Scheduling Conference **(#159)**, however, do not reflect such an order. Accordingly, the Court does not have any basis on which to review such a claim.

6

Defendants to use either regular mail without return signature, or FedEx or UPS to serve her; and the Magistrate Judge's July 10, 2009 denial **(#224)** of Ms. Shell's request to conduct limited discovery to ascertain the whereabouts of defendants that she had not yet served.

As to the Orders by the Magistrate Judge, the Court treats these as objections made pursuant to Fed. R. Civ. P. 72(a). That rule requires filing within 14 days after the Order. Because they were not timely asserted, and no sufficient justification for delay has been shown, they are overruled.

Ms. Shell seeks also seeks reconsideration of certain findings and conclusions in the Court's Order **(#397)** that resulted in the dismissal of claims against Ms. Jackson, Ms. Contreras, Mr. Dutkiewicz, Ms. Barnes, CPS Watch, Inc., Ms. Thompson, Ms. Tower, Ms. Kernaghan-Baez, Mr. Tower, AFRA, Mr. Wiseman, Wiseman Studios, Mr. Kiefer, and Mr. Bryan (a/k/a "Ringo Kamens") for lack of personal jurisdiction and/or failure to state a claim. She contends that the Court misapprehended her position as to certain issues and made material mistakes of fact. The Court reconsiders its prior Order by addressing each of her arguments *seriatim*.

### 1. Conclusory Allegations

Ms. Shell argues that the Court incorrectly stated that allegations in the Complaint were conclusory. She contends that at least some of the allegations included names, dates, and times. This may be true, but she does not tie these allegations to the issues determined by the Court. For example, the March 2010 Order determined that the Complaint **(#1)** failed to allege specific facts demonstrating that the defendants who contested personal jurisdiction had acted in a manner that would permit this Court to exercise specific personal jurisdiction over them. Ms. Shell's general statement that some specific information is found in some allegations does not

remedy this problem. Indeed, she does not identify those allegations which she contends have pertinent specific information. Accordingly, reconsideration on this ground is not warranted.

### 2. Liberal Construction

Ms. Shell also complains that the Court did not liberally construe her pleadings and arguments. She contends that she was held to a higher standard in her pleadings than were the *pro se* defendants.

The Court has carefully reviewed the Complaint and its previous Order. It granted Ms. Shell's pleadings liberal interpretation, which is evident even in her current arguments. She repeatedly complains that the Court understood her to make an argument she did not actually make which is indicative of the broad construction given by the Court.

Unfortunately for Ms. Shell, her role as the plaintiff in this action imposes certain burdens on her that are not imposed on the defendants. Among those is the burden to establish that each defendant has been properly served with a summons and complaint, that the Court can exercise personal jurisdiction over a defendant consistent with notions of due process, and to set out in the Complaint sufficient facts, that if proved, would entitle Ms. Shell to relief under the law. Ms. Shell's *pro se* status does not excuse her from these obligations. The Court finds no merit in Ms. Shell's contention that she was not afforded the liberal construction due to her as a *pro se* party.

### 3. Wiseman Studios

Ms. Shell contends that the Court misunderstood Ms. Shell to argue that Mr. Wiseman could not represent Wiseman Studios. She does not dispute that Mr. Wiseman may appear on behalf of Wiseman Studios and that Wiseman Studios should be deleted from the caption

because it is simply a name under which Mr. Wiseman does business. Thus, there is nothing to reconsider.

### 4. Breach of Contract by Mr. Bryan

Ms. Shell argues that the Court misapprehended her allegations concerning the contract that Mr. Bryan allegedly breached. Ms. Shell alleges that her website included "an offer to copy or distribute any content on my website profane-justice.org in exchange for pre-payment of posted license fees equal to $5,000.00 per printed page per copy." *See* Complaint **(#1)** ¶ 138. She also alleged that Mr. Bryan accepted the offer by copying the website. The Court determined, however, that the offer expressly set out the manner by which offerees could accept it, namely by pre-payment of licensing fees. Accordingly, the Court did not misapprehend Ms. Shell's argument. It found that she did not state facts sufficient to show that a contract was created because there were no allegations that it was accepted in the manner specified. Reconsideration is denied on this ground**.**

### 5. Agency Theory of Personal Jurisdiction

Ms. Shell argues that the Court misapprehended her arguments pertaining to the doctrine of agency in consideration of whether the Court could exercise personal jurisdiction over various defendants. *See* Order **(#397)**, at 19. She contends that the Court understood her to argue that the acts of a principal bind its agents when she meant that the agents' actions bind the principals. Again, assuming that the Court misunderstood Ms. Shell's arguments, no revision is required.

As applied to issues of personal jurisdiction, an agent's activities within a forum state may subject the principal to the jurisdiction of the forum state because he is responsible for the actions of the agent. *See Kuenzel v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 458 (10th

Cir. 1996). The Court determined that this theory of personal jurisdiction could not provide the basis for asserting personal jurisdiction over particular defendants in this case because Ms. Shell alleged that they were agents, not principals. As to the one principal that moved for dismissal, the Court concluded that the Complaint did not contain sufficient allegations that any of its agents were sufficiently involved in activities in Colorado for the agency theory of personal jurisdiction to confer jurisdiction. Ms. Shell states no objection to these conclusions; thus, there is no error for the Court to correct.

### 6. Personal Jurisdiction Based on Defendants' Actions Aimed at Colorado

Ms. Shell contends that the Court's analysis of whether the defendants subjected themselves to personal jurisdiction in Colorado by their actions was incorrect. She first contends that the Court misunderstood her to argue that the defendants had subjected themselves to jurisdiction in Colorado based on their websites, when her argument was that the defendants had subjected themselves to jurisdiction in Colorado based on their conduct through vehicles *such as* their websites, telephones, email, and postal mail. Because Ms. Shell does not now (and did not in her Complaint) specify any particular action directed at Colorado by any particular defendant using the telephone, email, postal mail, or other internet resources, there is nothing to change in the outcome.

Second, Ms. Shell argues that the Court did not consider whether the defendants subjected themselves to jurisdiction in Colorado based on their interference with her website, which is hosted in Colorado. She relies on the Tenth Circuit's opinion in *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1072 (10th Cir. 2008). Ms. Shell could have, but did

not argue that personal jurisdiction was proper under *Dudnikov* in any of her prior pleadings and offers no explanation as to why it could not have been raised.[6] Accordingly, this is not a proper basis for reconsideration.

### 7. American Family Rights Association

Ms. Shell also seeks reinstatement of the American Family Rights Association ("AFRA") as a defendant in this action. In the March 2010 Order, Mr. Tower represented that AFRA was solely a website domain name for a website that he owns and operates and that AFRA was not an entity separate and apart from him. Ms. Shell did not contest such characterization of AFRA. Given Mr. Tower's representation and Ms. Shell's failure to contest it, the Court deleted AFRA from the case caption and treated AFRA as being synonymous with Mr. Tower.

Ms. Shell now asserts that AFRA is not merely an alter ego of Mr. Tower, but is a separate entity. As support, she cites to the Court's previous orders that AFRA be represented by counsel, the attempts of various other individual defendants to file papers on behalf of AFRA, AFRA's own use of the word "association," Mr. Henderson's registration of the domain names used by AFRA, and Ms. Contreras's characterization of AFRA as an "interest group" in one of her pleadings in this case. Ms. Shell also argues that she adequately alleged AFRA's status as an association in her Complaint when she stated that AFRA is advertised as a professional association.

These facts may not be sufficient to establish an individual identity for AFRA. However, Ms. Shell has also submitted an affidavit of an attorney in Massachusetts, Gregory A. Hession,

---

[6] The significance of this opinion is not readily apparent as it was based upon facts dissimilar from those advanced here. Moreover, those parties against whom claims have been dismissed did not have the opportunity to address this line of argument.

attesting that he is member and board member of AFRA and describing AFRA as "an unincoporated professional association" that was "never an alter-ego for . . . Mr. Tower" and an amicus brief that AFRA filed in the United States Supreme Court in *Camreta v. Green*, Nos. 09-1454 and 09-0478.

Ms. Shell's arguments as to AFRA's status are troubling. They could have been raised in response to Mr. Towers's Motion to Dismiss, but were not. Ms. Shell has offered no explanation for not doing so. Although the Court appreciates Ms. Shell's *pro se* status and accords her liberal interpretation of the pleadings that she files, she is bound by the same requirements imposed on counsel for proceeding in a timely and expeditious manner in this case. Although she complains that this action has become complicated, it is so largely because of her actions and inaction. This is an example. By delaying in submitting this information, she has unnecessarily confused and complicated the litigation. Her request for reconsideration could be denied for this reason, alone.

However, based upon the current submission, it appears that AFRA is an association that can be sued independently from Mr. Tower. It appears that AFRA was served through Mr. Tower on March 19, 2009 as evidenced by a return of service **(#26)**. The caption will be amended to include AFRA, and Ms. Shell is hereby directed to serve a copy of this order on Mr. Hession and on Mr. Tower within 14 days of the date of this Order. Due to the confusion created by Ms. Shell's prior position and the Court's prior order removing AFRA from the caption, AFRA will have 30 days from the date of this Order for entry of counsel on its behalf. During such period, Ms. Shell shall not request any relief against AFRA.

### 8. Claim under RICO

Ms. Shell argues that the Court also erred in dismissing her claims under RICO because it erroneously determined that she had not adequately alleged the existence of an enterprise, an element of a RICO claim. *See Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir. 2002) (holding that a RICO claim includes four elements: (i) conduct (ii) of an enterprise (iii) through a pattern (iv) or racketeering activity). To establish an enterprise, a plaintiff must show an association-in-fact with three features: purpose, relationships among those associated with the enterprise, and longevity. *See Boyle v. United States*, 129 S.Ct. 2237, 2243 (2009). In her brief on RICO (**#403-3**), Ms. Shell submits that "the predicate acts of criminal copyright infringement are the only glue that binds the various defendants together as an enterprise. Take away the criminal copyright infringement, and all that is left is are [sic] several smaller organizations and individuals going about their respective businesses of child welfare reform, and the few who joined the conspiracy for the sole purpose to infringe my copyrights. Without that common purpose driving the enterprise, there is no enterprise."

Although a group need not have a purpose beyond or independent of the group's pattern of racketeering activity to be considered an enterprise, *see United States v. Hutchinson*, 573 F.3d 1011, 1021 (10th Cir. 2009), Ms. Shell's arguments does not cure the deficiency that the Court previously identified. Similar acts by unrelated people or entities do not create an enterprise. Ms. Shell has still not identified the structure of the enterprise, the relationships among those associated with the enterprise, nor the longevity of the groups or its members. Accordingly, even upon reconsideration, the Court reaches the same conclusion—Ms. Shell has not adequately alleged an enterprise.

Ms. Shell alternatively requests leave to amend her Complaint to amend the allegations necessary to assert a RICO claim. However, she has not identified any fact or allegation that she can make. Accordingly, the Court denies such request, as futile.

Therefore, for the foregoing reasons, the Motion for Reconsideration **(#403)** is **GRANTED IN PART** insofar as the Court has reconsidered all of the objections made by Ms. Shell and it has reinstated AFRA as a defendant in this action and **DENIED IN PART** as to all other requests.

### B.     Ms. Shell's Motion to Amend

The Court specifically granted Ms. Shell leave to move to amend her complaint to state "specific factual allegations as to Ms. Contreras." Ms. Shell filed a Motion to Amend **(#415)**, along with an Amended Complaint **(#415-1)**. The Motion, however, contains no specific factual allegations as to Ms. Contreras. Rather, Ms. Shell asserts that she is unable to extricate the claims against Ms. Contreras from those against the other defendants.

The Court therefore treats the Motion to Amend as a general request to amend, unrelated to Ms. Contreras. Viewed from that perspective, her motion is inadequate to determine whether amendment is appropriate under Fed. R. Civ. P. 15(a)(2). The proffered Amended Complaint is significantly longer and more detailed (351 pages, 1412 paragraphs) than the original Complaint (55 pages, 351 paragraphs). In addition, Ms. Shell states that it is a "rough draft."

The Motion contains no articulation as to what the amendments are or why they should be allowed. As a consequence, neither the affected parties nor the Court are able to determine whether leave to amend generally is appropriate, even under the low threshold of Rule 15(a)(2). Thus, the Court **DENIES** Ms. Shell's Motion to Amend **(#415)**. She may file a new Motion to

Amend with a final draft of the Amended Complaint within 14 days. No further extension will be granted.

### C.     Mr. Bryan's Motion to Dismiss

The Court's March 2010 Order granted Ms. Shell leave to amend her Complaint as to claims against Mr. Bryan that were dismissed for failure to state a claim. Ms. Shell filed a "Proposed First Amended and Supplemental Complaint" **(#410)** on May 2, 2010. Ms. Shell represents that she subsequently moved to withdraw this document **(#416)**, which was granted **(#420)** and, instead, filed a Motion to Amend **(#415)**, with a Proposed Amended Complaint as an attachment **(#415-1)**, pursuant to a direction from the Clerk of Court.

Apparently presuming that the Court would grant Ms. Shell's Motion to Amend **(#415)**, Mr. Bryan has moved to dismiss **(#431)** the claims asserted against him in the Amended Complaint **(#415-1)**. However, in light of the Court's ruling with regard to Ms. Shell's proposed Amended Complaint **(#415-1)**, *supra*, Mr. Bryan's motion is premature. It is therefore **DENIED**, with leave to reinstate should Ms. Shell file, and the Court grant, a motion to amend the complaint.

### D.     Mr. Henderson's Motion to Amend his Motion to Dismiss

Mr. Henderson moves **(#404)** for leave to amend his motion to dismiss pursuant to Fed. R. Civ. P. 15(a)(2).[7] The motion that Mr. Henderson seeks to amend was filed on May 28, 2009

---

[7] The motion also includes various other requests such as that the current discovery orders remain in effect, that the Court provide instruction on when defendant should serve Ms. Shell notice of the motion, and 30 days in which to prepare an "answer" if the Court finds one necessary. Assuming, without deciding, that the Court would be inclined to entertain such requests, given the Court's resolution of the major request in the motion, *i.e.*, a motion to amend the motion to dismiss, these requests are moot and are denied as such.

**(#168)** and sought dismissal of the claims against him pursuant to the doctrine of issue preclusion based on a prior action in California.  The motion was addressed in the Court's March 2010 Order.  Liberally construing Mr. Henderson's *pro se* filing, the Court considered both the doctrine of issue preclusion and the doctrine of claim preclusion.  The Court concluded that neither doctrine applied under California law, the law of the state of the judgment, as there had not been a final determination in the prior action, which was a required element of both doctrines.  *See* Order **(#397)**, at 9 (citing *Bolling v. Denver*, 790 F.2d 67, 68 (10th Cir. 1986) (requiring a court to look at the law of the state of the judgment to determine the preclusive effect of said judgment); *People v. Garcia*, 141 P.2d 197, 201 (Cal. 2006) (setting forth factors for issue preclusion); *Mycogen Corp. v. Monsanto Co.*, 51 P.3d 297, 301 (Cal. 2002) (setting forth factors for claim preclusion)).

As the Court has determined Mr. Henderson's Motion to Dismiss, there is nothing to amend.  Accordingly, the Motion **(#404)** is **DENIED**.

### E.   Ms. Dutkiewicz's Motion to Dismiss

Ms. Dutkiewicz moves **(#405)** to dismiss the claims against her for lack of personal jurisdiction and for failure to state a claim.  The Motion was filed approximately eleven months ago.  As Ms. Shell has not responded to the Motion, nor requested an extension of time to respond, the Court deems the Motion confessed.  Therefore, Ms. Dutkiewicz's Motion to Dismiss **(#405)** is **GRANTED.**

### F.   Mr. Howse's Motion to Dismiss

An individual named Torm L. Howse filed a document entitled "United States' Emergency Verified Demand to Terminate These Proceedings with Prejudice, Costs, and

16

Sanctions." Mr. Howse represents that he acts on behalf of the United States as a relator and seeks to terminate the proceedings, with sanctions, arguing that they are frivolous, wasteful, and vexatious. He does not, however, state any basis for his intervention in this case. He is not a named party, nor has he provided any valid grounds for his status as a relator on behalf of the United States, nor any ground on which the United States has an interest as a party to the action. An interest in the efficient running of the court system as a taxpayer or purportedly on behalf of the United States is not sufficient. Nor is the fact that he allegedly has personal knowledge of Mr. Shell and her actions, nor is the fact that he believes Ms. Shell has engaged in criminal or fraudulent conduct.[8] Without any showing as to the authority of Mr. Howse to intervene in this action, nor a valid showing as to why the action should be terminated, the Court **DENIES** Mr. Howse's Motion.

**IT IS THEREFORE ORDERED** that

(1)     Plaintiff Suzanne Shell's Motion for Reconsideration **(#403**, supplemented at **#433, 459)** is **GRANTED IN PART** insofar as it seeks reconsideration of her objections and to reinstate AFRA as a defendant in this action and **DENIED IN PART** insofar as it seeks any other change to the Court's previous Order **(#397)**;

(2)     Ms. Shell's Motion to Strike **(#436)** Mr. Henderson's Objections **(#428)** is **DENIED AS MOOT**;

(3)     Ms. Shell's Motion to Amend **(#415)** her Complaint **(#1)**, with exhibits at **#421**, is **DENIED**, with leave to renew.

---

[8] To the extent he believes that Ms. Shell has engaged such conduct, he has indicated that he has taken the suitable step of raising his concerns with the appropriate authorities, the United States District Attorney and the Colorado Attorney General.

(4)  Ms. Shell is granted leave to file a new Motion to Amend with a final draft of the Amended Complaint within **14 days** of the date of this Order. No extension of this deadline will be granted.

(5)  Mr. Bryan's Motion to Dismiss **(#431**, briefed in **#432)** Ms. Shell's Proposed Amended Complaint **(#415-1)** is **DENIED**, with leave to reinstate should Ms. Shell file, and the Court grant, a sufficient motion to amend the complaint;

(6)  Defendant Leonard Henderson's Motion to Amend **(#404)** his Motion to Dismiss **(#168)** is **DENIED**;

(7)  Defendant Aimee Dutkiewicz's Motion to Dismiss **(#405)** is **GRANTED**;

(8)  Motion by Torm L. Howse, purporting to act as a "relator" on behalf of the United States seeking dismissal of this action **(#445)** is **DENIED**.

(9)  The caption of this case shall be amended to include American Family Rights Association ("AFRA"). Ms. Shell is hereby directed to serve a copy of this order on Mr. Hession and on Mr. Tower within **14 days** of the date of this Order. AFRA will have **30 days** from the date of this Order for entry of counsel on its behalf. During such period, Ms. Shell shall not request any relief against AFRA.

Dated this 24th day of March, 2011

           **BY THE COURT:**

           *[signature: Marcia S. Krieger]*
           _____

           Marcia S. Krieger
           United States District Judge