IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 09-cv-00309-MSK-KMT

SUZANNE SHELL,

        Plaintiff,

v.

AMERICAN FAMILY RIGHTS ASSOCIATION;
LEONARD HENDERSON;
FAMILIES AT RISK DEFENSE ALLIANCE;
FRANCINE RENEE CYGAN;
MARK CYGAN;
ILLINOIS FAMILY ADVOCACY COALITION;
GEORGIA FAMILY RIGHTS, INC.;
NATIONAL ASSOCIATION OF FAMILY ADVOCATES;
CONNECTICUT DCF WATCH;
BRENDA SWALLOW;
RANDALL BLAIR;
UNKNOWN DEFENDANTS DOE 1-15,

        Defendants.

---

**OPINION AND ORDER GRANTING AND DENYING MOTIONS TO DISMISS AND
RELATED MOTIONS AND ORDER TO SHOW CAUSE**

---

**THIS MATTER** comes before the Court on a number of motions:

(1)    Defendant American Family Rights Association's ("AFRA") Motion to Dismiss

(**#485**), to which the Plaintiff Suzanne Shell responded (**#548**) and AFRA replied

(**#575**);

(2)    Ms. Shell's Motion to Strike (**#535**) Defendant AFRA's Motion to Dismiss, to

which AFRA responded (**#564**) and Ms. Shell replied (**#577**);

(3)    Ms. Shell's Motion for Sanctions Pursuant to Fed. R. Civ. P. 11 (**#536**), to which

which AFRA responded (#**553**) and Ms. Shell replied (#**559**);

(4)     Defendant Brenda Swallow's Motion to Dismiss (#**506**) to which Ms. Shell

responded (#**527**) and Ms. Swallow replied (#**549**)[1]; and

(5)     Defendant Leonard Henderson's Motion for Summary Judgment (#**592**) to which

Ms. Shell responded (#**624**) and Mr. Henderson replied (#**649**).

Having considered the same,[2] the Court **FINDS** and **CONCLUDES** the following.

## I.   Jurisdiction

The Court exercises jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

## II.   Issues Presented

In this case, Ms. Shell generally alleges that the Defendants unlawfully used or copied

her proprietary information (website contents) for their own financial benefit and in retaliation

against her for protecting such information.

After initial briefing on the pleadings, claims against a number of the Defendants, most

---

[1]Ms. Swallow also submitted a "Supplement" to her Motion to Dismiss (#**652**), to which Ms. Shell responded (#**673**) and Ms. Swallow replied (#**678**). These documents all pertain to Ms. Swallow's belief that Ms. Shell is not honest; however, since on a motion to dismiss, the allegations in the complaint are treated as true, disputes regarding any party's truthfulness are immaterial. Therefore, the Court declines to consider Ms. Swallow's supplemental briefing.

[2]  A number of parties in this action are proceeding *pro se*, including Ms. Shell.  In construing these parties' pleadings, the Court is mindful of their *pro se* status and, therefore, the Court construes their pleadings liberally and holds them to a "less stringent standard" than pleadings drafted by lawyers in accordance with *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  Such liberal construction is intended merely to overlook technical formatting errors, poor writing style, and other defects in the party's use of legal terminology, citation, and theories.  *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  The Court, however, cannot act as a *pro se* litigant's legal advocate, and a *pro se* plaintiff retains the burden to allege sufficient facts to state a viable claim.  Furthermore, *pro se* status does not relieve a party of the duty to comply with the various rules and procedures governing litigants and counsel or the requirements of the substantive law, and in these regards, the Court must apply the same standard to counsel licensed to practice law and to a *pro se* party.  *See McNeil v. United States*, 508 U.S. 106, 113 (1993); *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).

of them for lack of personal jurisdiction.  March 31, 2010 Order (#**397**).  Claims against Defendant AFRA were dismissed because it was not an independent legal entity, but rather an alter ego of Defendant William Tower.  Thereafter, however, upon a request from Ms. Shell for reconsideration, claims against AFRA were reinstated after a showing that AFRA could be an independent legal entity.  Order (#**460**).

AFRA has now filed another Motion to Dismiss, arguing that personal jurisdiction is lacking and that the Complaint fails to state a claim upon which relief can be granted.  Ms. Shell seeks to strike AFRA's motion and requests that sanctions be imposed against AFRA's attorney for filing the motion.  She also responds to AFRA's motion on the merits.

Ms. Swallow also has filed a second Motion to Dismiss.[3]  She contests personal jurisdiction and, alternatively, seeks dismissal of the claims under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

Mr. Henderson's pleading is entitled "Motion for Summary Judgment" but refers only to the allegations in the Complaint, which he argues are insufficient to state a claim.  Therefore, the Court will treat Mr. Henderson's Motion for Summary Judgment as a second Motion to Dismiss

---

[3]Ms. Swallow filed an Answer (#**498**) to the Complaint on December 13, 2011, and so her motion is more properly considered to be a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) rather than a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  This is a distinction without a difference, however, since the same standard of review would apply. *Corder v. Lewis Palmer Sch. Dist. No. 38*, 566 F.3d 1219, 1223 (10th Cir. 2009).  Ms. Swallow also previously sought dismissal of the claims against her for lack of personal jurisdiction.  Her motion was denied on the grounds that the Complaint had alleged adequate facts to show that Ms. Swallow had contractually consented to the exercise of jurisdiction by this Court.  March 31, 2010 Order (# **397**).

pursuant to Fed. R. Civ. P. 12(b)(6).[4]  In response, Ms. Shell has filed voluminous affidavits and

exhibits (#**624-39, #643**), as well as relying on the allegations in her Complaint.[5]  Because Mr.

Henderson's motion is most appropriately considered a motion under Rule 12, and discovery is

ongoing, the Court considers these extrinsic materials solely for the purpose of determining

whether Ms. Shell should be permitted to amend her Complaint and declines to treat Mr.

Henderson's motion as one for summary judgment pursuant to Fed. R. Civ. P. 12(d).

### III.   Material Facts

In the Court's previous order addressing various motions to dismiss (#**397**), the Court

found that the Complaint (#**1**), which is still the operative pleading, alleges the following facts.

In 1992, Ms. Shell noticed that there was a market need for services and information for

families involved with child protection services.  She developed a body of intellectual property

to fill this need.  In 1997, she acquired the domain name www.profanejustice.org and began

publishing on this website.  She represents that each article, paper, and document published on

the website is her independent copyrighted work.

In 2001, Ms. Shell became aware that others were publishing her copyrighted works on

other websites without her consent. She attempted to limit their infringement and contends that

they have retaliated against her.

---

[4]Mr. Henderson previously filed a Motion to Dismiss (#**168**), seeking dismissal of the claims asserted against him on collateral estoppel/*res judicata* grounds; the Motion to Dismiss was denied because there was no evidence of any final determination in any other related lawsuit.  March 31, 2010 Order (# **397**).

[5]Ms. Shell contends in her Response brief that the allegations in her Complaint are deemed admitted because of the failure of Mr. Henderson to file an Answer.  However, Mr. Henderson was permitted to file an untimely Answer (#**650**) and he disputes most of the allegations in the Complaint.  Therefore, Ms. Shell's allegations are not deemed admitted.

Ms. Shell co-founded Defendant AFRA, but withdrew her membership in 2003.  Upon her withdrawal, she expressly prohibited AFRA from using her copyrighted works.

Ms. Shell developed a licensing agreement for use of her copyrighted materials.  She also created a training program based on her trade secrets and proprietary information and advertised this program on the internet.  At her training seminars, attendees are required to sign a non-compete, non-disclosure form prior to receiving the training or training materials.  Ms. Swallow and now dismissed Defendant Durand attended Ms. Shell's training program. Ms. Shell contends that Ms. Swallow took and now uses the non-compete/non-disclosure form and proprietary information without permission.

As modified by the prior orders entered in the case, Ms. Shell asserts ten claims: (1) misappropriation/theft of trade secrets by all defendants; (2) copyright infringement by all defendants; (3) contributory copyright infringement by all defendants;[6] (4) vicarious copyright infringement by all defendants; (5) breach of contract by Brenda Swallow, Leonard Henderson, AFRA; (6) tortious interference with business relationship and/or business contract by all defendants; (7) false and misleading advertising by all defendants; (8) unfair or deceptive trade practices and unfair methods of competition by all defendants; (9) civil conspiracy by all defendants; and (9) antitrust violations under the Sherman Act by all defendants.  Ms. Shell seeks damages, compensatory and punitive, and injunctive relief enjoining further unlawful acts and requiring the Defendants to print retractions and apologies.

---

[6]  In the absence of a specific declaration of the defendants that a particular claim is asserted against, the Complaint is construed to assert the claim against all defendants.

### IV.   Motion to Strike (#535); Motion for Sanctions (#536)

AFRA's Motion to Dismiss was filed on December 6, 2011.  Ms. Shell contends the

Motion to Dismiss was untimely filed, that AFRA waived its right to seek dismissal, and that the

motion violates an order issued by Magistrate Judge Kathleen M. Tafoya.  As noted earlier, Ms.

Shell requests that the motion be stricken and sanctions be imposed against AFRA's attorney.

AFRA disputes these arguments, contending that it filed its motion to dismiss at the first

appropriate opportunity after counsel was retained and the final form of Ms. Shell's Complaint

was determined.  Before addressing the specific arguments in both motions, a review of the

procedural background is needed.

### A.      Procedural Background

Ms. Shell filed her Complaint (**#1**) on February 13, 2009.  The Clerk of the Court

entered default against AFRA (**#71**) on April 24, 2009.  However, that default was set aside on

May 21, 2009. (**#159**).  Because the default was set aside, it is of no legal effect.

On July 8, 2009, Mr. Tower filed a Motion to Dismiss (**#217**) on behalf of himself and

AFRA.  As noted earlier, this motion was granted as to AFRA on the representation that AFRA

was his alter-ego.  Ms. Shell thereafter presented new evidence and argument regarding AFRA's

status as an independent entity and, as a result claims against AFRA were reinstated.  (**#460**).   In

addition, AFRA was directed to obtain counsel to represent it in these proceedings.

On April 7, 2011, Ms. Shell filed a motion for leave to amend her Complaint.  (**#463**).

After that motion was filed, counsel for AFRA entered his appearance on April 12, 2011.

(**#466**).  Ms. Shell's motion to amend was denied without prejudice by Magistrate Judge Tafoya;

Ms. Shell filed timely objections.  On November 18, 2011, the Court affirmed the ruling of

Magistrate Judge Tafoya and determined that since Ms. Shell had been given many opportunities to amend, no further amendments would be authorized. (**#477**)  Magistrate Judge Tafoya then issued a minute order (**#481**) setting deadlines for service on unserved parties and ordered that "all served defendants shall file answers no later than December 16, 2011."  AFRA, however, did not file an answer; rather, it filed the instant Motion to Dismiss on December 6, 2011.

**B.      Analysis**

Fed. R. Civ. P 12 anticipates the filing of either an answer or various types of motions, including motions to dismiss in response to a Complaint.  AFRA's time to respond to the Complaint was governed by the order of the Magistrate Judge (**#481**).  The Court does not understand that order to limit AFRA to the filing of an answer.  Therefore AFRA's Motion to Dismiss was timely filed.  As a consequence,  AFRA did not waive its right to seek dismissal. Ms. Shell's Motion to Strike is denied.

**C.      Motion for Sanctions (#536)**

AFRA's Motion to Dismiss and other pleadings begin with the following statement: "COMES NOW, Defendant William Tower d/b/a American Family Rights Association"; it also notes in a footnote that Mr. Tower continues to assert that AFRA is not an entity separate from him.

Ms. Shell seeks sanctions against AFRA's counsel pursuant to Fed. R. Civ. P. 11 on the grounds that AFRA's attorney has "forwarded the false position that Defendant AFRA is an alter-ego or dba for Defendant William Tower."  Ms. Shell contends that AFRA's status as an independent entity is beyond dispute at this point based on the Court's prior rulings and "judicial admissions" made by Mr. Tower and Defendant Leonard Henderson.  (**#536**) at 2.  AFRA denies

that any such binding determination has been made and that no sanction is merited for continuing to assert its argument in this regard.

The court begins with the issue of judicial admissions. Ms. Shell contends the following are "judicial admissions" relating to AFRA's separate legal identity: (1) Mr. Henderson, in a pleading in this Court, asserted that AFRA is a "nonprofit association;" and (2) in an amicus brief filed in the United States Supreme Court on behalf of AFRA and a variety of other similar organizations, AFRA was described as an "association."  Even the name of AFRA includes the word "association."

Generally, judicial admissions are formal, deliberate declarations which a party or his attorney makes in a judicial proceeding for the purpose of dispensing with proof of formal matters or of facts about which there is no real dispute. *U.S. Energy Corp. v. Nukem, Inc.*, 400 F.3d 822, 833 n. 4 (10th Cir. 2005) (quotation omitted).  The described references to AFRA as an "association," alone, do not appear to be a declaration of a particular legal status.  Moreover, in the absence of a statute to the contrary, a voluntary association is not an entity separate from its members.  C.J.S. Associations § 2; *see also, e.g., Loveland Camp No. 83, W.O.W. v. Woodmen Bldg. & Benev. Ass'n*, 108 Colo. 297, 116 P.2d 195 (Colo. 1941).  Therefore, the mere identification of AFRA as an association in this action or elsewhere does not establish that it is a separate and independent entity from Mr. Tower.

Turning to the course of this case, it is clear that the parties dispute whether AFRA is a separate legal entity.  The Court has not resolved that issue - it simply has allowed for that possibility by allowing the statement of claims against it and ordering that it must be represented by an attorney.  To the extent that clarification is needed, the Court takes this opportunity to state

that AFRA's status has not been definitively determined as a matter of law.  Therefore, AFRA's

counsel's reference to this ongoing dispute does not warrant imposition of any sanction.  Ms.

Shell's Motion for Sanctions is therefore denied.

## V.  AFRA's Motion to Dismiss

AFRA seeks dismissal of all claims against it for lack of personal jurisdiction due to

insufficiency of contacts with Colorado.[7]  Ms. Shell contends that this Court may properly

exercise personal jurisdiction over AFRA based on either general connections (based on multiple

or extensive contacts with Colorado) or specific contact (based on specific, often limited,

contacts with Colorado such as by the monitoring or use of a website, agency relationships, a

conspiracy, and a forum selection clause in a contract).

## A.      Personal Jurisdiction

The plaintiff has the burden of proving that personal jurisdiction over the defendant

exists, although at preliminary stages of the litigation that burden is light.  *AST Sports Science,*

*Inc. v. CLF Distribution Ltd*., 514 F.3d 1054, 1056 (10th Cir. 2008).  If the court considers a

pre-trial motion to dismiss for lack of personal jurisdiction without conducting an evidentiary

hearing, the plaintiff need only make a *prima facie* showing of personal jurisdiction to defeat the

motion.  *Id*. at 1056-57.  In making this determination, all factual disputes should be construed in

favor of the plaintiff.  *Id*. at 1057.  The Court must take as true "all well-pled (that is, plausible,

non-conclusory, and non-speculative) facts" alleged in Ms. Shell's Complaint.  *Dudnikov v.*

*Chalk & Vermilion Fine Arts, Inc.,* 514 F.3d 1063, 1069-70 (10th Cir. 2008).

---

[7]AFRA also moves to dismiss the claims pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.  However, because the jurisdictional issue is dispositive, the Court does not address these arguments.

For a court to exercise personal jurisdiction over a defendant, there must both a showing that (i) jurisdiction is proper under the laws of the forum state and (ii) the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment.  *See Benton v. Cameco Corp.*, 375 F.3d 1070, 1075 (10th Cir. 2004).  Colorado's long arm statute[8] is coextensive with the constitutional limitations imposed by the due process clause; therefore, the inquiry collapses into a single inquiry: whether jurisdiction is consistent with the due process clause.  *See id*.  This involves a two-step inquiry: (1) whether the nonresident defendant has "minimum contacts" with the forum state such "that he should reasonably anticipate being haled into court there"; and (2) if minimum contacts are found, whether the exercise of personal jurisdiction over the defendant offends "traditional notions of fair play and substantial justice." *AST Sports Science*, 514 F.3d at 1057 (citations omitted).

### 1.      Minimum Contacts

The due process clause requires that the nonresident defendant have "minimum contacts" with the forum state.  *See OMI Holdings, Inc.*, 149 F.3d at 1091 (quoting *World-Wide Volkswagon Corp. v. Woodson*, 444 U.S. 286, 291 (1980)).  The "minimum contacts" standard may be met by showing either general or specific jurisdiction over the defendant.  *See OMI Holdings*, 149 F.3d at 1090-91.  First, a court may exercise general jurisdiction over a defendant for any claim, whether arising from activities in the state or not, if the defendant has sufficiently strong business contacts with the forum state.  *Id*. at 1091.

Alternatively, a court may exercise specific jurisdiction over a defendant if the

---

[8]Under the statute, personal jurisdiction over a nonresident defendant may arise from, *inter alia*, (1) the transaction of any business within the state or (2) the commission of a tortious act within the state. C.R.S. §13-1-124(1).

defendant's actions in or directed at the forum give rise to the litigation.  Specific jurisdiction

may be asserted over a nonresident defendant "if the defendant has 'purposefully directed' his

activities at residents of the forum, and the litigation results from alleged injuries that 'arise out

of or relate to' those activities." *OMI Holdings*, 149 F.3d at 1090-91 (citations omitted).

In considering the "purposeful direction" requirement personal jurisdiction, three

particular factors could indicate purposeful direction: (a) an intentional action that was (b)

expressly aimed at the forum state with (c) knowledge that the brunt of the injury would be felt

in the forum state.  *Dudnikov*, 514 F.3d at 1072.

### 2. Fair Play and Substantial Justice

In addition to examining a defendant's minimum contacts with the forum state, a court

must also analyze whether the exercise of personal jurisdiction offends "traditional notions of

fair play and substantial justice."  *ClearOne Communications, Inc. v. Bowers*, 643 F.3d 735, 764

(10th Cir. 2011).  This inquiry requires a determination of whether personal jurisdiction over a

defendant with minimum contacts is reasonable in light of the circumstances surrounding the

case.  In assessing reasonableness, a court considers: (1) the burden on the defendant, (2) the

forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient

and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient

resolution of controversies, and (5) the shared interest of the several states in furthering

fundamental substantive social policies.  *Id*.

### 3. Special Issues Relating to the Internet

When communications on the internet form a significant part of the asserted basis for

jurisdiction, special issues can arise.  The Tenth Circuit recently addressed questions relating to

"whether, when, and how such peculiarly non-territorial activities as web site hosting, internet posting, and mass emailing can constitute or give rise to contacts that properly support jurisdiction over the host, poster, or sender." *Shrader v. Biddinger*, 633 F.3d 1235, 1240 (10th Cir. 2011).   Noting that a person can place information on the internet and thereby communicate with persons in virtually every jurisdiction, the Tenth Circuit emphasizes the importance, for the purposes of personal jurisdiction, that the person *intentionally direct* the activity or operation at the forum state, "rather than just having the activity or operation accessible there." *Id.* at 1240. The court cites with approval *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 714 (4th Cir. 2002), which developed the following test for specific jurisdiction arising out of internet activity: the person (1) directs electronic activity into the forum state, (2) with the manifested intention of engaging in business or other interactions within the state, (3) that activity creates, in a person within the state, a potential cause of action cognizable in the state's courts.

Drawing on the Fourth Circuit's approach set forth in *ALS Scan*, as well as its previous discussion of similar issues in *Dudnikov*, *Shrader* explains several principles that are pertinent. First, "[t]he maintenance of a web site does not in and of itself subject the owner or operator to personal jurisdiction, even for actions relating to the site, simply because it can be accessed by residents of the forum state." 633 F.3d at 1241.   In addition, "posting allegedly defamatory comments or information on an internet site does not, without more, subject the poster to personal jurisdiction wherever the posting could be read (and the subject of the posting may reside)." *Id.* Finally, in considering what more is needed to create personal jurisdiction, "courts look to indications that a defendant deliberately directed its message at an audience in the forum

state and intended harm to the plaintiff occurring primarily or particularly in the forum state."

*Id*.          With respect to general jurisdiction, *Shrader* emphasizes that before internet contacts may give rise to personal jurisdiction, the "commercial contacts . . . must be of a sort that approximate physical presence in the state."  633 F.3d at 1243 (internal punctuation and citation omitted).  Although "operating a web site selling products to residents of a state can subject the seller to general jurisdiction in that state, depending on the nature and degree of commercial activity with the forum state," the bar is "quite high" and the plaintiff must demonstrate "substantial sales."  *Id*.  In short, "[a] web site will subject a defendant to general personal jurisdiction only when the defendant has actually and deliberately used its web site to conduct commercial transactions on a sustained basis with a substantial number of residents of the forum."  *Id*. at 1243 (citation omitted).

**B.**     **AFRA's contacts with Colorado**

Disregarding conclusory allegations, the Complaint alleges the following with respect to AFRA's contacts with Colorado:

> The American Family Rights Association (AFRA), advertised as "a professional association" and is currently headquartered in California.  At some times in this complaint, AFRA was previously headquartered in Oregon. AFRA consists of a Board of Directors currently presided over and owned by William O. Tower, with general membership in the 50 states, including a significant number of members who reside in Colorado. AFRA is not registered with any government entity. AFRA sponsors and owns a website and a number of online groups to offer and deliver support services and information services and various products to the public, and for soliciting membership into AFRA and to advertise AFRA's business activities and to conduct AFRA business. AFRA describes it's [sic] leadership as, "Power remains spread out to individual state leaders and to the membership in the grand American tradition."

*Id.* ¶ 2. Ms. Shell alleges that AFRA issues the following statements regarding its organization and distribution of authority:

> "When you join AFRA and agree to our conditions for membership, if you desire to assume a leadership role, YOU become AFRA's official representative in your locale. You are authorized to use our Copyrighted and Trademarked name "American Family Rights Association©®" and our Logo's [sic] in your representation of AFRA. . . .

*Id.*

Mr. Tower, a California resident, is alleged to have registered certain domain names used by AFRA and is alleged to be the "[o]wner and/or moderator of AFRA online groups." *Id.* ¶ 3. The Complaint alleges that Mr. Henderson, an Oregon resident, is a founder, member and current Board member and former President and/or CEO of AFRA; Mr. Henderson is also alleged to be an "[o]wner and/or moderator of some AFRA online groups" and is the webmaster of the official AFRA website. *Id.* ¶ 6. Ms. Shell contends that AFRA represents that any online group with "AFRA" in its name "speaks for AFRA and is subject to AFRA oversight and control." *Id.* ¶ 64.

During the relevant time period, AFRA allegedly "advertised that it sponsors/sponsored, hosts/hosted, owns/owned, endorses/endorsed or is/was affiliated with" a number of online groups, none of which appear to have any connection to Colorado. *Id* ¶ 65. In addition, AFRA "has advertised [numerous] websites as member sites," including two websites that the Complaint alleges are "Colorado sites." *Id.* ¶ 66.

The Complaint further alleges that "Defendants advertise and provide goods and/or services to the public and to consumers and/or professionals involved with Child Protective Services investigations and court cases nationwide." *Id.* ¶ 42. These goods and services are

14

alleged to be "support services, advocacy services, information goods and services, advice, paralegal services, referral services, literature, lobbying services, and any other goods and services which help promote their expertise, qualifications and competence in the relevant markets or which promote child welfare reform or which assist families involved with child welfare agencies and the courts." *Id.*, n. 1. However, Ms. Shell does not identify precisely what goods or services have been specifically advertised, provided, or sold in Colorado by AFRA (or its agents), the dates, frequency or volume of such advertising or sales in Colorado, if any, or the existence of any programs specifically targeted to Colorado.

The Complaint identifies one AFRA member residing in Colorado (Dee Contreras); however, the Complaint alleges no specific wrongful conduct by Ms. Contreras and the claims against Ms. Contreras were dismissed on March 31, 2010. (**#397**). In addition, Ms. Shell submits evidence regarding an AFRA affiliate in Colorado and members residing in Colorado; her evidence consists of a printout of names and addresses from an apparent internet posting forum with dates from 2003 to 2007. (**#548-4**). There is no information about how the Colorado affiliate was founded and so no evidence that it was AFRA that reached into Colorado to create this affiliate. Ms. Shell states that when she was an AFRA member she received and disseminated information on AFRA interactive online groups, but provides no other information in this regard. Pl.'s Affidavit (**#548-3**), ¶ 7.[9]

---

[9] With respect to the alleged injuries here, Ms. Shell alleges that she created an "inventory" of articles, papers, and documents that she posted on the internet under her own domain name to offer to families involved with child protection services agencies. Complaint, ¶¶ 48-50. She contends that two AFRA members (Ms. Swallow and dismissed Defendant Durand, neither of whom is a Colorado resident) attended one of her training seminars and, despite signing confidentiality and non-disclosure agreements, disseminated the contents of the training seminar. Ms. Shell further alleges that at the express encouragement of AFRA

15

C.     Analysis

1.     General Jurisdiction

The allegations in the Complaint with regard to AFRA's contact with Colorado do not demonstrate  "continuous and systematic general business contacts."  At most, the Complaint states that AFRA has members who live in Colorado and that it has "advertised" on websites hosted or based in Colorado.  However, the Complaint does not allege any particular commercial business transacted in Colorado or with Colorado residents or identify any products or services sold or otherwise provided in Colorado, much less the amount or frequency of such sales or other transactions.  The only activities shown to exist in Colorado is a website associated with a Colorado affiliate of AFRA on which individuals can post information and, perhaps, an unnamed moderator or website owner may respond.  There are no allegations sufficient to demonstrate that AFRA has contacts with Colorado that approximates a physical presence or that AFRA "has actually and deliberately used its web site to conduct commercial transactions on a sustained basis with a substantial number of residents of the forum."

Therefore, the allegations are insufficient to establish general jurisdiction.

2.     Specific Jurisdiction

To establish specific jurisdiction, Ms. Shell must show both that AFRA purposefully directed its activities to Colorado and that Ms. Shell's injuries arose out of those activities.  The Complaint's allegations are again insufficient.  Other than conclusory allegations, as noted above, the only specific facts tying AFRA to Colorado are that there are members in Colorado

leadership, members of AFRA have published her copyrighted materials on their own websites and on the official AFRA website. *Id.* ¶¶ 95-111.  It is not alleged that any infringement occurred on a Colorado-based website or that any AFRA member in Colorado was responsible.

16

and websites "advertised" by AFRA in Colorado.  However, Ms. Shell offers no facts to show that these activities are different than those conducted in all of the other 49 states in which AFRA allegedly has members.  Moreover, even if the existence of AFRA members or an affiliate in Colorado amounted to purposeful direction, she has not alleged any connection between those activities and her alleged injuries.

As noted in the March 31, 2010 Order (**#397**), the mere fact that AFRA has a website and its affiliates, including a Colorado affiliate, have websites is not sufficient to establish specific jurisdiction without additional facts showing purposeful direction at Colorado.[10]  The Court incorporates the arguments relating to the websites[11] of AFRA and the other Defendants from the previous order.  March 31, 2010 Order (# **397**) at 16-19.  Ms. Shell has offered no additional evidence that would alter the Court's analysis in this regard with respect to AFRA.  In addition, applying the principles from *Shrader*, above, there are no allegations or evidence which would indicate that AFRA deliberately directed its message at an audience in Colorado and intended harm to Ms. Shell occurring primarily or particularly in Colorado.  Ms. Shell's harm arose from the publication of her allegedly copyrighted works on various websites, but she has not shown that those websites specifically targeted a Colorado audience, engaged in commercial or other significant transactions with Colorado residents, or otherwise were connected to Colorado.

---

[10] Ms. Shell has not alleged any wrongdoing by the Colorado affiliate of AFRA or any Colorado members, only by AFRA itself and by members who do not reside in Colorado. Moreover, she has not demonstrated that AFRA does any business in Colorado

[11] These websites are the AFRA website owned and operated by Mr. Tower, the CPSWatch website, the Wiseman Studio website run by Mr. Wiseman, and the Connecticut DCF Watch website run by Mr. Dutkiewicz.  With respect to these websites, the Court determined in the previous order that the facts alleged in the Complaint showed that, at most, these websites were passive or moderately interactive, which was insufficient to show purposeful availment.

Ms. Shell argues that because she is a Colorado resident and the harm (presumably loss of revenues she would have otherwise received from the sales of her copyrighted materials) manifests in Colorado, there is a question whether jurisdiction could arise from AFRA's internet related activities. *Shrader* contemplates that personal jurisdiction may exist when the defendant individually targets a known forum resident, such as in a defamation claim; however, the Tenth Circuit takes a restrictive approach in this regard and requires that "the forum state itself must be the focal point of the tort." 633 F.3d at 1244. *Shrader* makes clear that a plaintiff's "residence in the forum state, and hence suffering harm there, does not alone establish personal jurisdiction over a defendant who has not purposefully directed his activities at the state." *Id.* at 1245. As noted above, none of the activities purportedly giving rise to the harm alleged here was directed at Colorado, and the mere fortuity that Ms. Shell resides in Colorado (and thus suffers harm here) is insufficient to create personal jurisdiction.

Therefore, the Complaint's allegations are insufficient to demonstrate that this Court has specific jurisdiction over AFRA.

**D.     Additional Theories of Jurisdiction**

**1.     Specific Jurisdiction Based on an Agency Relationship**

In her response brief, Ms. Shell reiterates her argument, also addressed in the March 31, 2010 Order, that personal jurisdiction can be asserted over AFRA because of the activities of its agents. The agency theory of personal jurisdiction is rooted in the concept that the principal is responsible for the actions of the agent. *See Goettman v. N. Folk Valley Rest (In re Goettman)*, 176 P.3d 60, 67 (Colo. 2007). An agent's actions within the forum state may subject his principal to the jurisdiction of the forum state. *See Kuenzel v. HTM Sport-Und Freizeitgerate*

*AG*, 102 F.3d 453, 458 (10th Cir. 1996).  Indeed, the method by which a nonresident corporate entity creates contacts for purposes of personal jurisdiction is through its authorized representatives, *i.e.*, its employees, directors, officers, and agents.  *Id.*; *see also Curtis Pub. Co. v. Cassel*, 302 F.2d 132, 137 (10th Cir. 1962).

  Ms. Shell, however, has failed to allege in her Complaint any action of an agent of AFRA occurring in or directed to Colorado.  Therefore, AFRA is not subjected to personal jurisdiction in Colorado based on an agency theory of personal jurisdiction.

  **2.**  **Jurisdiction Based on a Conspiracy**

  In her response brief, Ms. Shell also asserts that jurisdiction may be asserted over AFRA because of its alleged participation in a conspiracy.  The Court has already rejected Ms. Shell's efforts to establish jurisdiction based on a conspiracy theory because Ms. Shell has made only conclusory allegations regarding the existence of a conspiracy.  March 31, 2010 Order (# **397**) at 21.  In addition, Ms. Shell has not alleged any facts that would connect the alleged conspiracy to Colorado; as noted above, she has alleged no specific wrongful conduct by any Colorado resident or any overt act in or directed at Colorado.

  **3.**  **Forum Selection Clause**

  Ms. Shell also contends that AFRA consented to personal jurisdiction in this Court by virtue of a contractual forum selection clause.  This appears to be based on a forum selection clause contained on Ms. Shell's website which states "Anyone visiting this site consents to jurisdiction and venue remaining in El Paso County, Colorado."  As noted in the Court's March 31, 2010 Order, merely alleging that AFRA and/or some of its members viewed such a statement is insufficient to establish that these persons manifested their intent to consent to this forum

19

selection clause.  (#**397**) at 25-26.  Otherwise, it is unclear what contractual forum selection clause Ms. Shell relies upon[12] and, therefore, no basis upon which the Court could determine that AFRA consented to jurisdiction in Colorado.

Ms. Shell has failed to carry her *prima facie* burden to show that this Court has personal jurisdiction over AFRA.  Accordingly, all claims against AFRA are dismissed.

## VI.  Ms. Swallow's Motion to Dismiss and Mr. Henderson's Motion for Summary Judgment, Construed as a Motion to Dismiss

Ms. Swallow also moves for dismissal based on lack of personal jurisdiction and because the Complaint fails to state a claim upon which relief can be granted.  Ms. Shell argues in response that jurisdiction has already been determined as to Ms. Swallow and that the allegations in the Complaint are sufficient to state a claim against Ms. Swallow.

Similarly, Mr. Henderson seeks dismissal of Ms. Shell's claims on the grounds that the allegations in the Complaint are insufficient to establish the *prima facie* elements of each claim for relief.  In addition, as to several of the claims, Mr. Henderson contends that the statute of limitation has expired and, therefore, the claims are barred.

To the extent Ms. Swallow and Mr. Henderson challenge the sufficiency of the allegations as to each claim, their arguments and motions are analyzed together, as set forth below.

## A.    Ms. Swallow - Personal Jurisdiction

Unlike AFRA, the Court has already considered the merits of Ms. Swallow's arguments

---

[12]To the extent it is based on any contract signed by Ms. Durand or Ms. Swallow, Ms. Shell has failed to allege that either of these Defendants executed the contract in a representative capacity such that AFRA can be considered to be a party.

as to personal jurisdiction.  In the March 31, 2010 Order ruling on Ms. Swallow's first Motion to

Dismiss, the Court held that the Complaint adequately alleged the existence of personal

jurisdiction over Ms. Swallow by virtue of a forum selection clause in a contract that Ms.

Swallow allegedly signed. (**#397)** at 25.  Although there are factual disputes regarding whether

Ms. Swallow ever signed this contract, the alleged facts are construed most favorably to Ms.

Shell and will be finally determined at trial.

In Ms. Swallow's renewed Motion to Dismiss, Ms. Swallow continues to argue that there

is insufficient evidence regarding the alleged contractual basis for personal jurisdiction.  She also

contends that even if she did sign such a contract, she had the right to rescind it.  Again,

however, such factual disputes are immaterial at this time; as the Court has already determined,

Ms. Shell has made her *prima facie* showing regarding jurisdiction over Ms. Swallow.

Therefore, the Court declines to dismiss the claims against Ms. Swallow for lack of personal

jurisdiction.

**B.     Ms. Swallow and Mr. Henderson - Failure to State a Claim**

Ms. Swallow also makes arguments regarding the merits of the claims, contending that

the allegations are insufficient to establish any specific culpable conduct by Ms. Swallow, as

opposed to conclusory allegations regarding all the defendants collectively.  Similarly, Mr.

Henderson contends that disregarding conclusory allegations, Ms. Shell's allegations are

insufficient to state a claim.  These arguments, and Ms. Shell's response, are discussed below

with respect to each asserted claim.

**1.     Standard of Review**

There is a strong presumption against dismissal for failure to state a claim under Rule

12(b)(6).  *See Cottrell, Ltd. v. Biotrol Int'l, Inc.,* 191 F.3d 1248, 1251 (10th Cir. 1999).

However, a claim must be dismissed if the complaint does not contain enough facts to make the

claim "plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A

claim is plausible on its face if the complaint contains sufficient facts for a court to draw an

inference that the defendant is liable for the alleged misconduct.  *See Ashcroft v. Iqbal*, 129 S.Ct.

1937, 1949 (2009) (citing *id.* at 556).  Although a plaintiff is not required to include detailed

factual allegations in a complaint, the complaint must contain "more than labels and

conclusions" or "a formulaic recitation of the elements of a cause of action" and must "raise a

right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  In reviewing a complaint

under Rule 12(b)(6), a court should accept, as true, all well-pleaded facts and construe all

reasonable allegations in the light most favorable to a plaintiff.  *Smith v. United States*, 561 F.3d

1090, 1098 (10th Cir. 2009).

        In applying the *Twombly/Iqbal* standard to a motion under Fed. R. Civ. P. 12(b)(6), the

Tenth Circuit has held that plausibility refers "to the scope of the allegations in a complaint: if

they are so general that they encompass a wide swath of conduct, much of it innocent, then the

plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins

v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570).  The

standard is "a middle ground between heightened fact pleading, which is expressly rejected, and

allowing complaints that are no more than labels and conclusions or a formulaic recitation of the

elements of a cause of action, which the Court stated will not do."  *Id.* (internal quotation marks

and citations omitted).  The standard must be applied in a manner consistent with the notice

pleading framework set forth in Fed. R. Civ. P. 8(a)(2), which requires only that a complaint give

a defendant "fair notice" of the claim and grounds upon which it rests.  *Khalik v. United Air Lines*, 671 F.3d 1188, 1191-92 (10th Cir. 2012) (citations omitted).  The nature and specificity of the allegations required to state a claim will depend on context; moreover, while a plaintiff need not establish a *prima facie* case in the complaint, the elements of each alleged cause of action help to determine whether the plaintiff has set forth a plausible claim.  *Id*.

**2.      Claims**

**a.      Misappropriation/Theft of Trade Secrets**

To prove misappropriation of a trade secret, a plaintiff must show: (i) that he or she possessed a valid trade secret, (ii) that the trade secret was disclosed or used without consent, and (iii) that the defendant knew, or should have known, that the trade secret was acquired by improper means.  *Gates Rubber Co. v. Bando Chemical Industries, Ltd.*, 9 F.3d 823, 847 (10th Cir. 1993) (citing Colorado Uniform Trade Secrets Act, C.R.S. § 7-74-101 *et seq*.).

<u>Ms. Swallow</u>

The Complaint alleges that the materials Ms. Shell used in her training seminars were trade secrets.  The Complaint further alleges that Ms. Swallow obtained those materials and disseminated them in violation of a confidentiality agreement.  This is sufficient to state a claim.  Therefore, the motion is denied as to the misappropriation claim.

<u>Mr. Henderson</u>

As noted above, the Complaint alleges that the materials Ms. Shell used in her training seminars were trade secrets, which is sufficient to establish the first element of the claim.  However, the Complaint contains no alleged facts that would give rise to an inference that Mr. Henderson personally ever disclosed or used any of the training materials alleged to be a trade

secret.  In addition, the Court has reviewed Ms. Shell's Affidavit and Exhibit on Trade Secret

(#**625**) to determine whether, if given the opportunity to amend, she could allege facts that would

be sufficient to plausibly state a misappropriation of trade secrets claim against Mr. Henderson.

Disregarding conclusory statements in the affidavit, Ms. Shell specifically identifies acts of use

and disclosure by other individuals, Dennis Hinger, William Wiseman, Dee Contreras, and Anne

Tower, but no use or disclosure by Mr. Henderson himself.  Therefore, this claim is dismissed as

to Mr. Henderson and no amendment of the Complaint will be permitted.

### b.    Copyright Infringement

To demonstrate copyright infringement, a plaintiff must demonstrate two elements: (i)

ownership of a valid copyright; and (ii) unlawful appropriation of protected portions of the

copyrighted work.  *See La Resolana Architects, PA v. Reno, Inc.*, 555 F.3d 1171, 1177 (10th Cir.

2009) (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)).  As to the

second element, a plaintiff must show both that the defendant actually copied the copyrighted

work and that the elements of the work that were copied were "protected expression and of such

importance to the copied work that the appropriation is actionable."  *See Gates Rubber Co. v.*

*Bando Chem. Indus.*, 9 F.3d 823, 832 (10th Cir. 1993).

<u>Ms. Swallow</u>

Ms. Shell has identified the materials that she contends are copyrighted in the Complaint

at Paragraph 94.  In addition, she asserts that certain of these documents were infringed by being

published on various websites without her permission in Paragraph 111.  However, none of the

alleged infringing actions were committed by Ms. Swallow.[13]

Nonetheless, the claim will not be dismissed at this time.[14]  Ms. Shell's Complaint states that the infringing actions described in Paragraph 111 is only a partial listing of the alleged incidents of infringements she has suffered.  In the interest of clarity and notice to the remaining Defendants, Ms. Shall is ordered to submit a more definite statement regarding her infringement claim[15].  In that statement, she shall specify each and every act of infringement upon which she relies for this claim, including: (1) the document at issue identified by title and description of content; (2) which copyright protects the document and when that copyright was registered; and (3) exactly how, when, and by whom (among the remaining Defendants) the alleged infringement occurred.  The statement shall be filed within ten days of this order and may only be amended upon a showing of good cause.

Mr. Henderson

Treating the allegations as true, the Complaint adequately alleges the first element of a copyright infringement claim - the existence of a valid copyright.  The Complaint further alleges that Mr. Henderson "had impermissibly published a discrete article and/or document from my web site on September 24, 2006," that Ms. Shell "discovered my copyrighted 4th amendment

---

[13]To the extent that Ms. Shell bases this claim on Ms. Swallow obtaining and disseminating materials from the training seminar, Ms. Shell has not alleged that these materials were copyrighted at the time.

[14]Ms. Swallow also contends that Ms. Shell's copyright claims are time-barred by the statute of limitation or by the equitable doctrine of laches.  Since at this point it does not appear that Ms. Shell has adequately alleged a claim against Ms. Swallow the Court declines to address this affirmative defense at this time.

[15]The Court notes that Ms. Shell has been ordered to identify her alleged trade secrets in a similar fashion.  Minute Order (#**789**).

letter from my web site published on the AFRA web site by Henderson on November 13, 2005"

and "I discovered my copyrighted Letter to Lawyer from my web site impressibly published on

the AFRA web site by Henderson on November 13, 2005."  Complaint ¶¶ 111 j, 140, 141.

Giving these allegations a liberal construction, the Court concludes this is adequate to allege the

second element of the claim - that Mr. Henderson unlawfully appropriated the copyrighted work.


Mr. Henderson, however, also challenges Ms. Shell's copyright claim on the grounds that

it is barred by the statute of limitation.  The limitation period for a copyright claim is three years.

17 U.S.C. § 507(b).  Ms. Shell's Complaint was filed on February 13, 2009, and so her claims

must have accrued no later than February 13, 2006.  Mr. Henderson, however, provides no

analysis regarding when Ms. Shell's cause of action for copyright infringement accrued.

Although some of the alleged acts of infringement may have occurred and/or should have been

discovered before February 2006, it is not apparent from the face of the Complaint that the claim

is time-barred; therefore, it will not be dismissed at this time.

### c. Contributory and Vicarious Copyright Infringement

Although the Copyright Act does not expressly cover contributory or vicarious

infringement, these doctrines of secondary liability are well established in the law and are

grounded in common law principles of secondary liability.  *See Metro-Goldwyn-Mayer Studios,*

*Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930–31 (2005); *La Resolana*, 555 F.3d at 1181.

Contributory copyright infringement occurs when a defendant induces or encourages direct

infringement and vicarious infringement occurs when a defendant profits from direct

infringement while declining to exercise a right to stop or limit it.

For contributory infringement, a plaintiff must allege (i) direct copyright infringement by a third-party; (ii) knowledge by the defendant of the direct infringement; and (iii) material contribution to the infringement.  *See Columbia Pictures Indus., Inc. v. Redd Horne, Inc.*, 749 F.2d 154, 160 (3d Cir. 1984); *see also CoStar Group, Inc. v. LoopNet, Inc.*, 373 F.3d 544, 550 (4th Cir. 2004); *Gershwin Pub. Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971) ("[O]ne who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another, may be held liable as a 'contributory' infringer.").

For vicarious infringement, a plaintiff must allege that the defendant (i) had the right and ability to supervise the infringing activity or infringer; and (ii) possessed a direct financial interest in the exploited copyrighted materials.  *See Nelson-Salabes, Inc. v. Morningside Dev.*, 284 F.3d 505, 513 (4th Cir. 2002); *Softel, Inc. v. Dragon Med. & Sci. Communs.*, 118 F.3d 955, 971 (2d Cir. 1997) (requiring the defendant have a right and ability to supervise that coalesced with an obvious and direct financial interest in the exploitation of copyrighted materials).

<u>Ms. Swallow</u>

With respect to the claim of contributory infringement, the Complaint does not include any specific alleged facts which, if true, would demonstrate that Ms. Swallow knew or materially contributed to the infringing conduct of any person who allegedly published Ms. Shell's copyrighted material without permission.

Similarly, with respect to the vicarious infringement claim, the Complaint does not allege any facts that would show that Ms. Swallow had any right or ability to supervise the persons who allegedly published Ms. Shell's copyrighted materials or that Ms. Swallow benefitted financially

from the exploitation of Ms. Shell's copyrighted materials.  Therefore, the vicarious

infringement and contributory infringement claims are dismissed as asserted against Ms.

Swallow.

> Mr. Henderson

With respect to the contributory infringement, the Complaint alleges facts that could, if

true, establish the first element –direct  copyright infringement by a third-party – as instances of

infringement by others is alleged.  Complaint ¶ 99.  In addition, giving Ms. Shell the benefit of

all favorable inferences, the Complaint alleges that Mr. Henderson knew of the infringement and

that he had control over the websites on which the materials were published, which could

establish the second and third elements of the claim (knowledge and material contribution to the

infringement).  The contributory infringement claim, therefore, will not be dismissed.

The vicarious infringement claim, however, will be dismissed.  A key element of this

claim is that the defendant possess a direct financial interest in the exploited copyrighted

materials.  The Complaint alleges no facts from which it could be plausibly inferred that Mr.

Henderson personally obtained any financial benefit from the infringement as there is no

evidence of sales or commercial activity involving Ms. Shell's materials.  The Court has

reviewed Ms. Shell's Affidavit and Exhibits Regarding Copyright Infringement (#**626**) and finds

therein no facts that could plausibly suggest that Mr. Henderson had any personal financial

interest in the infringement.  Therefore, the vicarious infringement claim is dismissed and no

amendment will be permitted.

### d.	Breach of Contract

To prevail on her claim for breach of contract against Ms. Swallow and Mr. Henderson,

Ms. Shell's Complaint must allege facts that would establish four elements: (i) existence of a contract; (ii) performance by herself; (iii) failure to perform by Ms. Swallow; and (iv) resulting damages.  *See Western Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992).

Ms. Swallow

The Complaint alleges that Ms. Swallow signed a nondisclosure agreement but nonetheless disseminated confidential materials from the training seminar, thereby causing damage to Ms. Shell.  This is sufficient to state a claim for breach of contract.

However, Ms. Swallow seeks dismissal of this claim, again disputing the factual question whether Ms. Swallow signed any contract when she attended Ms. Shell's seminar.  As noted above, for the purposes of a motion to dismiss, Ms. Shell's allegations are treated as true and so Ms. Swallow's evidentiary challenge does not justify dismissal of the claim.

In addition, Ms. Swallow contends that even if there was a contract and it was breached, Ms. Shell's claim is time-barred.  However, it is not clear from the allegations when the contract is alleged to have been breached or exactly when Ms. Shell's cause of action accrued.  Because a motion to dismiss under Rule 12(b)(6) is resolved based only on the allegations in the Complaint, and the allegations do not clearly show that the claim is time-barred, dismissal of the breach of contract claim is not appropriate at this time.

Mr. Henderson

As noted by Mr. Henderson, the Complaint contains no allegations regarding the existence of a contract between Ms. Shell and Mr. Henderson.  At best, the Complaint alleges that Ms. Shell's website contains a "Copyright notice/security agreement" which includes "an offer to copy or distribute any content on my website profane-justice.org in exchange for pre-

29

payment of posted license fees equal to $5,000.00 per printed page per copy." Complaint ¶ 138. However, as the Court previously determined, this is insufficient to establish the existence of a contract in the absence of an allegation showing acceptance of the offer - *i.e.*, pre-payment of the posted license fees.  March 31, 2010 Order (# **397**), at 34.  The Complaint does not allege that Mr. Henderson accepted the offer contained in the "Copyright notice/security agreement" and, therefore, there are no facts alleged that plausibly suggest the existence of a contract.  Ms. Shell in her Response brief does not identify any contract entered into by Mr. Henderson and Ms. Shell.  Rather, she states conclusorily and without record citation that Mr. Henderson became bound by some unspecified contract when he "copied content from my web site pursuant to the terms displayed."  Response (**#624**) at 22.  Therefore, the breach of contract claim is dismissed as to Mr. Henderson.

In addition, the Court has reviewed Ms. Shell's Affidavit on Tortious Interference with Contract (**#627**), which appears to be the only document containing additional information regarding a potential claim of breach of contract as asserted against Mr. Henderson.  Ms. Shell again relies only on Mr. Henderson's alleged copying of materials from her website despite the posting of her Copyright notice/security agreement as a basis for the contract claim.[16]  Because Ms. Shell's averments are insufficient to plausibly give rise to an inference that any agreement existed between Ms. Shell and Mr. Henderson, no amendment of the Complaint will be permitted as to this claim.

### e.    Tortious Interference with Business Relationship and/or Business

---

[16]Assuming the truth of the allegations, any liability and damages resulting from this alleged wrongful conduct would be adequately covered by the copyright infringement claims.

**Contract**

Under Colorado law, a plaintiff asserting a tortious interference with a contract claim must show that: (i) the plaintiff has a contract with another party; (ii) the defendant knew or should have known of such contract's existence; (iii) the defendant intentionally induced the other party to the contract not to perform the contract with the plaintiff; and (iv) the defendant's actions caused plaintiff to incur damages. *Memorial Gardens, Inc. v. Olympian Sales & Management Consultants, Inc*., 690 P.2d 207 (Colo. 1984). Alternatively, a claim for tortious interference with prospective business advantage does not require a showing of an underlying contract; rather, the plaintiff must show intentional and improper interference such that a particular contract is prevented from being formed. *See Harris Group, Inc. v. Robinson*, 209 P.3d 1188, 1195–96 (Colo. Ct. App. 2009).

<u>Ms. Swallow</u>

The contract upon which Ms. Shell relies for this claim is the contract between Ms. Shell and Ms. Swallow or, alternatively, the contract between Ms. Shell and Ms. Durand (who is no longer a Defendant). As noted above, a fundamental element of the claim is that the plaintiff have a contract with another person other than the defendant. Here, the only contract involving another person is the contract between Ms. Shell and Ms. Durand. The Complaint does not allege any facts that would show that Ms. Swallow induced Ms. Durand to breach the contract. In addition, there are no alleged facts that would show conduct by Ms. Swallow that prevented some other contract from being formed. Therefore, this claim is be dismissed as to Ms. Swallow.

<u>Mr. Henderson</u>

The Complaint contains no specific allegations that would plausibly give rise to an inference that Mr. Henderson took any action to induce either Ms. Swallow, Ms. Durand, or anyone else to breach any contract with Ms. Shell.  Accordingly, this claim is dismissed as to Mr. Henderson.  In addition, it does not appear that Ms. Shell could amend her Complaint to state a claim for tortious interference against Mr. Henderson.  Ms. Shell's Affidavit on Tortious Interference with Contract (**#627**) lists various actions by others, primarily involving the use or disclosure of her materials, but as to Mr. Henderson states only that he "is on the board of AFRA, and exercises control over AFRA online properties."  *Id*., ¶ 54.  Other than conclusory statements, Ms. Shell identifies no specific conduct, acts, or statements by Mr. Henderson that could plausibly give rise to an inference that he induced any person to breach an existing contract with her.

### f.  False and Misleading Advertisement

To establish a claim under the Lanham Act, 15 U.S.C. § 1125(a) for false and misleading advertising, the plaintiff must prove the following elements: (i) that defendant made material false or misleading representations of fact in connection with the commercial advertising or promotion of its product; (ii) in commerce; (iii) that are either likely to cause confusion or mistake as to (a) the origin, association or approval of the product with or by another, or (b) the characteristics of the goods or services; and (iv) injury the plaintiff.  *Cottrell, Ltd. v. Biotrol Int'l, Inc*., 191 F.3d 1248, 1252 (10th Cir. 1999) (citations omitted).

The Tenth Circuit has adopted the following test to determine whether a statement amounts to "commercial advertising or promotion," requiring that the representation be: (1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for

the purpose of influencing consumers to buy defendant's goods or services; and (4) the representations need not be made in a "classic advertising campaign" but must be disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion" within that industry. *Proctor & Gamble Co. v. Haugen*, 222 F.3d 1262, 1273-74 (10th Cir. 2000).

<u>Ms. Swallow</u>

The Complaint contains no allegations, other than conclusory allegations regarding all the Defendants, sufficient to give rise to an inference that Ms. Swallow engaged in any commercial advertising of her own product or service in interstate commerce.  In an affidavit submitted in connection with Ms. Shell's response, Ms. Shell avers that Ms. Swallow has also published a number of defamatory statements about Ms. Shell and that such statements are "advertisements." (#**528**).  However, the facts contained in Ms. Shell's affidavit are still no more than conclusory allegations regarding any commercial activities by Ms. Swallow.  All of the filings in this action indicate that Ms. Swallow has, at most, posted comments in the various internet groups and online forums disparaging Ms. Shell and her work and accusing her of a variety of criminal and/or fraudulent conduct.  While this might state a claim for defamation,[17] it does not plausibly allege the advertising of a product or service sold by Ms. Swallow. Therefore, the false advertising claim is dismissed.

<u>Mr. Henderson</u>

Mr. Henderson also challenges this claim on the grounds that the Complaint does not allege any commercial activity or commercial advertising sufficient to state a claim for false

---

[17]Ms. Shell has not alleged a claim of defamation against Ms. Swallow in this action, although Ms. Shell apparently received a default judgment in another proceeding in which she asserted such a claim.

advertising.  Other than conclusory allegations, the Complaint does not demonstrate that Mr.

Henderson himself advertised any product or service for sale, that he was in commercial

competition with Ms. Shell, or that he made any statement with the intent of influencing

consumers to purchase his goods or services.  Simply put, there is no allegation that Mr.

Henderson either personally or on behalf of AFRA has offered any goods or services for sale.

Indeed, the crux of Ms. Shell's lawsuit is that she herself offered her materials and training

programs in exchange for a fee but the Defendants wrongfully obtained and then disseminated

her materials for free on online discussion groups and the AFRA website.  While these activities

may have caused Ms. Shell herself financial harm, they do not amount to commercial activity by

Mr. Henderson.

In her Response brief, Ms. Shell notes that AFRA has in the past promoted/advertised her

materials (when she was a member of the AFRA board), offers brochures for anyone to print,

"publicizes" its positions on child welfare issues, and promotes itself as an organization.  Again,

however, none of this shows the sale of any product or service.  Moreover, what Ms. Shell

considers to be "advertisements" are again merely disparaging statements about her, apparently

posted online or communicated person to person.  Complaint ¶¶ 235-274; Response (**#624**) at p.

25.  None of these statements are specifically attributed to Mr. Henderson, nor were they made

in connection with any effort by him to sell a product or service in competition with Ms. Shell.

Therefore, the false advertising claim is dismissed as against Mr. Henderson.

The Court has also reviewed Ms. Shell's Affidavit and Exhibits on False and Misleading

Advertisements (**#629**) to determine whether she should be permitted to amend her Complaint in

this regard.  Aside from conclusory averments, the only conduct specifically attributed to Mr.

Henderson is his creation of AFRA interactive online groups, which in turn are used to exchange information, "offer AFRA fund raising items," and to promote AFRA as an organization.  *Id.* ¶ 3.  Otherwise, Ms. Shell identifies only insulting and allegedly false comments posted on these discussion groups and elsewhere by others[18] and her disagreement with advice Mr. Henderson offered on the AFRA website or discussion groups with respect to child welfare issues.  Again, while these facts might support a claim for defamation against the persons who made the statements, they do not plausibly suggest that Mr. Henderson made any false statements in connection with the commercial advertising of a product or service for sale in competition with Ms. Shell.  Therefore, this claim is dismissed and amendment will not be permitted.

### g.    Unfair Trade Practices

The next claim in the Complaint is for unfair trade practices.[19]  To prevail on an unfair trade practices claim under the Colorado Consumer Protection Act, C.R.S. § 6-1-101 *et seq.*, a plaintiff must prove the following elements: (1) that the defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of defendant's business, vocation, or occupation; (3) that it significantly impacts the public as actual or

---

[18]Wading through Ms. Shell's voluminous documents revealed only the following statements allegedly made by Mr. Henderson, apparently in communications to other AFRA directors: (1) that he thought Ms. Shell had "Alzheimer's or what . . ." (**#629**, ¶ 96); and (2) that Ms. Shell "even went so far as offering to fabricate a sexual harassment case against me because I used to end my phone conversations with the Christian 'I love you.'" (*id.*, ¶ 117).

[19]The Complaint also purports to assert a federal unfair trade practices claim but it is unclear what federal cause of action is alleged.  The Complaint cites 15 U.S.C. § 1127, which concerns trademarks, but the Complaint does not allege that Ms. Shell possessed any valid trademarks that were misused by any Defendant; therefore, to the extent the claim is based on trademark infringement it is dismissed.  Ms. Shell did not in any of her response briefs clarify the basis of a federal cause of action and does not identify any other federal statute upon which she relies.  Therefore, only the state unfair practices claim is analyzed.

potential consumers of the defendant's goods, services, or property; (4) that the plaintiff suffered injury in fact to a legally protected interest; and (5) that the challenged practice caused the plaintiff's injury. *Hall v. Walter*, 969 P.2d 224, 235 (Colo. 1998).

<u>Ms. Swallow</u>

As noted by the Court in its March 31, 2010 Order (**#397**), the Complaint, as to this and the remaining claims, contains only conclusory assertions setting forth the elements of a cause of action but no specific factual averments sufficient to state a plausible claim against Ms. Swallow. Even giving Ms. Shell the benefit of all favorable inferences from the specific facts asserted, the Complaint alleges no more than that Ms. Swallow improperly obtained and disseminated materials from Ms. Shell's training seminar and published unfavorable comments about Ms. Shell on the Internet.  There are no specific facts regarding Ms. Swallow that would show that she engaged in any unfair trade practice in connection with her "business, vocation, or occupation" (indeed, there are no allegations at all with respect to Ms. Swallow's line of work) or that her conduct has had a significant impact on the public as consumers of Ms. Shell's goods or services.  Therefore, this claim is dismissed as to Ms. Swallow.

<u>Mr. Henderson</u>

As to Mr. Henderson, disregarding conclusory allegations, the Complaint alleges essentially that Mr. Henderson was a founder, board member and former president of AFRA, that he maintained the AFRA website and set up interactive discussion groups, and that he and other persons have posted Ms. Shell's materials without consent and made nasty comments about her on these sites.  Giving Ms. Shell the benefit of all favorable inferences, because of Mr. Henderson's leadership role in AFRA, the allegations could plausibly suggest that his conduct

was in the course of his business, vocation or occupation.  In addition, the conduct described

(publishing Ms. Shell's materials without consent or attribution and disparaging her professional

reputation) could plausibly be considered an unfair trade practice.  *See, e.g.,* C.R.S. § 6-1-

105(1)(b) and (h) (unfair trade practice includes  knowingly making "a false representation as to

the source, sponsorship, approval, or certification of goods, services, or property" and

"[d]isparag[ing] the goods, services, property, or business of another by false or misleading

representation of fact.").  The Complaint alleges that there is a consumer market for Ms. Shell's

services and materials that was impacted by this conduct and that Ms. Shell was injured

financially.  These allegations are sufficient to state a claim against Mr. Henderson and so the

claim will not be dismissed.

### h.    Conspiracy

The Complaint also contains a claim of civil conspiracy, asserted against all of the

Defendants, again based on conclusory allegations.  To establish a claim of civil conspiracy

under Colorado law, "there must be: (1) two or more persons, and for this purpose a corporation

is a person; (2) an object to be accomplished; (3) a meeting of the minds on the object or course

of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof."

*Jet Courier Serv., Inc. v. Mulei*, 771 P.2d 486, 502 (Colo.1989).

 Civil conspiracy is a derivative cause of action that is not independently actionable.

*Double Oak Constr., L.L.C. v. Cornerstone Development Int'l, L.L.C.*, 97 P.3d 140, 146

(Colo.App.2003). "[T]he essence of a civil conspiracy claim is not the conspiracy itself, but the

actual damages resulting from the acts done in furtherance of the conspiracy." *Id*.  Therefore, the

purpose of the conspiracy claim is to hold the named Defendants liable for the unlawful acts

allegedly committed by their purported co-conspirators. *Sterenbuch v. Goss*, 266 P.3d 428, 435 (Colo.App. 2011) ("it is wrongful acts, not the mere existence or continuation of a conspiracy, that injure the plaintiff."); *see also Farmland Indus. v. Frazier–Parrott Commodities, Inc.*, 871 F.2d 1402, 1409 (8th Cir.1989) ("[T]he 'doctrine of civil conspiracy extends liability for tort ... to persons other than the actual wrongdoer ... but it is the acts causing damage to the plaintiff that give rise to liability for damages, not the conspiracy itself.' ").

Ms. Swallow

Aside from conclusory allegations, the Complaint alleges that Ms. Swallow attended a seminar at which she obtained Ms. Shell's training materials. Ms. Swallow thereafter transmitted them to dismissed Defendant William Wiseman, who published them on his website. Complaint, ¶ 83. Assuming that this publication is itself wrongful, these minimal allegations may be sufficient to plausibly suggest that Ms. Swallow and Mr. Wiseman entered into an agreement to disclose and disseminate Ms. Swallow's protected intellectual property, thereby causing Ms. Shell financial harm. However, this claim is entirely redundant of the misappropriation of trade secrets claim already asserted against Ms. Swallow and does not need to be pled as a duplicative derivative claim. In the absence of any other allegations that could plausibly give rise to an inference that Ms. Swallow entered into a conspiracy with any other individual to commit an unlawful act such that Ms. Swallow should be liable for that other person's actions, the claim is dismissed.

Mr. Henderson

As noted above, the Complaint alleges that Mr. Henderson had a principal role at AFRA, maintained its website, and set up or moderated some of the affiliated online groups. The

Complaint further alleges that several of Ms. Shell's copyrighted documents were published on the AFRA website and related sites. The only other specific allegation relating to Mr. Henderson is that "[o]n July 31, 2004, Henderson published and advertised on AFRA Directors that I had left AFRA, and that my efforts to protect my intellectual property was a 'problem' for AFRA." Complaint, ¶ 103. The Complaint also alleges that "AFRA has an express and implied policy, and a long running practice to engage in wholesale copyright infringement and other misappropriation of intellectual property belonging to a plethora of authors" and that "AFRA has provided instruction to its members on it's groups how to copy entire web sites without seeking prior permission." Complaint, ¶¶ 95, 98. These allegations are conclusory and do not allege specific facts sufficient to plausibly suggest that Mr. Henderson personally entered into any agreement with any of the other persons to engage in copyright infringement such that he can be held liable for their infringement, as opposed to his own conduct. To the extent Mr. Henderson played a role in the alleged infringement by allowing it to be published on the AFRA sites he allegedly controlled, Ms. Shell's concerns are adequately addressed by her claim for contributory infringement, which remains pending.

Moreover, the Court has reviewed Ms. Shell's Affidavit on the Conspiracy (**#631**) to determine whether, if given the opportunity to amend, Ms. Shell could allege facts sufficient to state a claim for conspiracy against Mr. Henderson. Disregarding conclusory assertions, Ms. Shell lists various communications from Mr. Henderson to or about her, his publication of her work without attribution, Ms. Shell's myriad disputes with other persons, Mr. Henderson's expressions of doubts regarding the validity of Ms. Shell's claim to ownership of the materials at issue, details of tit-for-tat online exchanges among AFRA members going back to 2004 and

earlier, Mr. Henderson's role in revoking AFRA memberships, disagreements among AFRA members regarding a "consumer advisory" (apparently a listing of "bad family advocates") developed by Ms. Shell, sexist and insulting comments made by Mr. Henderson, disagreements involving Mr. Henderson as to whether to allow Ms. Shell to offer her training to AFRA members and discussions regarding AFRA developing its own training, Mr. Henderson's non-specific statements that he could "destroy" her, alleged acts of infringement by other AFRA members (not on AFRA websites), derogatory statements allegedly posted by dismissed Defendant Wiseman and others (but not Mr. Henderson) on non-AFRA websites, various contributions to a discussion group called "bashing_shell" (none of which are attributed to Mr. Henderson), efforts by Mr. Henderson to ban discussion of Ms. Shell on the AFRA site, and numerous communications to or about Ms. Shell by others, and discussions by others on non-AFRA websites about the validity of claiming intellectual property rights in materials intended to further the cause of family advocacy.  At most, Ms. Shell avers only inactivity, in that "Henderson never attempted to control the content of any other AFRA member's or anyone else's web site" (¶ 405) and that he did not remove allegedly infringing content from AFRA group files (¶ 409).

This cascade of minutia shows at best a long and rancorous relationship between Ms. Shell and AFRA members (or other persons involved in family advocacy), including Mr. Henderson.  These persons may have had shared hostility towards Ms. Shell, and she towards them, but this is insufficient, even giving Ms. Shell the benefit of all favorable inferences, to plausibly suggest that Mr. Henderson entered into an agreement with another person to commit an unlawful act such that he can be liable for that person's conduct.  *Salehpoor v. Shahinpoor,*

358 F.3d 782, 789 (10th Cir. 2004) ("Parallel action-or inaction in our case-does not necessarily indicate an agreement to act in concert.").  Therefore, no amendment of the Complaint shall be permitted in this regard.

### i.      Sherman Anti-Trust Act

The Complaint alleges an anti-trust claim with wholly conclusory allegations, setting forth only the elements of a cause of action with no specific facts.  The relevant statute, 15 U.S.C. § 2 provides penalties for any person "who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States."  As established above, there are no facts alleged in the Complaint that plausibly suggest that Ms. Swallow or Mr. Henderson engages in any trade or commerce or is in any kind of commercial competition with Ms. Shell.  In addition, no facts are averred in Ms. Shell's Affidavit and Exhibits on Anti-Trust (**#634**) that if pled in an amended pleading would save the claim; in fact, all of the information contained in the affidavit definitively establishes that the conduct at issue involves no business, trade, or commercial activities but rather discussions and exchange of information without payment.  To the extent Ms. Shell suffered any harm from the disclosure and dissemination of her intellectual property and disparagement of her professional credentials in this regard, it is adequately addressed by her remaining claims.

### VII.  Order to Show Cause as to Remaining Defendants

The Court notes that the caption refers to several Defendants against whom there have been no material recent proceedings: Families At Risk Defense Alliance; Francine Renee Cygan; Mark Cygan; Illinois Family Advocacy Coalition; Georgia Family Rights, Inc; and  National

Association of Family Advocates.

The last meaningful docket activity involving Families and Risk Defense Alliance; Illinois Family Advocacy Coalition Georgia Family Rights, Inc., and Mark Cygan was the Clerk's entry of default (**# 519**) against them on January 19, 2012.  Entry of default against Francine Renee Cygan was also entered at that time, and on June 22, 2012, the Magistrate Judge denied **# 722)** Ms. Cygan's motion to set aside that default.

The last docket activity involving the National Association of Family Advocates was an April 16, 2009 Order (**# 45**) striking its Answer and directing it to obtain counsel, and proceedings a few days later in which the Court declined to reconsider (**# 47, 49**) that Order.

Ms. Shell is obligated to pursue her claims against all named Defendants in this matter with reasonable diligence.  Within 30 days of the date of this Order, Ms. Shell shall either: (i) file motions for default judgments against these Defendants; (ii) dismiss the claims against these Defendants; or (iii) otherwise show cause as to why the Court should not dismiss the claims against these Defendants *sua sponte* for failure to prosecute pursuant to Fed. R. Civ. P. 41(b). Ms. Shell is reminded that, should she choose to seek default judgments against these Defendants, such motions must recite facts sufficient to demonstrate the basis for this Court's exercise of personal jurisdiction over these Defendants as discussed above.  Motions for default judgment that fail to make such a showing shall result in dismissal of the claims against the affected Defendant(s) for lack of personal jurisdiction.

**IT IS THEREFORE ORDERED**:

(1)      Defendant American Family Rights Association's ("AFRA") Motion to Dismiss

is **GRANTED**.  The claims against AFRA are dismissed without prejudice for

lack of personal jurisdiction and the caption of the case is amended to omit reference to AFRA.

(2)     Ms. Shell's Motion to Strike Defendant AFRA's Motion to Dismiss (**#535**) is **DENIED**.

(3)     Ms. Shell's Motion for Sanctions Pursuant to Fed. R. Civ. P. 11 (**#536**) is **DENIED**.

(4)     Defendant Brenda Swallow's Motion to Dismiss (**#506**) is **GRANTED IN PART AND DENIED IN PART**.  The Plaintiff's claims of contributory and vicarious copyright infringement, tortious interference with contract, false advertising, unfair trade practices, civil conspiracy, and anti-trust violations are dismissed as to Ms. Swallow for failure to state a claim.

(5)     Defendant Leonard Henderson's Motion for Summary Judgment (**#592**), construed as a Motion to Dismiss, is **GRANTED IN PART AND DENIED IN PART.**  The Plaintiff's claims of misappropriation of trade secret, tortious interference with contract, breach of contract, false advertising, unfair trade practices, civil conspiracy, and anti-trust violations are dismissed as to Mr. Henderson for failure to state a claim.

(6)     For purposes of clarity, the Court repeats that the following claims, and **only** the following claims, are proceeding against Ms. Swallow and Mr. Henderson in this suit: (i) copyright infringement against Mr. Henderson and Ms. Swallow, (ii) contributory copyright infringement against Mr. Henderson; (iii) misappropriation of trade secrets against Ms. Swallow; (iv) breach of contract against Ms.

43

Swallow; and (v) unfair trade practices against Mr. Henderson.

(7)     Ms. Shell shall file a statement identifying all of the alleged infringing acts underlying her claim of copyright infringement and contributory/vicarious copyright infringement, as described herein, within ten days of the issuance of this order.

(8)     With regard to Defendants Families At Risk Defense Alliance; Francine Renee Cygan; Mark Cygan; Illinois Family Advocacy Coalition; Georgia Family Rights, Inc; and  National Association of Family Advocates, Ms. Shell shall have 30 days from the date of this Order in which to file appropriate motions for default judgment, dismiss the claims against these Defendants, or otherwise show cause why the claims against these Defendants should not be dismissed for failure to prosecute.

Dated this 28th day of September, 2012

**BY THE COURT:**

_____

Marcia S. Krieger
United States District Judge