IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 09–cv–00309-MSK-KMT

SUZANNE SHELL,

    Plaintiff,

v.

LEONARD HENDERSON,
FAMILIES AT RISK DEFENSE ALLIANCE,
FRANCINE RENEE CYGAN,
MARK CYGAN,
ILLINOIS FAMILY ADVOCACY COALITION,
GEORGIA FAMILY RIGHTS, INC.,
NATIONAL ASSOCIATION OF FAMILY ADVOCATES,
CONNECTICUT DCF WATCH,
BRENDA SWALLOW, and
RANDALL BLAIR,

    Defendants.

# ORDER

This matter is before the court on "Plaintiff's Motion to Compel Defendant Henderson to Respond to Plaintiff's Discovery Request" [Doc. No. 851] filed September 23, 2012. Defendant Henderson filed a response on September 27, 2012 [Doc. No. 858] and Plaintiff replied on September 27, 2012 [Doc. No. 859].

On September 28, 2012, District Judge Marcia S. Krieger issued an Order concerning various motions and limited and clarified the remaining issues in the case. Ultimately, as to

Defendant Henderson, Judge Krieger allowed only the claims of copyright infringement, contributory copyright infringement and unfair trade practices to proceed against Mr. Henderson. Therefore, this court will consider this motion and the allowable range of discovery only as to those claims.

In general, Plaintiff complains that Defendant Henderson did not swear to his responses under penalty of perjury as he had been previously ordered to do. Mr. Henderson claims that he remedied that error on September 18, 2012 at 12:31 p.m. Although Plaintiff disputes that anything was sent to her on September 18, 2012 from Mr. Henderson, it is not disputed that she is now in receipt of the discovery responses.[1] Plaintiff further objects that Mr. Henderson signed his responses in typewritten format. The court notes that Ms. Shell also, appropriately, signs her submissions to the court in typewritten format which is the correct convention for electronic filing. Given that Mr. Henderson is proceeding *pro se*, I see no reason to assume that he is doing anything other than what he sees the lawyers and other parties doing in this case. His signature, under oath, even though in typewritten form, is acceptable under these circumstances and will be accepted as the signature of Leonard Henderson, defendant in this matter.

At approximately 8:19 a.m. on September 18, 2012, the Plaintiff sent Mr. Henderson her email complaining about not receiving adequate responses to interrogatories and other discovery. (Mot., Ex. 4.) This indicates that, as he stated, Mr. Henderson did send some form of responses to Ms. Shell prior to that date, consistent with Mr. Henderson's claim that his first, unsworn

---

[1] Plaintiff received the discovery responses on September 26, 2012 after she had filed her Motion to Compel on September 23, 2012.

responses were sent on September 17, 2012. (Resp. at 2.) Plaintiff alleges that she did not receive the updated responses from Mr. Henderson that he claims he sent to her on September 18, 2012 at 12:31 p.m. As verification, Plaintiff states that Mr. Henderson's responses were "created" on "9/18/2012 at 1:29:25 pm." (Reply ¶ 2.) Plaintiff attaches what she states is her metadata search, finding that the document ultimately sent to her by Mr. Henderson was not created until September 18, 2012 at **12:29:25**.[2] [Doc. No. 859-2 at 1]. The court notes no discrepancy between Mr. Henderson's assertion that he emailed the document to Plaintiff on September 18, 2012 (Resp. at 2) and the metadata. To the extent there is an errant hour somewhere in this minutiae, the court notes there is a one hour time difference between Oregon, residence of Mr. Henderson, and Colorado, residence of Ms. Shell.

The court accepts that Mr. Henderson created the supplementary responses and attempted to email them to Ms. Shell on or about September 18, 2012 after receiving her first conferral email protesting responses he sent the day before. The court also accepts that Ms. Shell did not receive the email from Mr. Henderson and that she eventually did receive the responses on September 26, 2012 when she alerted Mr. Henderson through filing her Motion to Compel. The metadata confirms that the document was re-opened on September 25, 2012 by its creator, inferentially in response to the Motion filed by the Plaintiff. (*Id*.) Therefore, the court finds that the responses to the discovery were timely made or objected to.[3]

---

[2] It appears Plaintiff has made a one hour misstatement.

[3] All remaining parties in this case are proceeding pro se. In construing these parties' pleadings, the Court is mindful of their pro se status and, therefore, the Court construes their

**Analysis of substantive discovery issues:**

In his Response, Mr. Henderson provides additional information addressing each of the contentions of inadequacy raised by Plaintiff in her motion. The court will consider the additional information provided by Mr. Henderson in his Response to have provided the required information and to be acceptable to the Plaintiff unless she reiterated an objection in her Reply.

The court previously found that Interrogatory 4 propounded by Plaintiff contained a number of separate issues which the parties have addressed in the responses.

<u>Int. No. 4.2</u>

Plaintiff did not include any complaint about Int. No. 4.2 (descriptive chronology of each web site) as part of her Motion, however she did include it in her Reply. The court construes Mr. Henderson's response to 4.2.1[4] "Not humanly possible" to be an objection to the interrogatory. It is clear to the court that most, if not all, of the "groups" and forums discussed by the parties and as specifically identified by Mr. Henderson in his response to Int. No. 4.1 (all web sites

---

pleadings liberally and holds them to a "less stringent standard" than pleadings drafted by lawyers in accordance with *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Such liberal construction is intended merely to overlook technical formatting errors, poor writing style, and other defects in the party's use of legal terminology, citation, and theories. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The Court, however, cannot act as a pro se litigant's legal advocate and pro se status does not relieve a party of the duty to comply with the various rules and procedures governing litigants and counsel or the requirements of the substantive law, and in these regards, the Court must apply the same standard to counsel licensed to practice law and to a pro se party. *See McNeil v. United States*, 508 U.S. 106, 113 (1993); *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994). Therefore, the court liberally construes certain language used by Mr. Henderson in his responses as forming an objection.

[4] The parties have labeled their interrogatory numbers differently. The court has made an effort to coordinate the numbers.

created, moderated, owned or operated by Henderson) were free form running discussion groups. There has been no indication whatsoever that anyone ever made a hard or electronic copy of every entry on every website, although there is ample evidence that certain "posts" were copied or otherwise retained by contributing members. "Not humanly possible" therefore indicates to the court that there is no accurate running chronology of postings on any of the listed web sites; i.e., no chronology exists. Defendant Henderson's objection is sustained. The Motion is denied as to this discovery request.

Int. No. 4.7

Defendant Henderson has adequately responded to this interrogatory which asked whether the AFRA website was Public and why it was public and why any or all of the Yahoo groups were private, membership only. Mr. Henderson responded that the AFRA website was a website and therefore public. The court understands this response. Further, Mr. Henderson responded that the Yahoo groups were private "because the things discussed were private things." Both answers are responsive to the questions asked. The Motion is denied as to this discovery request.

Int. No. 4.8

The interrogatory requested, as to each group identified in the responses to Int. No. 4.1, a description of any membership prerequisites and requirements. Mr. Henderson's response as to the AFRA website is appropriate. However, it is not adequate as to the private membership groups. Clearly, the question is who was allowed to join the private groups/what was the criteria to be a member/ how did one get to become a member of any of the private groups/whether the

criteria for membership different from group to group and similar questions.  The Motion is granted as to this discovery request.  Defendant will provide a complete answer describing for each of the <u>groups</u> identified in his response to interrogatory 4.1 any and all membership prerequisites and requirements on or before October 16, 2012.

<u>Int. No. 4.9</u> (how members were solicited)

The court agrees with Plaintiff that the response "AFRA by recommendation of member orgs" is unintelligible.  The Motion is granted as to this discovery request.  Defendant will provide a complete answer describing in more detail and in a more intelligible manner how members for each of the Yahoo groups were solicited <u>by AFRA</u> on or before October 16, 2012.

<u>Int. 4.12</u> (what rules members of the Yahoo groups were required to follow and where such rules were published)

The court assumes from the way the question was answered that official rules for the groups were not actually formalized.  However, the defendant must be more direct and so state if that is the answer.  As it stands, the answer is only partial - providing a few rules that "Many of the YAHOOgroups" observed such as 'no forwarding' but the response does not state where a member of the group could go to find the express rules or if there was such a place.  To the extent a certain group did not have any rules, or that unwritten rules were only passed on sporadically as the occasion arose, the response should so state.  The Motion is granted as to this discovery request.  Defendant will provide a complete answer as to each group identified in 4.1, including what rules members of the Yahoo group were required to follow and where such rules were published, if they were published, on or before October 16, 2012.

<u>Int. 4.13</u> (procedures for handling "offensive" messages)

Defendant Henderson's response to this interrogatory is sufficient.  He stated that the only procedure for the AFRA web site where he was Web Master, editor and publisher was that he saw every message before it was officially posted and if they met certain criteria he simply did not post them.  As to the Yahoo groups, by their nature no one is particularly "guarding" content, so such offensive messages were "nuked when we became aware of them."  The court interprets "nuked" to mean, erased from the running documentary.  The question asked for the procedure and the Defendant told her the apparently unpublished procedure.  The Motion is denied as to this discovery request.

<u>Int. 4.16</u> ("intervening variations" for any of the questions contained in Interrogatory 4)

This is not technically a question in and of itself, but rather would apply to any responses about procedures.  Therefore, Mr. Henderson's failure to respond separately to this request is acceptable.  The Motion is denied as to this discovery request.

<u>Int. 6</u> (contact made to Mr. Henderson regarding "infringing conduct."

The defendant lists five instances where he was 'contacted' about infringing conduct and provided documents in support.  The responses contain the action/reaction of Mr. Henderson where appropriate.  The Motion is denied as to this discovery request.

It is therefore **ORDERED**

"Plaintiff's Motion to Compel Defendant Henderson to Respond to Plaintiff's Discovery Request" [Doc. No. 851] is GRANTED in part and DENIED in part consistent with this Order.

Dated this 5th day of October, 2012.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge