IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 09–cv–00309-MSK-KMT

SUZANNE SHELL,

    Plaintiff,

v.

LEONARD HENDERSON,
FAMILIES AT RISK DEFENSE ALLIANCE,
FRANCINE RENEE CYGAN,
ILLINOIS FAMILY ADVOCACY COALITION,
GEORGIA FAMILY RIGHTS, INC.,
NATIONAL ASSOCIATION OF FAMILY ADVOCATES,
CONNECTICUT DCF WATCH,
BRENDA SWALLOW, and
RANDALL BLAIR,

    Defendants.

**ORDER**

This matter is before the court on "Defendant Swallow's Motion to Terminate and Limit Depositions" [Doc. No. 1137] ("Def. Mot. to Limit"), "Defendant Swallow's Motion to Sanction Plaintiff for Failure to Comply with Discovery Requests" [Doc. No. 1138] ("Def. Mot. Sanctions"), and on "Defendant Swallow's Objection to Court Order (DOC #1162)" [Doc. No. 1163]. The court aslo will consider "Plaintiff's Motions for Sanctions for Deposition Abuse Pursuant to Local Rule 30.3 and for an Order Pursuant to the Court's Order [1136]" [Doc. No.

1140] (Pl. Mot. Sanctions"). Doc. Nos. 1137, 1138 and 1140 are fully briefed and ripe for ruling. Doc. No. 1162 is prematurely filed as set forth *infra* and does not require a response.

On March 13, 2013, the deposition of Defendant Brenda Swallow was begun by Plaintiff Suzanne Shell. (See transcript [Doc. No. 1157-1] ("Trans. I").) The deposition was continued on March 22, 2013. (See transcript [Doc. No. 1157-2] ("Trans. II").) Swallow's Motion to Limit requests the court to declare her deposition concluded and to disallow additional time to further depose Defendant Swallow. Ms. Swallow contends that the Plaintiff "wasted most of the time spent in her questioning, asking about dismissed defendants, irrelevant topics and seeking to establish a basis for charges that have been dismissed by this court years ago." ("Deft. Mot. to Limit. at 2.) For reasons set forth herein, this court agrees.

Plaintiff is proceeding on three remaining causes of action against Defendant Swallow: misappropriation of trade secrets, copyright infringement, and breach of contract. (Order of Chief District Judge Marcia S. Krieger [Doc. No. 861] at 43-44.) Under the standards applicable to a Rule 12 motion to dismiss, the District Court found the Complaint sufficiently alleged that the materials Ms. Shell used in her training seminars were trade secrets and that Plaintiff had sufficiently stated her claim that Ms. Swallow obtained those materials and disseminated them in violation of a confidentiality agreement. (*Id.* at 23.) As to the copyright claim, the District Court found that Plaintiff sufficiently identified the materials she contends are copyrighted (see Compl. ¶ 94) and that she sufficiently asserted that certain of her copyrighted documents were infringed by being published on various websites without her permission. (*Id.* at 24.) However, the court also concluded that "none of the alleged infringing actions were committed by Ms.

Swallow." (*Id.* at 24-25.) Rather than dismissing the cause of action against Ms. Swallow, however, the court allowed Plaintiff to submit a more definite statement regarding her infringement claim." (*Id.*)

In her submission pursuant to Judge Krieger's order [Doc. No. 872, "Plaintiff's Statement Identifying All Alleged Infringing Acts Underlying Copyright Claims"],[1] Shell states,

> 17  Swallow published the Florida seminar handout on the bashingshell Yahoo! group, where she was a member, in the files section. This document was a proprietary document containing trade secrets at the time she published it in April, 2006.
> 18  In April, 2006, Swallow also gave a copy of the Florida seminar handout to William Wiseman for the express purpose of publishing it on his web site thetruthistold[dot]com, which he did.

(*Id.*)

The factual basis for <u>all</u> the remaining claims therefore rests on the materials and information allegedly obtained by Defendant Swallow in connection with one[2] seminar presented by Ms. Shell and attended by Defendant Swallow. These particular seminar documents are the items which Ms. Shell claims are both her trade secrets and her copyrighted intellectual property. All persons who attended the seminar in question received a copy of these materials, including Defendant Swallow, who was only one of a larger number of individuals in attendance.[3] The

---

[1] The sufficiency of the copyright infringement claim in light of Plaintiff's further elaborations is pending before the District Court. (See also, Doc. Nos. 901 and 907, Swallow subsequent dispositive motions.)

[2] Plaintiff apparently put on seminars at various locations in the country. It is undisputed that Defendant Swallow attended at least two of these seminars.

[3] Ms. Swallow testified at several points in the deposition that there were so many people in attendance at the seminar that one person was forced to go to a nearby Sir Speedy copy

plaintiff claims, apparently, that Ms. Swallow both wrongfully acquired the seminar materials at the presentation and[4] wrongfully disseminated those same seminar materials in April 2006, approximately one month after the subject seminar when, 1) Ms. Swallow allegedly provided the seminar materials to William Wiseman, who allegedly posted them on a website entitled thetruthistold.com, and 2) Ms. Swallow personally posted the seminar materials on a Yahoo! group entitled "bashingshell." The dissemination of these materials was allegedly in violation of a non-disclosure agreement Ms. Swallow allegedly executed at the seminar. Given that the seminar materials were originally distributed to multiple people, any one of whom could have posted them anonymously on the internet and some of whom were former defendants in this case or were otherwise at odds with Plaintiff, evidence tending to prove a connection between William Wiseman[5] and Defendant Swallow is critical if Plaintiff is to succeed on her claims against this defendant.

The entire remaining case against Ms. Swallow has narrowed, therefore, to her attendance at a March 2006 seminar where many other people received the allegedly protected

---

location and make additional rush copies of the materials because the presenters had not started with enough copies for every person in attendance. (Trans. II at 78 and 152-53.)

[4] To prove misappropriation of a trade secret, a plaintiff must show: (i) that he or she possessed a valid trade secret, (ii) that the trade secret was disclosed or used without consent, **and** (iii) that the defendant knew, or should have known, that the trade secret was acquired by improper means. *Gates Rubber Co. v. Bando Chemical Industries, Ltd.*, 9 F.3d 823, 847 (10th Cir. 1993) (citing Colorado Uniform Trade Secrets Act, C.R.S. § 7-74-101 et seq.)(emphasis added).

[5] Wiseman is believed to have owned, controlled or set up both "bashingshell" and "thetruthistold.com."

material from Ms. Shell, and Defendant Swallow's actions during the subsequent month.  The primary relevant topics[6] for a deposition of Ms. Swallow therefore include: 1) Ms. Swallow's participation in the one seminar including events leading up to her attendance, her actions during the seminar and after the seminar, and tangential issues regarding why she attended the seminar; 2) Ms. Swallow's relationship, if any, to William Wiseman including facts relevant to establish direct or indirect contact with one another or with or through mutual acquaintances and including participation in joint internet groups or other such activities during the approximate time period; 3) Ms. Swallow's affiliation, if any, with the "bashingshell" Yahoo! group or thetruthistold.com website or with affiliated or associated internet groups or websites; and 4) Ms. Swallow's participation in Shell's business enterprises or with Shell and her internet-based training of citizen advocates or participation by those advocates to assist family members dealing with governmental child protection matters where Ms. Shell or one of her entities had been requested to assist on a case.

This is not to say that other topics might not pass the broad test of Rule 26 relevancy, but what is clear is that there is no relevancy whatsoever to whether or not an attorney working in

---

[6] The scope of evidence that is subject to discovery under the federal rules is broad: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense–including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P 26(b)(1).

some capacity with Plaintiff was disbarred and exactly when that disbarment took place,[7] whether Ms. Swallow is in communication with other defendants in this case after the filing of the litigation (therefore three years or more after the events of March and April of 2006), what dismissed former defendants (exclusive of William Weisman) have been doing during the pendency of the case, or the details about the child custody case of Brandy Cremeans, Ms. Swallow's daughter.

Substantial and repeated blocks of deposition time were devoted to just such topics, particularly the status of disbarred attorney James Filenbaum, who appeared briefly as attorney for Ms. Swallow's daughter in a Florida child protection matter, and exactly when his disbarment occurred. The reporter's index to the second part of the deposition shows 43 references to the name Filenbaum starting on page 21 of the transcript and continuing until page 192. (Trans. II at 253.) Additionally, the Plaintiff spent an inordinate amount of her time chastising the deponent, telling her to stop interrupting, accusing her of arguing with the questioner and asking the same questions repeatedly when the deponent would not give her the answers she wanted. To be fair, the deponent continuously provided long-winded responses, incorporating extraneous matters into the answer. Overall, however, the deponent's answers were responsive to the questions asked, albeit that the responses often were accompanied by qualifications and limitations, most of which were not inappropriate given the questioning.

---

[7] Defendant Swallow requests that the court order Plaintiff to produce certain documents having to do with James Filenbaum, his legal status or work being done with him by members of FRAI. (See Mot. to End Depo. ¶ 4.) Because the entire topic is so utterly irrelevant, that request as it is contained in Defendant's Mot. to Limit is denied.

Rather than accepting the core of the response and moving on, however, the plaintiff often would repeat over and over the same question in an attempt to obtain an unqualified response. Ultimately all this accomplished was the receipt of objections levied at the repetitive questioning.

Often, when Plaintiff did steer her questioning to relevant matters, she did so with wandering, open ended questions calling for the kind of narrative answer she predictably received. (See, e.g., Trans. II at 20, "Q – describe your involvement in detail about what you did, or the experience that are relevant, the experiences that are relevant to these proceedings, your participation in it" and at 47, "Q -- Okay. So why don't you please describe for me the issues and events surrounding the contract itself" to which she understandably received the response that there was no contract.) Further, the Plaintiff could not restrain herself from repeatedly paraphrasing, usually incorrectly, the deponent's previous answer, thus inciting the deponent into vehement denials and corrections.

By far the largest single time-waster was Plaintiff's insistence on cutting the deponent off on the pretext that she was not properly answering the question and in general attempting to dominate the proceedings rather than getting on with viewing relevant exhibits and posing questions about relevant matters. In fact, Plaintiff delayed even beginning relevant questioning about certain videotaped segments of the critical seminar at issue until 5:00 p.m. Denver time, 6:00 p.m. Florida time, after having been questioning the deponent since 10:00 a.m. in Florida that morning. (See Trans. II at 235, et seq.) She then told the deponent she would need more time because she wanted to question her about twelve additional video clips.

Except for a few gems of information buried in the verbose responses against which the court cautioned Ms. Swallow, the court concludes that the lengthy deposition, the transcript of which the court read every word, is less than useful to either party. However, the Plaintiff is more to blame for wasting time than is Defendant Swallow. The court sees utterly no purpose to be gained from extending the charade of this kind of badgering in the guise of "discovery" any further.

In Defendant Swallow's most recently filed motion she appears to challenge the admissibility of certain "evidence" developed within the deposition. As such, the motion is premature since the case is not yet at the trial stage. To the extent Defendant Swallow believes the Plaintiff has brought criminal charges of perjury against her, the defendant is advised that Ms. Shell, as a civil litigant, does not have the power to bring criminal charges. Furthermore, at this stage of the proceedings, the court sees nothing subject to an allegation of perjury in the deposition testimony. At the trial, if one is to be had in this case, the jury will decide which version of events deserves their acceptance, if any.

It is therefore ORDERED

1. "Defendant Swallow's Motion to Terminate and Limit Depositions" [Doc. No. 1137] is GRANTED IN PART consistent with this Order.

2. "Defendant Swallow's Motion to Sanction Plaintiff for Failure to Comply with Discovery Requests" [Doc. No. 1138] is DENIED.

3.   "Defendant Swallow's Objection to Court Order (DOC #1162)" [Doc. No. 1163], construed as an objection to the admissibility of evidence at trial, is DENIED without prejudice to raising evidentiary matters at the appropriate time.

4.   "Plaintiff's Motions for Sanctions for Deposition Abuse Pursuant to Local Rule 30.3 and for an Order Pursuant to the Court's Order [1136]" [Doc. No. 1140] is DENIED.

Dated this 16th day of April, 2013.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge