**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger**

Civil Action No. 09-cv-00309-MSK-KMT

**SUZANNE SHELL,**

**Plaintiff,**

**v.**

**LEONARD HENDERSON, and
BRENDA SWALLOW,**

**Defendants.**

_____

**OPINION AND ORDER DENYING MOTIONS FOR LEAVE TO APPEAR REMOTELY**
_____

　　　　**THIS MATTER** comes before the Court pursuant to Ms. Swallow's Motion for Leave to

Appear Remotely for Trial (**# 1214**), and Mr. Henderson's Motion for Leave to Appear Remotely

for Trial (**# 1215**).[1]

　　　　This matter is set to proceed to a multi-day jury trial in Denver, Colorado on September

30, 2013.  Mr. Henderson and Ms. Swallow, both of whom proceed *pro se*,[2] have moved for

leave to appear at that trial remotely, via video, from their homes in Oregon and Florida,

respectively.  They cite to indigence and medical disabilities that limit their ability to travel as

grounds for the requested relief.

---

[1]　　　Pursuant to D.C. Colo. L. Civ. R. 7.1(C), the Court need not await the filing of a response by Ms. Shell before addressing the motions.  The Court will assume that Ms. Shell opposes both Defendants' motions.

[2]　　　The Court has construed the movants' filings liberally, as required by *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

It is always preferable that a party be present at the trial of his or her own action, particularly where, as here, the party will not only serve as witness in support of his or her own defense, but will also be responsible for calling or examining other witnesses, making opening and closing statements, arguing evidentiary and legal issues to the Court, and participating in the drafting and refining of jury instructions. *See Muhammed v. Warden*, 849 F.2d 107, 111-12 (4th Cir, 1988). At least with regard to the role of a party as a testifying witness, Fed. R. Civ. P. 43(a) provides that "for good cause in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location." The Advisory Committee notes to the 1996 Amendments to Rule 43 acknowledge that remote testimony, while permissible, is somewhat disfavored:

> The importance of presenting live testimony in court cannot be forgotten. The very ceremony of trial and the presence of the factfinder may exert a powerful force for truthtelling. The opportunity to judge the demeanor of a witness face-to-face is accorded great value in our tradition. Transmission cannot be justified merely by showing that it is inconvenient for the witness to attend the trial.

The Court will assume, without necessarily finding, that remote appearance at trial is also permissible for purposes of carrying out the non-testimonial roles of a litigant – conducting examinations, admitting documentary evidence, making legal argument – subject to Rule 43's requirements of "good cause in compelling circumstances and with appropriate safeguards."

In its August 7, 2013 Opinion and Order (**# 1207**), this Court sought to set out for the parties the types of showings that would be necessary to meet the "good cause in compelling circumstances" and "appropriate safeguards" tests in order to make remote appearance possible. *Id.* at n. 5, *citing* MSK Practice Standards (Civil), § II.H.1 and 3 ("*Practice Standards*"). With regard to a showing of compelling circumstances, the Court required that Mr. Henderson and

Ms. Swallow make a showing of "the reasons such testimony should be taken remotely," *Practice Standards*, § II.H.1(a),  including "a doctor's certification addressing the particular [medical] restrictions on the party."  As to demonstrating "appropriate safeguards," the Court required a showing containing specific showing of technological abilities to make a remote video connection sufficient quality as to make the party's remote participation at trial an efficient and meaningful exercise.

Neither Defendant's motion fully complies with the Court's stated requirements.  Turning first to Ms. Swallow's motion, Ms. Swallow does not provide the Court with any specific indication of the grounds for any inability to appear, much less any certification by a medically trained person as to a medical condition that prevents her from travelling or participating in person at trial.  Ms. Swallow merely states that she "is Disabled" in some "episodic" capacity that makes it "dangerous" for her to travel without an escort.  She offers to provide  more details on her condition via some future supplementation of her motion, but at the time of this writing, a full week after Ms. Swallow's motion, that supplementation has yet to be filed.   She also cites to financial inability to manage the travel costs of herself and her anticipated witness, a cost she estimates to be "in the neighborhood of $ 3,000, which this Defendant does not have."  As to a showing of her ability to secure a video connection of sufficient quality, Ms. Swallow makes no effort whatsoever to satisfy the August 7, 2013 Order's required showing of suitable technical services and equipment, stating simply that "the availability of appropriate equipment to perform this will have to be arranged with the court's IT Dept. . . . upon the court's approval of this motion."

Mr. Henderson's motion provides somewhat more information about the medical restrictions that, he contends, prevent him from appearing in-person at trial.  He mentions,

among other things, that he is "basically bed-bound" and that he "pass[es] out unexpectedly."

He points the Court to an August 2, 2012 letter from his doctor, found at Docket # 772

(apparently submitted in conjunction with a request for a protective order against having to

appear in-person for a deposition), which states, in its entirety, "Mr. Henderson is unable to

travel due to his severe COPD and CHF.  It is ill advisable for him to travel to Colorado.  He is

physically unable to do so."  However, he indicates that he is "waiting for a quote for travel"

from a "medical transport company" (as he is unable to use common carriers due to his medical

equipment and needs), suggesting that he is able to travel with appropriate medical assistance.

As to the technical showing required by the Court's Order, Mr. Henderson states only that his

internet provider has certified his internet connection as having certain upload and download

speeds, and he points to the fact that the Plaintiff "conduct[ed] her deposition of my by SKYPE,"

although he acknowledges that "they did turn off 2-way [video] transmission to enhance

bandwidth."  (The Court notes that the Magistrate Judge previously acknowledged that this

method of securing testimony produced occasionally unsatisfactory results due to technical

limitations. *Docket* # 1130 at 3, 4.  This Court has reviewed video clips of that deposition (*see

Docket* # 1103-1111, filed under restriction) and similarly acknowledged some of the technical

and practical deficiencies that manifested.  *Docket* # 1172 at 42-43.)  Moreover, the Court's own

review of the clips reveals that the overall framerate of the video connection appears to be too

low to permit a jury to make an adequate assessment of the remote witness' physical demeanor,

as the video visibly falls below the 24 frames-per-second rate of standard definition television

broadcasts and appears somewhat jumpy and jerky.  This concern is particularly acute given Mr.

Henderson's representation that two-way video was turned off during the deposition in order to

conserve bandwidth; two-way video functionality will necessarily have to be turned on during

trial itself, thus suggesting that actual video and audio quality will only diminish from that shown in the clips.

With neither Defendant having made an adequate showing of technical ability to present a sufficient-quality two-way video and audio connection, the Court is unwilling to permit either Defendant to appear at trial remotely.  Among many other things, the Court has several concerns that would accompany any remote appearance: (i) disruptions in the trial due to technical malfunctions or malfunctions (*e.g.* loss of video or audio connection, lag or delays in audio transmission of questions or answers, witness' inability to hear and promptly respond to instructions from the Court, etc.) and the Defendants' lack of technical sophistication to promptly address any technical issues; (ii) the fact that Mr. Henderson and Ms. Swallow will both play central roles throughout the trial, as both witness and advocate, requiring that any remote connection be maintained throughout the entirety of the trial; (iii) the inability of jurors (and remotely-appearing parties) to adequately assess the demeanor of remotely-appearing witnesses, who will appear on small viewing screens rather than in-person in the courtroom; (iv) inefficiencies in the handling, admission, and examination concerning documents with a remote witness or party, particularly in a case such as this one where many of the key exhibits will take the form of documentary evidence; and (v) the *pro se* litigants' unfamiliarity with the governing law, rules of procedure, and general courtroom protocol, which will likely result in more frequent bench conferences and advisements to witnesses and which are likely to be hampered by one or more parties' remote appearance.

Balanced against these concerns is the recognition that Mr. Henderson and Ms. Swallow have articulated genuine impediments to appearing in-person at trial.  However, on the record currently before the Court, Mr. Henderson acknowledges an ability (if not necessarily the means)

to travel to Denver via a medical transportation company, and Ms. Swallow's lack of evidence regarding her limitations preclude the Court from assuming that her travel to Denver is impossible for her, rather than simply expensive or unpleasant.  In both instances, then, the issue thus becomes the _financial_ cost of appearing in-person at trial, and in that sense, the calculus of whether to appear or not is one that is largely left up to the party.[3]  Litigation in general, and trial in particular, is an expensive proposition for all involved, regardless of the nature of the claims at issue or the status of the parties.  Thus, the Court is not inclined to conclude that the mere fact that appearing in-person at trial is a financial burden on the Defendants, even a significant hardship, is grounds for relief from the general expectation of in-person attendance.

Accordingly, both Defendants' Motions for Leave to Appear Remotely (# **1214, 1215**) are **DENIED**.  The parties shall appear in-person at trial as scheduled, barring which, they will be deemed to have defaulted on the remaining claims against them.

Dated this 23d day of August, 2013.

**BY THE COURT:**

Marcia S. Krieger
Chief United States District Judge

---

[3] In a strictly practical sense, the question of whether to appear or not can be reduced to simple math.  The Defendants are always free to refuse to appear at trial and risk having a default judgment granted to Ms. Shell against them.  If the potential value of that default judgment is lower than the cost that the party would incur to appear at trial, it may very well make financial sense for the Defendants to default.  That calculus may be further affected by factors such as the likelihood that Ms. Shell might be unable to prove her claims or damages if a default is entered.  Finally, if the Defendants are so impecunious that no judgment could be collected, there is little reason to appear to prevent its entry..