**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Honorable Marcia S. Krieger**

**Civil Action No. 09-cv-00309-MSK-KMT**

**SUZANNE SHELL,**

    **Plaintiff,**

**v.**

**LEONARD HENDERSON, and**
**BRENDA SWALLOW,**

    **Defendants.**

_____

**OPINION AND ORDER DENYING MOTIONS FOR RECONSIDERATION**
**AND OBJECTIONS TO TAXATION OF COSTS**
_____

**THIS MATTER** comes before the Court pursuant to former Defendant American Family Rights Association's ("AFRA") Motion for Reconsideration[1] **(# 1221)** of the September 10, 2013 Opinion and Order **(# 1220)** denying AFRA's Motion for Attorney Fees **(# 869)**, and Ms. Shell's response **(# 1230)**; Defendant Henderson's Motion to Set Aside Judgment **(# 1231)**, Ms. Shell's response **(# 1241)**, and Mr. Henderson's reply **(# 1244)**; Ms. Shell's Motion to Alter Judgment **(# 1238)**, and Mr. Henderson's response **(# 1242)**; and Ms. Shell's Objections **(# 1243)** to the Clerk's taxation of costs, and Mr. Henderson's response **(# 1245)**.

The Court will assume the reader's familiarity with the extensive proceedings to date in this action, and will summarize only as necessary to place each motion in context.

---

[1]    Also pending is AFRA's Motion for Hearing **(# 1247)** on its Motion for Reconsideration. Because this Order resolves the substantive motion, the motion requesting a hearing is denied as moot.

**A. AFRA's Motion for Reconsideration**

After AFRA successfully obtained dismissal of all of Ms. Shell's statutory and common-law claims against it, AFRA moved **(# 869)** for an award of attorney fees pursuant to C.R.S. §3-17-201. That statute requires the Court to award attorney fees to a defendant who prevails in an "action[ ]" sounding in tort by obtaining dismissal at the Fed. R. Civ. P./C.R.C.P. 12(b) stage. Ms. Shell asserted five federal statutory claims against AFRA, one state statutory claim, and three tort claims. Deeming the statutory claims to be tort-equivalents, the Magistrate Judge initially recommended that AFRA's motion be granted. However, this Court declined to adopt the recommendation, finding that an award of fees is mandatory under that statute only where state-law tort claims "predominated" over the statutory claims. *See Docket* # 1220 at 4, *citing Dubray v. Intretribal Bison Co-Op.*, 192 P.3d 604, 607 (Colo.App. 2008). This Court concluded that Ms. Shell's statutory claims were not the equivalent of torts, and that her six statutory claims did not predominate over her three tort claims, making an award of fees under C.R.S. § 13-17-201 inappropriate.

AFRA then filed the instant Motion for Reconsideration **(# 1221)**, arguing that the Court erred in applying a "predominance" standard. AFRA contends that the statute requires an award of fees even if tort claims do not predominate over non-tort claims, so long as the plaintiff pleaded tort claims "to obtain relief beyond what was available solely under [non-tort theories]." *Citing Crow v. Penrose-St. Francis Healthcare Sys.*, 262 P.3d 991 (Colo.App. 2011).

*Dubray* was one of the first cases to address the operation of C.R.S. § 13-17-201 to hybrid cases where both tort and non-tort claims were asserted simultaneously. The pertinent rationale of *Dubray* stated:

> Here, contrary to plaintiff's assertion that this was primarily a contract action, six of his eight claims against defendants, and

> eight of his ten total claims asserted, were pleaded as tort claims.
> Plaintiff obviously chose to include these claims to obtain relief
> beyond what was available solely under a breach of contract
> theory.

192 P.3d at 607. Without further explanation, the Court of Appeals affirmed the trial court's determination that the action was one sounding in tort, such that C.R.S. § 13-17-201 applied.

The following year, the Colorado Court of Appeals decided *U.S. Fax Law Center, Inc. v. Henry Schein, Inc.*, 205 P.3d 512, 517-18 (Colo.App. 2009). There, the plaintiff had pled four claims, one under federal statutory law, one under state statutory law (which the court apparently construed as a tort claim), and two under common-law tort principles. In addressing whether this hybrid claim was subject to the statute, the court concluded that question "is disposed of by *Dubray*." *Id.* at 517. It went on to state that "*Dubray* holds [that] when the action contains a mix of contract and tort claims, fees <u>may</u> be awarded if the action <u>is primarily a tort action</u>, as was the case in *Dubray* where all but two of the claims were pleaded as torts." *Id.* at 517-18 (emphasis added). Because *Fax Law Center* involved four claims, three of which the court construed to be torts, the Court of Appeals found that the statute applied.

Two years later, the issue surfaced again in *Crow*. There, an action consisting of four tort claims and four breach of contract claims was dismissed, and the defendant sought fees under C.R.S. § 13-17-201. In determining whether the statute applied, the Colorado Court of Appeals appeared to rely on the second sentence from *Dubray* quoted above, explaining that"[the plaintiff] chose to include these tort claims to obtain relief beyond what was available solely under a breach of contract theory," and thus concluded that the trial court properly awarded fees. 262 P.3d at 997.

Very recently, the Colorado Court of Appeals decided *Castro v. Linz*, ___ P.3d ___, 2014 WL 3511791 (Colo.App. July 17, 2014) (slip op.). There, the plaintiff unsuccessfully asserted a

3

claim of breach of duty to creditor (which the court found to be a tort) and a claim seeking to pierce the defendant's corporate veil (which the court ultimately concluded was not a tort claim), and the defendant sought an award of fees. Describing the issue to be resolved, the court stated "When a plaintiff has pleaded both tort and nontort claims, a court must determine, as a matter of law, whether the <u>essence of the action</u> was one in tort, in order to ascertain if section 13-17-201 applies," citing to both *Crow* and *Dubray,* and later explained that "we must now decide whether the <u>essence of the entire action was primarily a tort action</u>," citing to *Fax Law Center*. (Emphasis added).  The use of terms like "essence of the action" and "primarily" suggest that *Castro* urges a "predominance"-type test similar to that of *Fax Law Center*.  But the court proceeded to find that "[i]n looking at Castro's claim for breach of duty to creditor, Castro only sought to recover the benefits he was awarded in the workers' compensation action . . . the same remedy he sought by his piercing the corporate veil claim. Castro did not claim additional tort damages." *Id.*

It is difficult to ascertain a clear analysis that can be readily applied to the circumstances presented here.  *Castro*, the Court of Appeals' most recent word on the issue, appears to embrace both a "predominance" analysis from *Fax Law Center* and a "additional relief" analysis from *Crow*, but does not offer any particular guidance as to how to proceed where those two analyses yield different outcomes.

Arguably, the most logical sequence to undertake this hybrid analysis is to first apply the "predominance" test, assessing whether the "essence of the action" is tortious in nature (whether quantitatively by simple number of claims or based on a more qualitative view of the relative importance of the claims) or not.  The Court would then turn to the question of whether tort claims were asserted to unlock additional remedies only where the predominance test failed to

4

yield a clear answer, such as when the tort- and non-tort claims are equal in number or significance (as was the case in both *Crow* and *Castro*). By contrast, since it will be a fairly unusual case where the remedies for the tort and non-tort claims are entirely coextensive, applying the "additional remedies" analysis first would almost always produce a dispositive result. Moreover, applying the predominance test first also avoids the incongruous situation where a case composed of numerous statutory claims and a single speculative or ephemeral tort claim would result in an award of fees upon dismissal simply because the lone tort claim offered some extra measure of remedies.

Using that analysis, the Court finds that Ms. Shell's claims here were predominantly non-tort, both numerically and qualitatively. Ms. Shell's claims were primarily predicated upon her contention that the Defendants, including AFRA, were infringing upon her copyrights by appropriating her written work. Ms. Shell's complaints of statutory unfair trade practices were a secondary theme – *i.e.* that AFRA was falsely advertising its affiliation with her. The tort claims asserted by Ms. Shell – theft of trade secrets, tortious interference with business relationships and an ill-defined civil conspiracy claim – were, at best, only of peripheral significance here. Thus, under any "predominance" or "essence of the action" test, the Court would find that Ms. Shells' claims were primarily non-tortious in nature. According to the analysis set forth above, this conclusion alleviates the need for the Court to consider whether Ms. Shell's tort claims offered her remedies not available for her statutory claims. Although it could arguably be said that Ms. Shell pled these tort claims to expand the scope of her potential remedies, for the reasons stated above, that fact is rendered irrelevant due to the clear predominance of non-tort claims.

Accordingly, the Court denies AFRA's motion for reconsideration.

### B. Ms. Shell and Mr. Henderson's Motions to Alter Judgment

Following the default by Defendants Henderson and Swallow on the first day of a scheduled jury trial, the Court proceeded to conduct a hearing on Ms. Shell's claims pursuant to Fed. R. Civ. P. 55(b)(2)(B) and (C). In doing so, the Court found: (i) Ms. Shell's claims against Ms. Swallow failed because Ms. Shell did not offer any admissible evidence establishing that Ms. Swallow had distributed Ms. Shell's trade secrets; and (ii) Mr. Henderson had infringed Ms. Shell's copyrights on two occasions, warranting an award of statutory damages in the amount of $5,000. Both Ms. Shell and Mr. Henderson now move to alter the Court's judgment in various respects.

Turning first to Ms. Shell's motion, Ms. Shell raises a variety of arguments, including: (i) that the Court did not give her adequate notice of the need to present substantive evidence of her claims at the Rule 55 hearing and intruded upon her right to a jury trial; (ii) that the Court erred in entering judgment in favor of Ms. Swallow for several reasons; and (iii) that the Court erred in not granting prejudgment interest or injunctive relief on the claim against Mr. Henderson. Although the Court sees no merit in any of Ms. Shell's contentions, it briefly addresses the arguments enumerated above.

Fed. R. Civ. P. 55(b)(2) provides that, upon a party's default, the Court "may conduct hearings. . . – preserving any federal statutory right to a jury trial – when, to enter or effectuate judgment, it needs to . . . determine the amount of damages [or] establish the truth of any allegation by evidence." It is well-settled that, upon a defendant's default, "the court, in its discretion, may require some proof of the facts that must be established in order to determine liability." Wright & Miller, et al., <u>Federal Practice and Procedure</u>, Civil 3d § 2688; *Dynamis, Inc. v. Dynamis.com*, 780 F.Supp.2d 465, 471-72 n. 8 (E.D.Va. 2011). In doing so, the

defaulting defendant is precluded from contesting the plaintiff's factual allegations, but "[e]ven after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." Id. Thus, the Court receives the evidence proffered by the plaintiff as uncontested, and treats that evidence as true (thus preserving the plaintiff's right to have a jury perform any necessary <u>weighing</u> of the evidence), but nevertheless may conclude, much like it does at the Rule 50 or Rule 56 stage, that the undisputed evidence fails to establish a cognizable claim. This is precisely the procedure this Court followed.[2]

Ms. Shell complains that "this Court did not provide me with adequate notice of the nature and scope of the hearing." The Court observes that the case was scheduled to begin a jury trial that day, and thus, Ms. Shell can hardly complain that she was not expecting to put on evidence that day or that she was unprepared to do so. Indeed, the record reflects that, once the Court entered the Defendants' default, it informed Ms. Shell that "we won't be having a jury trial today, instead what we'll be having is a hearing in accordance with Rule 55(b) of the Federal Rules of Civil Procedure." The Court then asked Ms. Shell "would you like to proceed?" Ms. Shell did not indicate uncertainty about or inquire as to the purpose of the hearing or otherwise seek clarification about the Court's expectations; rather, she proceeded to make a brief opening statement and then stated that "at this time, I will just start with calling witnesses," which she proceeded to do. Ms. Shell then spent a full day putting on evidence through several witnesses,

---

[2]   In exercising its discretion to require Ms. Shell to put forward her evidence in support of her claims, in addition to her proof of damages, the Court was mindful of the vague and often-conclusory assertions in Ms. Shell's *pro se* pleadings, the indirect and confusing arguments offered in dispositive motion briefing from all sides, and the broad inferences that the Court granted Ms. Shell at the various dispositive stages of the litigation. The Court concluded that a full presentation of the evidence supporting Ms. Shell's claims at a Rule 55 hearing was the only way to ensure that any judgment was based on specific evidence, rather than a party's conclusory characterizations of that evidence.

as well as herself. Although she now contends that she understood that the hearing was solely for the purposes of determining damages, it is clear from the record that the evidence Ms. Shell put on at the hearing went far beyond the simple question of damages and comprehensively addressed the merits of her claims as well. Thus, the Court cannot conclude that Ms. Shell was surprised or prejudiced by any alleged lack of notice as to the purpose of the Rule 55 hearing.

As to the claims against Ms. Swallow, sounding in copyright infringement, breach of contract, and misappropriation of trade secrets, there was sufficient evidence that Ms. Shell's trade secret materials had been republished by someone, but the essential factual question was whether Ms. Shell could prove that is was Ms. Swallow who had done so. Neither Ms. Shell nor any of her witnesses was able to testify as to this issue based on their own personal knowledge; rather, the entirety of Ms. Shell's evidence on this point was Exhibit 1008. That exhibit is a motion to dismiss, filed *pro se* by William Wiseman, in an action brought against him and others by Ms. Shell in a state court in California, in which Mr. Wiseman wrote "Brenda Swallow sent me a pdf file that Shell gave to people at her seminar in Florida . . . ." The Court found this evidence insufficient as a matter of law to support Ms. Shell's claims against Ms. Swallow on the grounds that Mr. Wiseman's assertion in the brief was inadmissible hearsay.

Ms. Shell argues that the Court should not have rejected Exhibit 1008 on hearsay grounds *sua sponte*, as Ms. Swallow was not present at the hearing to assert such an objection. She further argues that, had the Court given her notice of its intention to disregard the exhibit as hearsay, she would have "argued that the subject document by Mr. Wiseman was a statement against interest which qualified for an exception under the hearsay rule" (among other arguments). The Court finds all of these arguments unavailing.

Turning first to Ms. Shell's complaint that Ms. Swallow's default effectively waived any objections to the admission of hearsay, the Court finds that position untenable. Admittedly, a party may forfeit the ability to raise objections to the admission of hearsay by failing to timely assert such objections. Fed. R. Evid. 103(a)(1); *Talavera ex rel. Gonzalez v. Wiley*, 725 F.3d 1262, 1267 (10th Cir. 2013). But that same rule also permits the Court discretion to act *sua sponte* to prevent "plain error," that is, to prevent an error which is "clear" or "obvious" and one which would "affect substantial rights" by altering the outcome of proceedings. Fed. R. Evid. 103(e); *see generally U.S. v. Olano*, 507 U.S. 725, 731-35 (1993). Here, the admission of Exhibit 1008 would clearly have been error. Fed. R. Evid. 802 expressly provides that "hearsay is not admissible" unless a specific exception applies. Mr. Wiseman's statements in the brief are obviously hearsay, in that they are assertions of fact, made by a declarant (Mr. Wiseman), made other than in open court in this matter, and are offered by Ms. Shell for their truth. Fed. R. Evid. 801(c). (For reasons discussed below, the Court rejects Ms. Shell's arguments that Mr. Wiseman's statements are subject to an exception to the hearsay rule.) Moreover, crediting the assertions in Exhibit 1008 would affect Ms. Swallow's substantial rights, in that Exhibit 1008 is Ms. Shell's only evidence of an essential element of all of her claims against Ms. Swallow; simply put, without Exhibit 1008, Ms. Shell's claims against Ms. Swallow would fail. Thus, the Court finds that it would have been plain error to consider the contents of Exhibit 1008, and the Court properly rejected that evidence despite Ms. Swallow's default and failure to object to the exhibit's admission.

Moreover, it is entirely appropriate for a court to refuse to consider clearly inadmissible hearsay in a Rule 55(b) hearing. Just as a defendant's default under Rule 55 does not automatically result in entry of a judgment on a claim that is legally insufficient, no logic

9

warrants deeming a Rule 55 hearing to suddenly abate the Federal Rules of Evidence simply because the defaulting defendant is not present to interpose evidentiary objections, thus allowing a plaintiff to prove claims by resort to the most base forms of inadmissible evidence.  As the Second Circuit noted in the seminal case of *Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 63 (2d Cir. 1971), *rev'd on other grounds*, 409 U.S. 363 (1973), *cited in* Wright & Miller, *supra,* a defaulting defendant is deemed to admit only "well-pleaded" facts, and facts "which are not susceptible to proof by legitimate evidence" do not fall within that category.  Moreover, as discussed above, the Court's role in conducting a Rule 55 hearing is akin to the Court's evaluation of evidence for legal sufficiency under Rule 50 or Rule 56.  Just as hearsay evidence is "not suitable grist for the summary judgment mill," neither is it appropriate for the Court to rely upon it at the Rule 55 stage, even in the absence of a contemporaneous objection from a defaulted defendant.  *See Adams v. American Guarantee and Liability Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000).

Ms. Shell proffers that, had she been notified of the Court's hearsay concerns about Exhibit 1008, she would have argued that Mr. Wiseman's statement is subject to an exception under Rule 804(d)(3), in that the statement is "contrary to [Mr. Wiseman's] proprietary or pecuniary interest . . . or expose[d Mr. Wiseman] to to civil or criminal liability."[3]  Ms. Shell contends that, by "admitting he obtained material from defendant Swallow that was protected as

---

[3]  To invoke the exceptions of Rule 804, the party proffering the hearsay statement must also show that the declarant is "unavailable" as defined by Rule 804(a)(5). Ms. Shell's motion offers only the most cursory assertion that Mr. Wiseman "has been in hiding . . . with the intent to defeat my attempts to locate him and/or serve him" and that "I've been trying to locate him without success since he left Georgia for California." However, the docket in this case reflects that Ms. Shell served Mr. Wiseman with process in July 2009 at an address in Tulelake, California **(# 246)**, that Mr. Wiseman participated as a litigant in this case as late as April 2010 **(# 407)** (then using an address in Augusta, GA), and that the docket reflects Mr. Wiseman with a current mailing address in Hollywood, CA.

10

trade secrets," Mr. Wiseman "exposed him[self] to civil liability for misappropriation of trade secrets." The Court cannot conclude that Mr. Wiseman's mere receipt from Ms. Swallow of "a pdf file that Shell gave to people at her seminar" is sufficient to constitute an admission that he "misappropriated" Ms. Shell's trade secrets.[4] Under Colorado law, "misappropriation" of a trade secret means "acquisition of a trade secret by a person who knows or has reason to know that the trade secret was acquired by improper means." C.R.S. § 7-74-102(2)(a). Nothing in Mr. Wiseman's statement indicates that he knew or had reason to know that Ms. Swallow had acquired the materials she sent him by improper means, much less that Mr. Wiseman recognized the materials as being trade secrets at all. (Indeed, the pertinent sentence in the brief continues on to state Mr. Wiseman's belief that Ms. Shell's seminar materials were "taken from a government website.") Thus, the Court finds no basis to reconsider its decision to exclude Exhibit 1008 from consideration.

Finally, Ms. Shell complains that the Court should not have entered judgment in favor of Ms. Swallow as a result of the Rule 55 hearing, relying on *In re Villegas*, 132 B.R. 742, 746 (9th Cir. B.A.P. 1991). There, a creditor filed a complaint seeking to set aside a discharge granted to debtors and the debtors failed to file an answer. The Bankruptcy Court deemed the debtors in default and convened a hearing, but at the hearing, the creditor conceded that it was not prepared to proceed. After hearing from the parties (including the debtors), the Bankruptcy Court granted judgment in favor of the debtors on the creditor's challenge to the discharge. The Bankruptcy Appellate Panel reversed, stating

---

[4] Even if the Court deemed Mr. Wiseman's admission of receiving the materials as a statement against his interest, the Court cannot say that Mr. Wiseman's identification of Ms. Swallow as the person he received the materials from is similarly a statement against Mr. Wiseman's interests.

11

>   we find no authority that would allow a trial court to enter
>   judgment in favor of the defaulting party following such a hearing.
>   To enter such a judgment against the non-defaulting party because
>   of the failure to sustain its burden of proof would make the hearing
>   under Rule 55(b)(2) the same as a trial on the merits.  In this
>   regard, the [creditors] were, in essence, forced to trial without
>   having the benefit of the procedural protection offered by the
>   Federal Rules of Civil Procedure, including the opportunity to
>   conduct discovery in accordance with these rules.

*Id.* at 746-47.  The appellate court reversed the entry of judgment and remanded the action "to allow [the creditor] the opportunity to conduct discovery and present their case at trial."  *Id.* at 747.

*Villegas* stands for the proposition that a court should not impulsively grant judgment in favor of a defaulting party upon the non-defaulting party's inability to prove claims or damages at a Rule 55 hearing <u>conducted at an early stage of the litigation</u>.  *See e.g. In re Dugger*, 2012 WL 2086562 (9th Cir. B.A.P. Jun. 8, 2012) (unpublished) (emphasizing that "the stated purpose for the *Villegas* rule is to avoid forcing the non-defaulting party to trial without having . . . the opportunity to conduct discovery").  However, this is not the situation present here.

Discovery was completed long ago and a trial was set to begin when Ms. Swallow defaulted.  Unlike the situation in *Villegas*, where proceedings had just begun, this case was at its terminal stage when the Court conducted the Rule 55 hearing, and Ms. Shell can hardly complain that her inability to prove her claims at the Rule 55 hearing was due to an inadequate opportunity to engage in discovery or other pre-trial proceedings.  Indeed, at the conclusion of the Rule 55 hearing, Ms. Shell had had a full opportunity to develop and present her case against Ms. Swallow, and the legal insufficiency of her evidence compelled the Court to enter judgment in favor of Ms. Swallow.  Ms. Shell does not explain what alternative procedure the Court could have undertaken in such circumstances, for there is none.  Nor has she come forward in the

instant motion proffering additional evidence that, had it been presented at the Rule 55 hearing, would have cured the defects in her claims against Ms. Swallow. Accordingly, the Court sees no impediment to entering judgment in favor of Ms. Swallow at the conclusion of the Rule 55 hearing.

Ms. Shell's motion also offers a variety of arguments directed against the Court's judgment in favor of Ms. Shell and against Mr. Henderson. The Court finds all of these arguments to be without merit, but expressly acknowledges only one: an argument that the Court erred in finding Mr. Henderson liable for two instances of direct infringement, but then "counted it as only one infringement." It is not clear what statements by the Court in its ruling lead Ms. Shell to the conclusion that the Court somehow combined the two instances of infringement, except perhaps the fact that the Court ultimately awarded damages only once. As 17 U.S.C. § 504(c)(1) provides, when a copyright holder elects to receive statutory damages, such an award reflects "all infringements involved in the action with respect to any one work." Because the Court found both instances of infringement involved the same work, albeit at different times, the Court made only one award of statutory damages.

The Court has reviewed the remaining arguments made by Ms. Shell and finds them each to be without merit.[5] Accordingly, the Court denies Ms. Shell's motion to alter judgment in its entirety.

---

[5] Ms. Shell makes a passing mention of, but does not elaborate upon, an argument that the Court erred in not granting her injunctive relief against Mr. Henderson. At the hearing, the only injunctive relief that Ms. Shell requested was "that Mr. Henderson be required to divest himself of everything to do with AFRA and no longer have any participation in AFRA." Nothing in the Copyright Act purports to permit the Court to grant affirmative relief of this type. In any event, the factual record did not necessarily establish that Mr. Henderson has any ongoing involvement with AFRA or is otherwise continuing to be involved with posting Ms. Shell's copyrighted information at the present time (all testimony concerning Mr. Henderson was phrased in the past

Turning to Mr. Henderson's motion, Mr. Henderson raises a number of arguments, none of which have merit. He contends that the Court failed to consider evidence submitted with filings prior to the Rule 55 hearing, failing to recognize that such evidence was not properly before the Court for purposes of the Rule 55 hearing and that a party in default is, by definition, precluded from putting on evidence to contradict or supplement a plaintiff's presentation. Mr. Henderson raises certain defenses, such as statute of limitations, but once again, a defendant's default precludes that defendant from raising any affirmative defenses. In any event, the Court found infringements by Mr. Henderson as late as 2007, clearly within the statute of limitations. The Court denies Mr. Henderson's motion in its entirety.

### C. Taxation of costs

Following entry of judgment in her favor against Mr. Henderson, Ms. Shell filed a Bill of Costs pursuant to 28 U.S.C. § 1920. On October 30, 2013, the Clerk of the Court taxed costs **(# 1240)** in favor of Ms. Shell in the amount of $7,658.33.

Ms. Shell objects to certain aspects of the Clerk's taxation of costs and related issues. First, Ms. Shell contends that she is entitled to addition costs, beyond those identified in 28 U.S.C. § 1920, by operation of C.R.S. § 13-17-202. That statute provides that "If the plaintiff serves an offer of settlement in writing at any time more than fourteen days before the commencement of the trial that is rejected by the defendant, and the plaintiff recovers a final judgment in excess of the amount offered, then the plaintiff shall be awarded actual costs accruing after the offer of settlement to be paid by the defendant."

Ms. Shell claims that she made written offers to Mr. Henderson to settle the case in October 2008, in February 2012, and in a filing in March 2013 **(# 1091)**. She does not attach

---

tense), and thus, there is no basis for the Court to award Ms. Shell prospective injunctive relief against him.

copies of the 2008 and 2012 offers, but she describes the former as "request[ing] contractual terms addressing the issues in my complaint without demanding a dollar amount," and the latter as "requesting that we negotiate a contract to establish terms to settle the case and cited the terms I wanted." The filing at Docket # 1091 makes reference to Ms. Shell offering, and Mr. Henderson preliminarily accepting (and subsequently rejecting) "a consent judgment and permanent protective order," but again, does not tender a copy of that offer or otherwise describe its terms.[6]

By definition, an offer of settlement under C.R.S. § 13-17-202 must be quantitative in nature; an offer to agree to non-monetary terms (much less an offer to negotiate such terms) can never result in "a final judgment in excess of the amount offered" if no ascertainable amount is actually offered. Indeed, the Colorado Court of Appeals has held that "nonmonetary conditions [in] a settlement offer may remove the offer from the statute's reach." *See Strunk v. Goldberg*, 258 P.3d 334, 336 (Colo.App. 2011). Because Ms. Shell has failed to establish the terms of her offer(s), much less its compliance with the statutory requirements and a demonstration that the amount of the offer is less than the $ 5,000 Ms. Shell ultimately recovered, her request for costs pursuant to C.R.S. § 13-17-202 is denied.

The Court then turns to the specific items of costs taxed under 28 U.S.C. § 1920 that Ms. Shell disputes. First, she objects to the Clerks' refusal to tax travel costs for her witnesses: Ms. Shell sought several hundred dollars in airfare expenses for two of her witnesses, but the Clerk of the Court reduced that amount to $ 113 for each witness, reflecting mileage for a round-trip of 100 miles "in light of jurisdictional limits of the district under FRCP 45." Although the 100-mile

---

[6] Docket # 1091 makes clear that Ms. Shell initially tendered the terms of her offer to Mr. Henderson in writing on a Saturday afternoon and withdrew the offer in the early evening of the following day. This fails to comply with C.R.S. § 13-17-202(1)(a)(V), which requires that a valid offer "remain open for at least fourteen days from the date of service."

15

rule enjoyed longstanding favor in the past, *see Farmer v. Arabian Oil Co.*, 379 U.S. 227, 234-35 (1964), the modern rule permits the Court to tax travel costs beyond the 100-mile rule at its discretion, but warns that "parties who obtain a witness from outside the 100-mile limit without advance approval do so at their peril." *Tilton v. Capital Cities/ABC, Inc.*, 115 F.3d 1471, 1475 (10th Cir. 1997). Ms. Shell argues that the Court "had advance knowledge that some of my witnesses were coming from out-of-state," but does not (and cannot) indicate that the Court ever opined as to the taxability of any travel costs for those witnesses. Ms. Shell also states that the Court "previously ordered that no witness would be permitted to testify by telephone," but this appears to be a misreading of the Court's August 17, 2013 Order **(# 1207)** that categorically refused to permit <u>parties</u> to appear by telephone. No party ever requested leave to have <u>witnesses</u> appear by telephone. Moreover, Ms. Shell states that "remote appearance fees were more costly than airfare and lodging," but offers no evidence in support of this somewhat remarkable proposition. Accordingly, the Court finds no abuse of discretion by the Clerk in deciding to tax travel costs only to the extent of the 100-mile rule.

Next, the Clerk awarded Ms. Shell the subsistence costs for her three witnesses from September 28 to September 30, but refused to tax additional subsistence costs for these witnesses for October 1 or 2.[7] Given that the hearing concluded on September 30, the Court sees no error in this award. Ms. Shell argues that she anticipated that the trial, had it proceeded, would have lasted five days, but offers no explanation as to why the witnesses could not have been released to return home at the conclusion of the hearing. In another portion of the motion, Ms. Shell does make reference to the fact that she "purchased non-refundable airline tickets" for these witnesses,

---

[7] It appears that the Clerk may have taxed additional subsistence days for one of Ms. Shell's witnesses, but, absent a clear explanation for this decision, the Court is inclined to assume that it was simply an oversight by the Clerk.

16

apparently with a return date on or after October 2, but the decision to purchase non-refundable tickets instead of those that could be changed to accommodate unexpected changes in the schedule is nothing more than a strategic decision by Ms. Shell for which Mr. Henderson should not be held responsible via costs.

Ms. Shell objects to the Clerk's refusal to tax $ 325.63 in costs for "toner and printer drum" pursuant to 28 U.S.C. § 1920(3)'s allowance for "fees and disbursements for printing and witnesses." The Court observes that the Bill of Costs in the record does not include any receipts for the purchase of toner or a printer drum, nor does Ms. Shell offer anything but the most conclusory assertion that these printing costs were attributable to her claims against Mr. Henderson, as opposed to the numerous other Defendants she named in this action. Under these circumstances, the Court cannot conclude that the Clerk abused his discretion in refusing to tax these costs.

Similarly, Ms. Shell requested more than $ 1,500 in postage costs, but the Clerk taxed only $64. Ms. Shell essentially concedes that the remaining costs reflected postage costs for mailing her responses to Mr. Henderson's motions to all Defendants in this action. These costs are, in large part, attributable to Ms. Shell's own decision to name a wealth of Defendants in this action besides Mr. Henderson, and the Court cannot say that the Clerk abused his discretion in declining to tax these additional costs against Mr. Henderson.

Ms. Shell objects to the Clerk's refusal to tax legal research costs, parking expenses, and "skip trace" fees (for locating other defendants). It is well-settled that costs of this type do not fall within the terms of 28 U.S.C. § 1920, and thus, may not be awarded. *Sorbo v. United Parcel Serv.*, 432 F.3d 1169, 1179-80 & n. 10 (10th Cir. 2005).

Finally, Ms. Shell objects to the Clerk's refusal to tax $ 240 in costs for "audio recordings of [one or more] hearing[s]," which Ms. Shell states she "obtained to ensure my compliance with the court's requirements," as "this option was less expenses than purchasing transcripts of every hearing." Although 28 U.S.C. § 1920(2) permits the taxation of costs for "fees for printed or electronically recorded transcripts necessarily obtained for use in the case," that standard does not allow taxation of costs for transcripts that are merely obtained for a party's convenience. *In re Williams Securities Litigation*, 558 F.3d 1144, 1147-48 (10th Cir. 2009). Ms. Shell's explanation of the purpose of her obtaining these audio recordings describes her convenience in comparing her recollection of court instructions with the contents of the recording, rather than her "necessarily obtaining" them for the purpose of demonstrating a contested fact. Accordingly, the Clerk properly refused to tax this cost.

For these reasons, the Court overrules Ms. Shell's objections to the Clerk's taxation of costs in their entirety.

## **CONCLUSION**

For the foregoing reasons, AFRA's Motion for Reconsideration **(# 1221)** and Motion for Hearing **(# 1247)**, Mr. Henderson's Motion to Set Aside Judgment **(# 1231)**, Ms. Shell's Motion to Alter Judgment **(# 1238)**, and Ms. Shell's Objections **(# 1243)** to the Clerk's taxation of costs are all **DENIED**.

Dated this 25th day of July, 2014.

**BY THE COURT:**

_____

Marcia S. Krieger
Chief United States District Judge